Michael Akselrud (SBN 285033)
michael.akselrud@lanierlawfirm.com
THE LANIER LAW FIRM, P.C.
21550 Oxnard St., 3rd Floor
Woodland Hills, California 91367
Telephone: (310) 277-5100
Facsimile: (310) 277-5103

W. Mark Lanier (pro hac vice)
WML@lanierlawfirm.com
Chris L. Gadoury (pro hac vice)
chris.gadoury@lanierlawfirm.com
Alex J. Brown (pro hac vice)
Alex.Brown@lanierlawfirm.com
THE LANIER LAW FIRM, P.C.
10940 W. Sam Houston Pkwy N
Houston, Texas 77064
Telephone: (713) 659-5200
Facsimile: (713) 659-2204

Christopher T. Nidel (pro hac vice)
chris@nidellaw.com
Jonathan Nace, Esq. (pro hac vice)
jon@nidellaw.com
Nidel & Nace, P.L.L.C.
One Church Street
Suite 802
Rockville, MD 20850
Telephone: (202) 780-5153

David P. Page (pro hac vice)
dpage@eenradvocates.com
Cheryl M. Thigpen (pro hac vice)
dthigpen@eenradvocates.com
Environmental Energy & Natural
Resources Advocates, PLLC
1921 S Boston Ave.
Tulsa, Oklahoma 74119
Telephone: (918) 764-8984

1
2
3
4
5
6
7
8
9
10

Gideon Kracov (he/him/his) (Cal.
SBA # 179815)
gk@gideonlaw.net
Jordan R. Sisson (Cal. SBN # 327057)
jordan@gideonlaw.net
Law Office of Gideon Kracov
801 S. Grand Ave., 11th Floor
Los Angeles, CA 90017
Telephone: (213) 629-2071

*Attorneys for Plaintiffs*

11
12
13
14

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

15
16
17
18
19
20
21
22
23
24
25
26
27
28

| | |
|---|---|
| JED AND ALISA BEHAR, individually and on behalf of all others similarly situated,<br><br>               Plaintiffs,<br><br>v.<br><br>NORTHRUP GRUMMAN CORPORATION AND NORTHRUP GRUMMAN SYSTEMS CORPORATION,<br>.<br>              Defendants | Case No. 2:21-cv-03946<br><br>CLASS ACTION<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...........................................................................................1

PARTIES ......................................................................................................3

    Plaintiff(s) ...........................................................................................3

    Defendants ..........................................................................................4

JURISDICTION AND VENUE .....................................................................4

GENERAL FACTUAL ALLEGATIONS ......................................................5

    Plaintiffs and Residents Left Completely in the Dark...........................7

EQUITABLE TOLLING OF APPLICABLE STATUTE OF LIMITATIONS .......9

CLASS ALLEGATIONS .............................................................................10

    Numerosity ........................................................................................12

    Commonality .....................................................................................13

    Typicality ..........................................................................................15

    Adequacy ..........................................................................................15

CAUSES OF ACTION ................................................................................19

    FIRST CLAIM – NEGLIGENCE – CONTINUING NEGLIGENCE .........19

    SECOND CLAIM – PRIVATE CONTINUING NUISANCE....................22

    THIRD CLAIM – STRICT LIABILITY – ABNORMALLY
    DANGEROUS ACTIVITY....................................................................25

    FOURTH CLAIM – TRESPASS/ CONTINUING TRESPASS .................28

    FIFTH CLAIM- UNJUST ENRICHMENT ...........................................28

JURY TRIAL DEMAND AND PRAYER FOR RELIEF .......................................29

## PLAINTIFFS' CLASS ACTION COMPLAINT AND JURY DEMAND

Plaintiffs, by and through their undersigned attorneys, The Lanier Law Firm, Environmental Energy & Natural Resources Advocates, PLLC, The Law Office of Gideon Kracov, and Nidel & Nace, PLLC bring this civil action under Fed. R. Civ. P. 23 on their own behalf and on behalf of the classes they represent to obtain damages, both compensatory and punitive, injunctive relief, and costs of suit from the Defendants. Plaintiffs complain and allege as follows:

## INTRODUCTION

1.      This is a civil action to redress circumstances created by Defendants Northrop Grumman Corporation and Northrup Grumman Systems Corporation for damages suffered by members of the putative classes defined below (the "Class Members"). The Defendants' actions have resulted in the contamination of the Class Members' properties and Class Members exposure to toxic chemicals due to ongoing releases and leachate from Defendants' commercial manufacturing facility. That facility is located at 8020 Deering Avenue, Canoga Park, California, 91304 (the "Site"). The Site has been owned and operated by the Defendants since 1967[1]. During its ownership and operation of the Site the Defendants: (1) mishandled and released hazardous and toxic substances at the Site, (2) disposed of hazardous wastes at the Site, and (3) mishandled the management and the cleanup of the wastes and substances released from the Site. In combination, the Contamination and its attendant risks have now migrated in, under, on, around and through Plaintiffs' and Class Members' properties. The Site has experienced continuing releases of toxic, hazardous, substances, and hazardous wastes for decades. The fact of the contamination was known to the Defendants, and yet this

---

[1] The original owner/operator of the Site was Litton Industries, Inc. ("Litton"). Beginning in 2001 the Defendants, through a series of stock purchases, mergers, and reorganizations, became owner of the operation and responsible for the Contamination alleged herein.

1    information has been withheld and concealed from Plaintiffs and the Class
2    Members.

3        2.    Because of the Defendants' ownership and operations at the Site,
4    Plaintiffs and Class Members have been exposed to toxic and hazardous
5    substances and wastes from circuit board production, copper plating, silk
6    screening, photo printing and chemical stripping. These Site operations resulted in
7    Contaminants being released onto and into the soil, the ground water, and the air
8    at the Site. These releases have migrated to Plaintiffs' and Class Members'
9    properties. The Contaminants released at the Site were associated with the storage,
10   transfer and use of solvents, acids, and metals including, but not limited to:

11           Volatile organic compounds (VOCs) (including chlorinated
12           solvents): trichloroethylene (TCE), perchloroethylene (PCE), 1,1,1-
13           trichloethane (1,1,1 TCA), cis-1,2-dichloroethene (c-1,1-DCE), 1,2-
14           dichloroethene (1,2, -DCE), vinyl chloride, chloroform methylene
15           chloride and 1,4 dioxane (herein referred to as "Contaminants", or
16           "Contamination".)

17       3.    Despite their knowledge of: (a) the releasing, leaking and migrating
18   Contaminants at the Site; (b) the off-Site nuisance and trespass caused by the
19   Contaminants; (c) the fate and transport characteristics of the Contaminants; and
20   (d) the associated health risks with these toxic, hazardous, and carcinogenic
21   Contaminants, Defendants concealed the presence of these Contaminants and their
22   releasing, leaking and migrating from the Site. Defendants also concealed the fact
23   that the Contaminants were migrating onto, into, at and around the Plaintiffs' and
24   the Class Members' properties.

25       4.    The presence of these toxic and hazardous Contaminants on, at, in,
26   and around Plaintiffs' and Class Members' properties presents a significant health
27   risk and harm to those living in, at, on, and around these contaminated properties
28   as well as a significant environmental liability and damage to those owning these

properties.

## **PARTIES**

### **Plaintiff(s)**

5.      Plaintiffs are residents of the Canoga Park neighborhood in the Los Angeles County, California, metropolitan area.  Plaintiffs own and/or live in property located within the Class Area.  Plaintiffs are putative class representatives for the Property Damage Class which is defined as those persons who own residential property contaminated by the Contaminate chemicals released and discharged at the Defendants' Site. Plaintiffs are also Putative class representatives for the Medical Monitoring Class because they have owned and lived at their home in the Class Area since 2012.

6.      As a result of Defendants' actions, specifically their inadequate containment, handling, and remedial activities, the toxic and hazardous Contaminants have entered Plaintiffs' and Class Members' properties and have contaminated their property -  their air, land, groundwater, dwelling place (homes) and their surrounding environment - thereby causing Plaintiffs and the Property Damage Class Members to suffer damage to property and personal finance, loss of the use and enjoyment of property and destruction of their community.

7.      As a result of the actions of the Defendants, toxic and carcinogenic Contaminants have entered onto Plaintiffs' and the Property Damage Class Members' properties depriving Plaintiffs and the Property Damage Class Members of their free use and enjoyment of their properties.

8.       Plaintiffs are also putative class representatives for the Medical Monitoring Class which is defined as those persons who live(d) in dwellings located within the Class Area impacted by the Contaminants and as a result thereof are at increased risk of developing injury, illness, and/ or disease. (The Property Class Members and the Medical Monitoring Class Members are jointly referred to as "Class Members".)

**Defendants**

9.     Northrup   Grumman   Corporation   is   a   foreign   corporation incorporated in the State of Delaware with principal executive offices located at 2980 Fairview Park Drive, Falls Church, Virginia 22042 ("NGC"). NGC is, *inter alia*, an aerospace, technology and defense industry corporation. Northrup Grumman Systems Corporation is a Delaware corporation which is a 100% (wholly owned) subsidiary of Northrup Grumman Corporation. Plaintiffs and Class Members rely upon the doctrines of actual and apparent agency and *respondeat superior* as applicable based on the liability of corporations for their employees and agents' actions.

**JURISDICTION AND VENUE**

10.     This Court has subject matter jurisdiction over this class action pursuant to 28 U.S.C. § 1332(d). The amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and the action is between multiple members of the classes who are residents and/or citizens of the State of California on the one hand, and the Defendants who are citizens of the State of Delaware and the Commonwealth of Virginia on the other hand. The number of members of all proposed plaintiff classes in the aggregate is more than one hundred (100).   The Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

11.     This Court has personal jurisdiction over Defendants because Plaintiffs' claims arise out of Defendants' contacts, acts, and omissions within the State of California such that the exercise of such jurisdiction is consistent with due process under the United States Constitution.

12.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because (1) a substantial part of the events, acts, and omissions that give rise to the claims at issue in this case occurred in this District, in Los Angeles County, California, (2) Defendants conduct substantial business in this District,

and (3) Defendants have caused harm to Plaintiffs and Class Members in this District.

### GENERAL FACTUAL ALLEGATIONS

13.     Plaintiffs and the Class Members have suffered damages as a result of the presence of the Contaminants at their property and/or residence due to the ongoing and continuing release, leaching, and migration of the Contamination from the Site into, under, onto, at and around their properties and residences.

14.     The Contaminants have been released and migrate (and continue to be released and migrate) into, under, onto, at and around the Plaintiffs' and the Class Members' properties and residences. Plaintiffs' and the Class Members' properties and residences have been and continue to be contaminated with these Contaminants - including toxic and carcinogenic chlorinated solvents, methylene chloride and 1,4-dioxane.

15.     The Site was in operation from roughly 1967 – 2002 as a circuit board manufacturer. During this time period, the Contaminants were released and disposed of at the Site in substantial quantities. Defendants' release and disposal of Contaminants created an imminent and substantial threat to public health, to the Plaintiffs' and the Class Members' health and wellbeing, and created dangerous conditions at Plaintiffs' and Class Members properties and residences.

16.     Defendants have known, or should have known, that the operations at the Site were releasing, leaking, and disposing of these hazardous and carcinogenic Contaminants into, under, at and onto properties and into the groundwater and air in, at or near the Class Area as identified below.

17.     Furthermore, Defendants did nothing to notify the general public in the Class Area, including those living or purchasing homes in the Class Area, that their properties and residences were contaminated or were threatened by Contamination and that there was a serious risk of exposure to the Contaminants through groundwater and indoor and outdoor vapors which created associated

health threats.

18.   For over 50 years, while owning and/or operating the Site, Defendants failed to properly control the Contamination, properly remediate the Contamination, and appropriately notify the public about the presence, hazards and threats of the Contamination.

19.   Had Defendants properly remediated or contained the Contaminants, Plaintiffs' and the Class Members' properties would not have been contaminated and their health would not have been put at risk and continue to be threatened and damaged.

20.   Had Defendants notified the public, the Plaintiffs and the Class Members would not have purchased property and/or resided at property within and around the Class Area and would not have suffered damages as a result.

21.   The contaminant trichloroethylene, or TCE, is a known human carcinogen. TCE also degrades into other chlorinated solvents, many of which are also known carcinogens (such as vinyl chloride).

22.   In addition, upon information and belief, the Site is also leaching and releasing methylene chloride and 1,4-dioxane. 1,4-dioxane was used as a preservative for chlorinated solvents including TCE, TCA and PCE.  1,4-dioxane is an anticipated human carcinogen and this Contaminant is more water soluble than TCE. Therefore, 1,4-dioxane tends to migrate farther and faster than the chlorinated solvents themselves.

23.   Despite these facts, upon information and belief, Defendants have never performed any testing for 1,4-dioxane in and around the Site or the surrounding Class Area.

24.   Contaminants leaching into and migrating with the groundwater expose the Plaintiffs and the Class Members to dangerous carcinogens and VOC Contaminants through the well-known, well-understood and generally accepted process of "vapor intrusion" ("VI").

25.    VI occurs when chemical vapors from VOCs migrate from contaminated soil and/or groundwater through the soil and through building foundations and floors and into a building's rooms. These chemical vapors degrade indoor air to the point of posing significant risks to the human health of the occupants.

26.    Unknown to them, Plaintiffs and the Class Members have been, and are being exposed to these dangerous, toxic and carcinogenic Contaminants while at their homes - both indoors and outdoors.

27.    As a result of this exposure and continuing threat of exposure, Plaintiffs and Class Members require mitigation to eliminate the VI exposure and to remove any ongoing threat of such exposure at their properties.

**<u>Plaintiffs and Residents Left Completely in the Dark</u>**

28.    No one, including the Defendants or the Defendants' employees and agents, notified Plaintiffs or the Class Members of the presence of these Site Contaminants at, in, under, and around Plaintiffs' and the Class Members' properties.

29.    No one, including the Defendants, or their employees and agents, notified Plaintiffs or the Class Members of the significantly elevated cancer risks and risks of other diseases posed by the presence of Site Contaminants at, in, under, and around their properties and residences.

30.    Rather than provide such notice and information, for decades, Defendants concealed from the public, the Plaintiffs, and the Class Members the presence of Site Contaminants released and affecting their properties and residences located in the Class Area.

31.    Plaintiffs and the Class Members reasonably believed that the groundwater, surface water, air, and soil in their Canoga Park neighborhood did not pose any greater health hazard than any other groundwater, air, soil, or natural resources in a typical unpolluted residential community.

32.     Plaintiffs' and the Class Members' properties have each been exposed to the Contamination due to Defendants' acts and omissions in owning, operating, containing, and remediating the Site and the Contamination.

33.     Plaintiffs and the Class Members seek redress and damages for economic losses, such as loss of property value and interference with their use and enjoyment of their property; the prompt identification, delineation, cleanup, excavation, treatment, abatement and removal of Contaminants from their properties; and punitive damages and other damages as the result of the carelessness, recklessness, negligent, willful and wanton actions in violation of law, and willful disregard of persons who foreseeably might be harmed by such acts or omissions by the Defendants.

34.     Defendants, despite their knowledge of the serious health and environmental effects associated with the Contaminants migrating throughout the Class Area and the surrounding environment, failed to warn the public in general, and the Plaintiffs and the Class Members in particular, of the dangers that the historical use activities at the Site and the Contamination threat that the Site posed.

35.     Despite their knowledge of the serious health and environmental effects associated with Site Contamination, Defendants did not adequately design the Site investigation and the Site Contaminant response and corrective action in the Class Area. Nor did Defendants publicize the scope and extent of Contamination (and its associated risks). These actions and omissions prevented Plaintiffs and Class Members from making appropriate responses and enabled Defendants to avoid taking all appropriate and reasonable steps to address and respond at these Class Area properties in a timely manner. As a result, Plaintiffs and the Class Members suffered as a result of Defendants' gain resulting in prolonged exposures and harm due to these dangerous chemical Contaminants.

## EQUITABLE TOLLING OF APPLICABLE STATUTE OF LIMITATIONS

36.     Plaintiffs and the Class Members incorporate by reference all prior paragraphs of this Complaint as if fully set forth herein.

37.     The running of any statute of limitations has either not begun to run or has been tolled by reason of Defendants' concealment. Defendants, through their affirmative misrepresentations and omissions, actively concealed from Plaintiffs and Class Members the pollution present on, at and around their properties and Plaintiffs and Class Members only recently became aware of such contamination on, at and around their properties and residences.

38.     As a result of Defendants' actions, Plaintiffs and the Class Members could not reasonably know or have learned through reasonable diligence that Plaintiffs' and the Class Members' properties were contaminated with significantly elevated levels of Contaminants and that those risks were the direct and proximate result of Defendants' acts and omissions.

39.     Defendants are estopped from relying on any statute of limitations because of their concealment of the character, quality, scope, extent, and nature of the Contamination at, in, under, and on properties forming the Class Area. Defendants were aware of the non-public nature of the circumstances of the Contamination.  This non-public information (over which Defendants had and continues to have control) was not provided to the residential homeowners and purchasers, and persons living at properties within the class area, including the Plaintiffs and the Class Members. On information and belief, to this day Defendants have continued to fail to provide this information and facts to the Plaintiffs and Class Members.

40.     Plaintiffs and the Class Members had no knowledge that Defendants were engaged in the wrongdoing alleged herein. The Contamination cannot be seen either in the ground water beneath their property, or in the vapors from the

1  Contaminants entering their homes. Because of the concealment by Defendants,

2  and the failure to notify the Plaintiffs, the Class Members, and the public of the

3  Contamination and its attendant risks, neither the Plaintiffs nor the Class Members

4  have, nor could they have reasonably discovered, the Contamination at any time

5  prior to the commencement of this case.

6  **CLASS ALLEGATIONS**

7      41.     This class action is being filed by the Plaintiffs, pursuant to Federal

8  Rule of Civil Procedure 23, on behalf of themselves and others similarly situated.

9  These putative Class Members are similarly situated.

10     42.     Plaintiffs seek to certify the following class, defined as:

11         **Canoga Park Property Damage Class ("Property Class")**: Any
           and all persons that own any real property in or adjacent to the Canoga

12         Park contaminated area (collectively, the "Class Area") in Los

13         Angeles, CA.

14     43.     A map of the Canoga Park "Class Area" is shown in the figure below

15  (outlined in red):

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



**CLASS AREA - CANOGA PARK. CA**

Legend
CLASS AREA

44.     To the extent revealed by discovery and investigation, there may be additional appropriate classes and/or subclasses derived from the above class definition which are broader and/or narrower in scope.

45.     Excluded from the classes are the Defendants, any entity that has a controlling interest in the Defendants, their legal representatives, officers, directors, assigns, successors, employees, agents and members of their immediate families; the governmental and judicial officers to whom this case is assigned, their staff, (and the members of their immediate families).

46.     This Court may maintain these claims as a Class Action pursuant to Fed. R. Civ. P. 23(a), 23(b)(1), 23(b)(2), 23(b)(3) and/or 23(c)(4).

## **Numerosity**

47.     Fed. R. Civ. P. 23(a)(1): The members of each class are so numerous that joinder of all members is impractical. There are over 3800 residential use properties in the Class Area. The number of persons that own the 3800 plus properties located within the Class Area is estimated to exceed 5000 persons. The number of Class Members is such that it exceeds the number that reasonably allows for joinder of all Class Members and, therefore, the number of members of the Property Class satisfies Fed. R. Civ. P. 23 (a)(1).

48.     The number of persons in the Medical Monitoring Class is, by definition, greater than the number of members in the Property Class because a class member need only to have lived or worked on a property in the Class Area for a period of time sufficient to appreciably increase their risk of injury based on the factors listed below. Thus, because more than one (1) person could reside in each of the 3800 Class Area properties at any one time and because many of these Class Area properties have had multiple residents over the years (operations began at the Site in circa 1967), the number of Medical Monitoring Class Members is such that it exceeds the number that reasonably allows for joinder of all Medical Monitoring Class Members and, therefore, the number of members of the Medical

Monitoring Class satisfies Fed. R. Civ. P. 23 (a)(1).

**<u>Commonality</u>**

49.     Fed. R. Civ. P. 23(a)(2):  There are common questions of law and fact that affect the rights of every member of each respective class, and the types of relief sought are common to every member of each respective class. The same conduct by Defendants has injured or will injure all Class Members.

50.     A class action is superior to other available methods of litigation for the fair and efficient adjudication of this controversy, in satisfaction of Fed. R. Civ. P. 23(a)(2). The same conduct by Defendants has injured each respective Class Member. Common questions of law and/or fact that are common to the respective Classes include, but are not limited to:

    a.     Whether Defendants, through their acts or omissions at the Site, proximately caused Contaminants to be released and migrate into, at, on, or around the Class Area;

    b.     Whether Defendants failed to exercise reasonable care in their handling, storing, transporting, using, releasing, discharging, emitting, disposing and/or failed to reasonably investigate, remediate and abate the Contaminants;

    c.     Whether Defendants violated applicable standards concerning handling, storing, transporting, use, release, discharge, emission, disposal and/or failure to investigate and remediate the Contaminants;

    d.     Whether Defendants' acts of releasing, discharging, spilling, emitting, allowing migrating or depositing Contaminants onto Plaintiffs' properties, and/or their failure to remove or abate such contamination from

Plaintiffs' properties, constitutes a private nuisance;

e.  Whether Defendants' releasing, discharging, emitting or depositing Site Contaminants onto Plaintiffs' properties, and/or their failure to remove such contamination, constitutes a trespass;

f.  Whether Defendants proximately caused Site Contaminants to be released into the environment, and Plaintiffs' and Class Members' properties and persons have been exposed to such Contaminants;

g.  Whether, as a proximate result of the exposure to Site Contaminants, Plaintiffs and the members of the Medical Monitoring Classes have an increased risk of contracting a serious diseases or a serious illness;

h.  Whether the increased risk of disease and illness makes periodic medical examinations and screening of the Plaintiffs and members of the Medical Monitoring Class reasonable;

i.  Whether a medical monitoring procedure exists that makes early detection of the disease and illness associated with exposure to the Site Contaminants possible;

j.  Whether the prescribed medical monitoring regimen is reasonable according to contemporary medical and scientific principles;

k.  Whether, as a result of the exposure to Site Contaminants, Plaintiffs' properties and the properties of the members of the Property Class have suffered a loss in value;

l.    Whether, as a result of the exposure to Site Contaminants, Plaintiffs' properties and the properties of the members of the Property Class have suffered a loss in their use and enjoyment of their property;

m.    Whether Defendants' actions created a public nuisance;

n.    Whether the Contamination created by Defendants in the Class Area is reasonably abatable;

o.    Whether the nature of the Defendants' actions and the resulting Contamination constitutes continuing negligence; and

p.    Whether the failure to warn Plaintiffs and the Class Members constitutes willful deceit and reckless endangerment by the Defendants.

51.    These questions of law and/or fact are common to the respective Classes and predominate over any questions affecting only individual Class Members.

## Typicality

52.    Fed. R. Civ. P. 23 (a)(3): The claims of Plaintiffs are typical of the claims of the Class Members as required by Rule 23(a)(3), in that all claims are based upon the same factual and legal theories. It is the same conduct of the Defendants that injured each Class Member. The principal issue in this case involves Defendants' conduct in the wrongful handling, storing, transporting, using, releasing, discharging, emitting, and disposing of the Site Contaminants, and Defendants' failing to quickly warn of, abate and remediate the Site Contaminants. Their operations at 8020 Deering Avenue have impacted all members of the respective Classes.

## Adequacy

53.    Fed. R. Civ. P. 23(a)(4): Plaintiffs will fairly and adequately represent

and protect the interests of the respective Classes, as required by Rule 23(a)(4). Plaintiffs have retained counsel with substantial experience in the prosecution of class actions and environmental litigation. Plaintiffs and their counsel are committed to the vigorous prosecution of this action on behalf of the Class Members and have the financial resources to do so. Neither Plaintiffs nor counsel has any interest adverse to those of the Class Members.

54.     Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(1) because the prosecution of separate actions by individual Class Members would create a risk of inconsistent and/or varying adjudications that would establish incompatible standards of conduct for Defendants. Adjudications respecting individual Class Members would, as a practical matter, be dispositive of the interests of the other Class Members or would risk substantially impairing or impending their ability to prosecute their interests.

55.     Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to all Class Members, thereby making relief in the form of an injunction - requiring Defendants to abate the nuisance, to conduct a prompt and thorough investigation, and to engage in identification, excavation, containment, abatement and removal of all Site Contaminants from the properties of Plaintiffs and the Members of the Classes - reasonably appropriate.

56.     Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendants have acted or refused to act on grounds applicable to all Members of the Medical Monitoring Class, thereby making relief in the form of an injunction requiring Defendants to establish a fund for the reasonable costs of medical monitoring appropriate.

57.     In addition, Plaintiffs and the Medical Monitoring Class members allege that:

   •   Plaintiffs and the members of the respective Classes have

- 16 -

each been exposed to Site Contaminants due to Defendants' means and methods in handling, storing, use, disposal and/or failure to properly remediate the Contaminants.

- Site Contaminants are hazardous and toxic.
- The Plaintiffs' and the Class Members' exposure to the Contamination was caused by Defendants' actions in the handling, storing, use, disposal and/or failure to properly remediate the Contaminants.
- As a proximate result of the exposure to Site Contaminants, Plaintiffs and the respective Medical Monitoring Class Members have a significantly increased risk of contracting serious diseases.
- The need for medical monitoring is a reasonably certain consequence of the Plaintiffs' and the Class Members' exposure to the Contamination based on an analysis of:
  - the significance and the extent of their exposure to the Contaminants;
  - the toxicity of these Contaminants;
  - the seriousness of the diseases for which Plaintiffs and Class Members are at an increased risk;
  - the relative increase in the Plaintiffs' and the Class Members' chances of developing a disease as a result of the exposure when compared to (a) Plaintiffs' and the Class Members' chances of developing the illness or disease had they not been exposed to the Contaminants, and (b) the chances of members of the public at large of developing the

same illness or disease; and

- the clinical value and health benefits of early detection, diagnosis, and treatment.

- A monitoring procedure exists that makes early detection of the diseases possible.

- The monitoring regimen for the exposures to the Contamination is different from that normally recommended in the absence of Plaintiffs' and Class Members' exposure to Site Contamination.

- The prescribed monitoring regimen is reasonable according to contemporary medical and scientific principles.

58. Plaintiffs and Class Members have suffered, and will continue to suffer, harm and damages as a result of Defendants' unlawful and wrongful conduct.

59. A class action is superior to other available methods for the fair and efficient adjudication of the controversy under Fed. R. Civ. P. 23 (b)(3). Maintenance of this action as a class action is a fair and efficient method for adjudication of this controversy. Absent a class action, most Class Members likely would find the cost of litigating their claims prohibitive and would have no effective remedy at law. The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants and promotes consistency and efficiency of adjudication. Thus, it would be impracticable and undesirable for each member of each putative class who has suffered harm to bring a separate action. In addition, the maintenance of separate actions would place a substantial and unnecessary burden on the Court and could result in inconsistent adjudications, while a single class action can determine, with judicial economy,

1  the rights of all Class Members.

2  60.    Class certification is also appropriate because this Court can

3  designate particular claims or issues for class-wide treatment and may designate

4  one or more subclasses pursuant to Fed. R. Civ. P. 23(c)(4).

5  61.    No unusual difficulties are likely to be encountered in the

6  management of this action as a class action.

7  62.    Plaintiffs and the Class Members were not in any way responsible for

8  the Site Contaminants in the Class Area.

9  **CAUSES OF ACTION**

10  **FIRST CLAIM – NEGLIGENCE - CONTINUING NEGLIGENCE**

11  63.    Plaintiffs repeat and re-allege each and every allegation contained in

12  the preceding paragraphs of this complaint as if set forth in full herein.

13  64.    At all relevant times hereto Defendants owed to Plaintiffs and Class

14  Members, who foreseeably could be injured by its negligence, a duty to exercise

15  reasonable care in using, handling, storing, disposing, releasing, and discharging

16  Site Contaminants, Defendants knew, or should have known, that their actions

17  could result in damage and injury to Plaintiffs, Class Members, their property, and

18  their residences.

19  65.    Defendants also owed a duty of care to Plaintiffs and Class Members

20  to exercise reasonable care in the disposal, storage, and remediation of Site

21  Contaminants particularly due to the proximity of their actions in relation to

22  Plaintiffs' and Class Members' residential property.

23  66.    Defendants further owed a duty to exercise reasonable care to

24  disclose the presence of these Contaminants, including carcinogenic materials, the

25  risks that they posed, and what Defendants knew about the presence and risks of

26  these Site Contaminants.

27  67.    Defendants further owed a duty to exercise reasonable care to abate

28  and manage the Site Contaminants to avoid further injury to Plaintiffs and Class

Members.

68.     These duties to exercise reasonable care arose out of the common law as well as relevant Federal and California environmental statutes and regulations.

69.     Defendants breached their duty, over a period of years, in at least the following respects:

a.     Failing, and continuing to fail, to prevent groundwater contamination and its migration off of the Site of the Contamination.

b.     Despite knowledge of the widespread presence of Site Contamination, and along with the knowledge of the health and environmental risks that these materials posed for those living in the Class Area, failing, and continuing to fail, to take appropriate actions in, on, at and around the Site (including acts into, onto, and under the land that forms the Class Area) and into private homes within the Class Area.

c.     Failing, and continuing to fail, to safely, properly and timely abate, remove, remediate and dispose of the hazardous and toxic Contamination, including carcinogenic materials.

d.     Failing, and continuing to fail, to warn and disclose to Plaintiffs and Class Members of the Contamination on, in, and around their properties, and the risks that this Contamination posed to them and to their families, and the likelihood that they were being exposed to carcinogenic chemicals.

e.     Defendants have failed, and continue to fail, to adequately and with due care identify the extent of Contamination from the Site, promptly notify property owners of impacts and health threats posed by those chemicals, and remediate these chemicals so as to reduce or remove the threat to Plaintiffs' and

- 20 -

Class Members' properties.

70.     As a result of Defendants' acts and omissions, as further detailed above, extensive Contamination has existed, exists and will continue to exist without affirmative abatement actions in and around the Class Area.

71.     As a result of Defendants' misconduct and continued malfeasance as set forth herein, Plaintiffs and Class Members have suffered and continue to suffer harm and damages, including, but not limited to, the loss of value to their property and the loss of the use and enjoyment of their property and an increased risk of serious injury/illness.

72.     At all relevant times, Defendants caused and continue to cause actual injury and actual damages to Plaintiffs and the Class Members and/or their property through acts and omissions actuated by actual malice and/or accompanied by a reckless, wanton and willful disregard of persons who foreseeably might be harmed by such acts or omissions.

73.     Defendants, despite knowledge of the serious health and environmental effects associated with exposure to such Contaminants, including carcinogenic materials, allowed for the development of Contaminated lands for development and sale for residential use despite being unfit for residential purposes due to the presence of the Contamination in, on, at and around the land comprising the Class Area and subsequently failed to warn Plaintiffs, the Class Members, and the public of the dangers such activities posed.

74.     Defendants, despite knowledge of the serious health and environmental effects associated with exposure to Site Contaminants, masked and continue to mask the true extent of contamination, thereby enabling themselves to avoid taking all appropriate steps to properly remediate the hazardous substances and levels of contamination in, on, at and around the Class Area or to remediate, abate, and mitigate dangers.

75.     As a direct and proximate result of the Defendants' continuing

wrongful acts and omissions, Plaintiffs and Class Members properties have been and will continue to be contaminated (without abatement), and the property value diminished and these properties are unfit for unfettered residential use.

76.     As a direct and proximate result of the Defendants' continuing wrongful acts and omissions, Plaintiffs and the Class Members currently suffer an increased risk of serious latent disease, including a number of types of cancer that are associated with exposure to Site Contaminants.

77.     As a direct and proximate result of the Defendants' continuing wrongful acts and omissions, Plaintiffs and the Class Members currently suffer actual property damage, diminution in the value of their property, stigma, need for abatement, cleanup costs, loss of use and enjoyment of their property and destruction of their community.

78.     Plaintiffs and the Class Members seek to recover against the Defendants for such damages, as well as the cost of periodic medical examinations necessary to detect the onset of physical harm that may be caused by Site contaminants on, at and around Plaintiffs' property.

**SECOND CLAIM – PRIVATE CONTINUING NUISANCE**

79.     Plaintiffs repeat and re-allege each and every allegation contained in the preceding paragraphs of this complaint as if set forth in full herein.

80.     Defendants' past, present and/or continuing acts and/or omissions constitute a nuisance in that Defendants have used the Site in a manner that has resulted in an unreasonable burden and interference on the Plaintiffs and the Class Members in the form of personal harm, inconvenience, annoyance and discomfort incidental to the contamination of their properties by Site Contaminants that leaked, leached, or discharged from the Site.

81.     Defendants' past, present and/or continuing activities, acts and/or omissions at the Site and in the property surrounding the Site including, but not limited to, the Class Area, constitute a private continuing nuisance resulting in

unreasonable interference with Plaintiffs' and the Class Members' right to the exclusive use and enjoyment of their properties due to the presence of contamination in the form of hazardous and toxic substances contaminating their properties and the surrounding environment, thereby exposing Plaintiffs and the Class Members to hazardous and toxic substances and substantially interfering with Plaintiffs' and the Class Members' free use and enjoyment of their properties.

82.    Defendants' past, present and/or continuing acts and/or omissions, resulting in high levels of hazardous Contamination in and on the properties surrounding the Site and/or Defendants' failure to remove or properly investigate, abate and remediate this hazardous Contamination, and allowing such Contamination to remain on Plaintiffs' and the Class Members' properties, the surrounding properties, and the surrounding environment, constitutes a nuisance in that Defendants have managed the Site and the remediation of Site Contaminants in a manner that has unreasonably interfered with Plaintiffs' and the Class Members' property interests, use and enjoyment, and health and safety.

83.    Defendants' past, present and/or continuing acts and/or omissions, resulting in high levels of Site Contamination at and on the properties surrounding the Site and/or Defendants' failure to remove or properly investigate and remediate this hazardous Contamination, and allowing such contamination to remain on the private properties surrounding Plaintiffs' properties constitutes a nuisance in that Defendants will now have to engage in extensive and disruptive abatement, remediation and removal of these contaminants that will result in unreasonable interference with Plaintiffs' and the Class Members' use and enjoyment of their property.

84.    Defendants' Contamination presently impacts Plaintiffs' and the Class Members' property, causes a diminution in their property values, is a blight on Plaintiffs' community, causes annoyance, interference and inconvenience and deprives Plaintiffs of the free use and enjoyment of property, including, but not

limited to, the inability to fully use, enjoy and recreate on their indoor and outdoor spaces, freely perform certain work and repairs on their property; and requiring the property to be dug up, excavated, handled with extreme caution and otherwise disrupted causing inconvenience and disruption.  Plaintiffs and Class Members additionally suffer fear of adverse health effects, including cancer and other latent, serious illness.

85.    In the alternative, Defendants' disposal of and/or failure to control and/or remediate Site Contaminants from residential areas violates applicable standards and/or regulations, which constitutes a nuisance *per se*.

86.    Defendants' knew or should have known that the invasion of Site Contaminants onto Plaintiffs' and the Class Members' properties and residences was substantially certain to result.

87.    This interference with Plaintiffs' and the Class Members' use and enjoyment of their property is and will continue to be substantial, unreasonable, unwarranted and unlawful until abated.

88.    As a result of Defendants' wrongful acts and omissions, Plaintiffs and the Class Members have suffered and will suffer exposure to hazardous substances, annoyance, inconvenience, discomfort, displacement, fear of adverse health effects and economic loss for which damages are justified.

89.    As a direct and proximate result of Defendants' misconduct, Plaintiffs and the Class Members have suffered and will continue to suffer economic losses and the loss of value to their property and other damages.

90.    The nuisance that Defendants created is a continuing nuisance in that it has continued and remains unabated even though such nuisance is reasonably abatable.

91.    Separate and apart from acting negligently, at all relevant times Defendants caused injury and damages to the Plaintiffs, the Class Members and/or their property through acts and omissions actuated by actual malice and/or

1   accompanied by a reckless, wanton and willful disregard of persons who

2   foreseeably might be harmed by such acts or omissions.

3        92.   Defendants, despite knowledge of the serious health and

4   environmental effects associated with exposure to the Site Contaminants failed to

5   properly investigate and remediate said Contaminants from the surrounding

6   environment, and had knowledge (or should have known) that the land,

7   groundwater and indoor air had been, is, or would be developed for residential use;

8   at the same time as failing to warn purchasers and existing residents of the dangers

9   of such Contaminants.

10       93.   Defendants, despite knowledge of the serious health and

11  environmental effects associated with exposure to the Site Contaminants, did not

12  disclose the true extent of Contamination, thereby enabling the Defendants to

13  avoid taking all appropriate steps to properly abate and remediate Site

14  Contaminants and to mitigate their dangers in the Class Area.

15       94.   Defendants, despite knowledge of the serious health and

16  environmental effects associated with exposure to the Site Contaminants, failed to

17  properly warn, abate and remediate such Contamination in the Class Area.

### THIRD CLAIM – STRICT LIABILITY – ABNORMALLY DANGEROUS ACTIVITY

20       95.   Plaintiffs repeat and re-allege each and every allegation contained in

21  the preceding paragraphs of this Complaint as if set forth in full herein.

22       96.   Defendants, by using, disposing of, not controlling, and then failing

23  to properly identify, contain, warn, abate, remediate and ultimately disclose the

24  presence of Site Contaminants have engaged in an activity that is abnormally

25  dangerous, ultrahazardous, and constitutes inherently or intrinsically dangerous

26  activities for which they are strictly liable to the Plaintiffs and the Class Members.

27       97.   Defendants' activities pose a high degree of risk of harm to Plaintiffs

28  and to the Class Members. The likelihood that the harm that results from the

Defendants' activities will be great is based on the fact that the hazardous chemical Contamination presents serious health risks, including cancer, which are not detectible by human ears and eyes (silent and hidden from common view) and thereby remains unknown without scientific investigation and analysis. Yet, the pernicious nature of these Contaminants is well known and should not be used at or near residential property, which is the case at and near the Site and in the Class Area.

98.     The Contaminants are not commonly used; they are typically used only in heavy industrial manufacturing and military applications such as degreasing and paint stripping of equipment. The chemical Contaminants are typically only used at locations where their ready and common release into the environment (due to their physical, fate and transport characteristics) will not cause harm to human health and the environment. These Contaminants readily and rapidly will contaminate the soils, groundwater and air in the vicinity of their use and very rapidly spread from the locations of the release and spills. Because of these characteristics and the serious and known health consequences associated with exposure, Defendants' use of the chemical Contaminants created a high degree of risk to Plaintiffs and the Class Members.

99.     The Site and the Class Area is in Canoga Park, Los Angeles, California, and is made up primarily of residences while being transected by Sherman Way in historic downtown Canoga Park that is the "main street" of the Canoga Park community. This is a vibrant small business, social and cultural mecca of great value and historic significance to Southern California. There are antique shops, live entrainment, music clubs and restaurants in this area. These Contaminants are not compatible with the people, family and residential community nature and uses which are the predominant current and future uses in the Class Area.

100.     Defendants' use, management, investigation and remediation at their

Site with actual knowledge that nearby properties were residential use is an abnormally dangerous activity.  That danger cannot be immediately eliminated through the use of reasonable care. As such, Defendants' actions at the Site were inherently and unreasonably dangerous.  There is no safe way to house people on these lands that have not been properly treated, abated or remediated and therefore the contaminant vapors pose unreasonably unsafe hazards to human health.

101.   Defendants' disposal, storage, and inadequate abatement and remediation of these contaminated soil and groundwater areas, and Defendants' failure to properly investigate, delineate, identify, abate, remediate and warn Plaintiffs and the Class Members about the contamination in the Class Area was a matter of uncommon usage and was not appropriate activity in the places where it was carried out.

102.   Residential exposure to significantly elevated levels of Site Contaminants, including these carcinogenic industrial wastes, lead to the increased risk of serious health impacts, including cancer, and birth defects, and it  is a critical societal problem in Southern California, and thus, the value of Defendants' activities, including their flawed and inadequate warning, abatement and remediation, is substantially outweighed by the serious health and environmental and health problems caused by their actions.

103.   As a direct and proximate result of Defendants' conduct as set forth herein, Plaintiffs and the Class Members have suffered and continue to suffer actual damages and injuries including economic losses, property damages and the loss of value to their property; loss of use and enjoyment, pain and suffering, and other damages as set forth herein.

104.   Separate and apart from acting negligently, at all relevant times Defendants' abnormally dangerous activities caused injury and damages to the Plaintiffs, Class Members, and/or their property and residences through acts and omissions actuated by actual malice and/or accompanied by a reckless, wanton

1 and willful disregard of persons who foreseeably might be harmed by such acts or
2 omissions.

3 ### <u>FOURTH CLAIM – TRESPASS/ CONTINUING TRESPASS</u>

4 105.   Plaintiffs repeat and re-allege each and every allegation contained in
5 the preceding paragraphs of this complaint as if set forth in full herein.

6 106.   Defendants intentionally used, disposed of and stored chemicals that
7 directly caused, and continue to cause, the migration of Site Contamination at,
8 under, onto, and into Plaintiffs' and Class Members' properties and homes.

9 107.   These chemicals on their land constitute uninvited, unwanted and
10 unlawful invasion of Plaintiffs' and Class Members' properties and homes.

11 108.   Defendants' trespass has proximately caused, and continues to cause,
12 Plaintiffs and the Class Members to suffer economic and non-economic damages
13 including remediation and abatement costs, loss of use and enjoyment, stigma, and
14 loss of property value.

15 109.   Plaintiffs' and the Class Members' right to be free of trespass has been
16 and continues to be denied by Defendants.

17 ### <u>FIFTH CLAIM- UNJUST ENRICHMENT</u>

18 110.   Plaintiffs repeat and re-allege each and every allegation contained in
19 the preceding paragraphs of this complaint as if set forth in full herein.

20 111.   By releasing, spilling, discharging, and then failing to warn and abate
21 and remediate Site Contamination at the Plaintiffs' and the Class Members
22 property and homes, Defendants' costs were significantly reduced by avoiding
23 costs of lawful handling and disposal of the Contaminants and hazardous wastes
24 generated at their Site.

25 112.   This unlawful disposal and storage of hazardous waste contaminants
26 at, on, in and under the Class Area results in damages and additional costs to
27 Plaintiffs and the Class Members as diminished property value, stigma,
28 remediation and abatement costs.

**JURY TRIAL DEMAND AND PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs request that the Court enter an order or judgment against Defendants as follows:

A.  Enter an Order pursuant to Federal Rule of Civil Procedure 23 permitting this action to be maintained as a class action, appointing Plaintiffs as the representatives of the Classes and Plaintiffs' counsel as counsel for the Classes;

B.  Enter an Order requiring the Defendants to bear the costs of medical monitoring, for the Medical Monitoring Class including, but not limited to, testing, examination, preventative and diagnostic screening and treatment for conditions that can result from, or may potentially result from, exposure to the Site Contaminants;

C.  Enter an Order requiring injunctive relief – that the Defendants bear the costs of a property inspection, abatement and remediation program, including, but not limited to, testing, examination, abatement and remediation of the Site Contaminants at each Class Area Property;

D.  Enter an Order requiring the Defendants to bear the cost of publication to Plaintiffs and Class Members of approved guidelines and procedures for medical screening and monitoring of Plaintiffs and Class Members, the content, form and manner of such publication to be approved by the Court;

E.  Enter judgment in favor of Plaintiffs and Class Members against Defendants for costs to be incurred in medical monitoring, loss of property value, stigma, loss of use and enjoyment, unjust enrichment and for all other relief, in an amount to be proven at trial, as to which they may be entitled, including interest, fees and costs of this suit;

F.  Award prejudgment and post-judgment interest as provided by law;

G.     Award punitive damages; and

H.     Award such other relief as this Court deems necessary, just and proper.

Dated:  May 10, 2021

_____

Michael Akselrud (SBN 285033)
michael.akselrud@lanierlawfirm.com
**THE LANIER LAW FIRM, P.C.**
21550 Oxnard St., 3rd Floor
Woodland Hills, California 91367
Telephone: (310) 277-5100
Facsimile: (310) 277-5103

W. Mark Lanier (pro hac vice)
WML@lanierlawfirm.com
Chris L. Gadoury (pro hac vice)
chris.gadoury@lanierlawfirm.com
Alex J. Brown (pro hac vice)
Alex.Brown@lanierlawfirm.com
**THE LANIER LAW FIRM, P.C.**
10940 W. Sam Houston Pkwy N
Houston, Texas 77064
Telephone: (713) 659-5200
Facsimile: (713) 659-2204

Christopher T. Nidel
(to be admitted *pro hac vice*)
chris@nidellaw.com
Jonathan Nace
(to be admitted *pro hac vice*)
jon@nidellaw.com
**NIDEL & NACE, P.L.L.C.**
One Church Street
Suite 802
Rockville, Maryland 20850
Telephone: (202) 780-5153

David P. Page
(to be admitted pro hac vice)
dpage@eenradvocates.com
Cheryl M. Thigpen
(to be admitted pro hac vice)
cthigpen@eenradvocates.com
**ENVIRONMENTAL ENERGY & NATURAL
RESOURCES ADVOCATES, PLLC**
1921 S Boston Ave.
Tulsa, Oklahoma 74119
Telephone: (918) 764.8984

Gideon Kracov (he/him/his) (Cal. SBA # 179815)
gk@gideonlaw.net
Jordan R. Sisson (Cal. SBN # 327057)
jordan@gideonlaw.net
**LAW OFFICE OF GIDEON KRACOV**
801 S. Grand Ave., 11th Floor
Los Angeles, California 90017
Telephone: (213) 629-2071

*Attorneys for the Plaintiffs and the
Putative Class Members*