PATRICK W. DENNIS, SBN 106796
  pdennis@gibsondunn.com
CHRISTOPHER CHORBA, SBN 216692
  cchorba@gibsondunn.com
PERLETTE MICHELE JURA, SBN 242332
  pjura@gibsondunn.com
ABBEY HUDSON, SBN 266885
  ahudson@gibsondunn.com
ALEXANDER SWANSON, SBN 280947
  aswanson@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: 213.229.7000
Facsimile: 213.229.7520

JOHN CERMAK, SBN 146799
  jcermak@cermaklegal.com
HANNAH BLOINK, SBN 307442
  hbloink@cermaklegal.com
CERMAK & INGLIN, LLP
12121 Wilshire Blvd, Ste 322
Los Angeles, CA 90025-1166
Telephone: 424.465.1531
Facsimile: 424.371.5032

Attorneys for Defendants NORTHROP
GRUMMAN CORPORATION and
NORTHROP GRUMMAN SYSTEMS
CORPORATION

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JED and ALISA BEHAR,<br><br>                    Plaintiffs,<br><br>          v.<br><br>NORTHROP GRUMMAN CORPORATION and NORTHROP GRUMMAN SYSTEMS CORPORATION,<br><br>                    Defendants. | CASE NO. 2:21-cv-03946-FMO-SK<br><br>**DEFENDANTS NORTHROP GRUMMAN CORPORATION AND NORTHROP GRUMMAN SYSTEMS CORPORATION'S NOTICE OF MOTION AND MOTION TO DISMISS CLAIMS FOR: (1) STRICT LIABILITY (ABNORMALLY DANGEROUS ACTIVITY); (2) PUNITIVE DAMAGES; AND (3) UNJUST ENRICHMENT**<br><br>**Hearing**:<br>Date:        September 23, 2021<br>Time:        10:00 a.m.<br>Place:       Courtroom 6D, 6th Floor,<br>              350 W. 1st Street,<br>              Los Angeles, California 90012<br>Judge:      Hon. Fernando M. Olguin<br>Complaint Served: June 30, 2021 |

Gibson, Dunn &
Crutcher LLP

1

### **NOTICE OF MOTION AND MOTION**

2

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

3

    PLEASE TAKE NOTICE THAT on September 23, 2021, at 10:00 a.m., or as

4

soon thereafter as the matter may be heard, in Courtroom 6D of the above-entitled court,

5

located at 350 W. 1st Street, 6th Floor, Los Angeles, California 90012, Defendants

6

Northrop Grumman Corporation and Northrop Grumman Systems Corporation will and

7

hereby do move the Court, pursuant to Rule 12(b)(6) of the Federal Rules of Civil

8

Procedure, for an order dismissing Plaintiffs' claim against Defendants for strict liability

9

based on abnormally dangerous activity (the "strict liability claim"), demand for punitive

10

damages, and request for relief based on unjust enrichment.

11

    Plaintiffs' complaint fails to state a claim upon which relief may be granted as to

12

each of these issues as follows:  (1) With respect to Plaintiffs' strict liability claim, the

13

Complaint does not allege facts that, if true, establish that Defendants or their

14

predecessors engaged in activities that were ultrahazardous, that the risks of such

15

activities could not be eliminated through the exercise of reasonable care, or that

16

Plaintiffs' alleged injuries fall within the scope of any alleged ultrahazardous risk; (2)

17

Plaintiffs' demand for punitive damages fails because Plaintiffs have not alleged conduct

18

by any individual officer, director, or managing agent of Defendants that was malicious,

19

oppressive, or fraudulent; and (3) Plaintiffs' claim for unjust enrichment should be

20

dismissed because it is not a recognized claim under California law and, even if it were,

21

Plaintiffs do not allege that they lack an adequate remedy at law—a necessary

22

prerequisite.

23

    This Motion is based upon this Notice of Motion and Motion, the attached

24

Memorandum of Points and Authorities, the pleadings and papers on file in this action,

25

any argument in connection with the Motion, and such further evidence or arguments as

26

the Court may consider.

27

    This Motion is made following the conference of counsel pursuant to L.R. 7-3,

28

which took place on August 6, 2021.  Defendants understand from the conference that

Gibson, Dunn &
Crutcher LLP

Plaintiffs will oppose this Motion. Separately, on August 16, 2021, Plaintiffs indicated that they plan to amend the Complaint with respect to their unjust enrichment claim only. Given that Defendants' response to the Complaint is due by August 20, 2021, and given the Court's Standing Order requiring any requests for extensions be filed "no later than five (5) court days prior to the expiration of the scheduled date," *see* Dkt. 22, Defendants file this Motion to comply with the current response deadline. In addition, the proposed amendment–to the unjust enrichment claim only—would not obviate the issues raised in this Motion.

Dated: August 19, 2021                    GIBSON, DUNN & CRUTCHER LLP


                                          By:   */s/ Patrick W. Dennis*
                                                Patrick W. Dennis

                                          Attorneys for Defendants NORTHROP
                                          GRUMMAN CORPORATION and
                                          NORTHROP GRUMMAN SYSTEMS
                                          CORPORATION

Gibson, Dunn &
Crutcher LLP

3

# TABLE OF CONTENTS

Page

MEMORANDUM OF POINTS AND AUTHORITIES ................................................ 1

I.    INTRODUCTION AND SUMMARY OF ARGUMENT ................................. 1

II.   SUMMARY OF ALLEGED FACTS ................................................ 3

III.  THE LEGAL STANDARDS GOVERNING THIS MOTION .......................... 5

IV.   ARGUMENT................................................................ 6

      A.    Plaintiffs Do Not State a Claim for Strict Liability Based on Abnormally Dangerous Activity. ................................ 6

            1.    *Plaintiffs Cannot Allege That the Nature of Defendants' Alleged Use of the Chemicals at Issue Is Ultrahazardous.* ............ 8

            2.    *Plaintiffs Fail to Allege That the Risks From Defendants' Alleged Activities Cannot Be Eliminated by the Exercise of Reasonable Care.* ................................ 10

            3.    *Strict Liability Is Not Appropriate for Plaintiffs' Alleged Economic Injuries.* ................................ 11

      B.    Plaintiffs Do Not Plead Facts Necessary to Support Their Demand for Punitive Damages. ................................ 12

      C.    Plaintiffs' "Cause of Action" for Unjust Enrichment Must Be Dismissed. ................................ 14

V.    CONCLUSION ............................................................ 16

Gibson, Dunn &
Crutcher LLP

i

# TABLE OF AUTHORITIES

Page(s)

CASES

*Altman v. PNC Mortgage*,
    850 F. Supp. 2d 1057 (E.D. Cal. 2012) .............................................................. 12, 13

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................................. 5, 6, 10

*Banks v. R.C. Bigelow, Inc.*,
    --- F. Supp. 3d ---, 2021 WL 1734779 (C.D. Cal. May 3, 2021) ....................... 15, 16

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ........................................................................................ 5, 10

*Blue Water Boating Inc. v. Plains All Am. Pipeline, L.P.*,
    No. 16-3283 PSG, 2017 WL 405425 (C.D. Cal. Jan. 26, 2017) ............................. 12

*In re Burbank Env't. Litig.*,
    42 F. Supp. 2d 976 (C.D. Cal. 1998) .................................................................. 9, 11

*Chavez v. S. Pac. Transp. Co.*,
    413 F. Supp. 1203 (E.D. Cal. 1976) ............................................................. 7, 11, 12

*Cisneros v. Instant Capital Funding Group, Inc.*,
    263 F.R.D. 595 (E.D. Cal. 2009) ............................................................................ 13

*Clark v. Am. Honda Motor Company, Inc.*,
    --- F. Supp. 3d ---, 2021 WL 1186338 (C.D. Cal. March 25, 2021) ................. 15, 16

*Clark v. Di Prima*,
    241 Cal. App. 2d 823 (1966) ..................................................................................... 7

*Clarke v. Pac. Gas & Elec. Co.*,
    501 F. Supp. 3d 774 (N.D. Cal. 2020) ............................................................ 7, 8, 9

*Collins v. eMachines, Inc.*,
    202 Cal. App. 4th 249 (2011) ................................................................................. 15

*Cousins v. Lockyer*,
    568 F.3d 1063 (9th Cir. 2009) ................................................................................... 5

Gibson, Dunn & Crutcher LLP

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Cruz v. HomeBase*,
    83 Cal. App. 4th 160 (2000) ....................................................................... 13

*Cyrus v. Haveson*,
    65 Cal. App. 3d 306 (1976) ....................................................................... 13

*Durrell v. Sharp Healthcare*,
    183 Cal. App. 4th 1350 (2010) ................................................................... 14

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
    751 F.3d 990 (9th Cir. 2014) .................................................................... 5, 6

*Edwards v. Post Transp. Co.*,
    228 Cal. App. 3d 980 (1991) ............................................................. 7, 10, 11

*Escola v. Coca Cola Bottling Co. of Fresno*,
    24 Cal. 2d 453 (1944) ................................................................................ 11

*Goodwin v. Reilley*,
    176 Cal. App. 3d 86 (1985) ....................................................................... 11

*Greenfield MHP Assocs., L.P. v. Ametek, Inc.*,
    145 F. Supp. 3d 1000 (S.D. Cal. 2015) ................................................... 9, 11

*Henderson v. Sec. Nat'l Bank*,
    72 Cal. App. 3d 764 (1977) ....................................................................... 12

*Jackson v. Easy Bay Hosp.*,
    980 F. Supp. 1341 (N.D. Cal. 1997) .......................................................... 13

*Levine v. Blue Shield of Cal.*,
    189 Cal. App. 4th 1117 (2010) ................................................................... 14

*Luthringer v. Moore*,
    31 Cal. 2d 489 (1948) ............................................................................ 7, 11

*McVicar v. Goodman Global, Inc.*,
    1 F. Supp. 3d 1044 (C.D. Cal. 2014) .......................................................... 14

*Melchior v. New Line Prods., Inc.*,
    106 Cal. App. 4th 779 (2003) ..................................................................... 14

Gibson, Dunn &
Crutcher LLP

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Moore v. R.G. Indus., Inc.*,
 789 F.2d 1326 (9th Cir. 1986) ...................................................................... 7

*O'Connor v. Boeing N. Am., Inc.*,
 No. 97-1554 DT, 2005 WL 6035255 (C.D. Cal. Aug. 18, 2005) ............................ 9

*Palmisano v. Olin Corp.*,
 No. 03-01607 RMW, 2005 WL 6777560 (N.D. Cal. June 24, 2005) ...................... 7

*Pierce v. Pac. Gas & Elec. Co.*,
 166 Cal. App. 3d 68 (1985) ............................................................................ 8

*Smith v. Lockheed Propulsion Co.*,
 247 Cal. App. 2d 774 (1967) ................................................................... 7, 11

*Sonner v. Premier Nutrition Corp.*,
 971 F.3d 834 (9th Cir. 2020) ........................................................................ 15

*Stanley Otake v. Wells Fargo Bank, N.A.*,
 No. 19-2266-JVS, 2020 WL 2527043 (C.D. Cal. Apr. 8, 2020) ............................ 6

*Taiwan Semiconductor Mfg. Co. Ltd. v. Tela Innovations, Inc.*,
 No. 14-00362, 2014 WL 3705350 (N.D. Cal. July 24, 2014) ................................ 14

*Takahashi v. Loomis Armored Car Serv.*,
 625 F.2d 314 (9th Cir. 1980) .......................................................................... 6

*U.S. v. S. Cal. Edison*,
 300 F. Supp. 2d 964 (E.D. Cal. 2004) .............................................................. 8

*Waddell v. Trek Bicycle Corp.*,
 No. 15-2082-DOC, 2016 WL 7507769 (C.D. Cal. Jan. 25, 2016)................... 13, 14

*Williamson v. Reinalt-Thompson Corp.*,
 No. 11-03548, 2012 WL 1438812 (N.D. Cal. Apr. 25, 2012) ................................ 14

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
 313 F. Supp. 3d 1113 .................................................................................... 13

**STATUTES**

Cal. Civ. Code § 3294(a) ................................................................................. 12

Gibson, Dunn & Crutcher LLP

# TABLE OF AUTHORITIES
(continued)

Page(s)

Cal. Civ. Code § 3294(b) ................................................................................ 13

**TREATISES**

Restatement 2d of Torts, § 520 ........................................................................ 7

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiffs' Complaint alleges that their residential properties were contaminated by chlorinated solvents such as trichloroethylene ("TCE") and perchloroethylene ("PCE") used in commercial manufacturing that took place decades ago at an industrial facility in Canoga Park.  Defendants Northrop Grumman Corporation and Northrop Grumman Systems Corporation never actually operated the facility, but Plaintiffs nevertheless blame them for the alleged contamination and hold them liable for allegedly failing to notify the community about it.  Plaintiffs also assert that the contamination has reduced the value of their property and exposed them to the risk of developing cancer or other illnesses in the future, allegedly necessitating a medical monitoring program. Plaintiffs bring causes of action for negligence, nuisance, strict liability based on abnormally dangerous activity ("strict liability"), trespass, and "unjust enrichment," and they seek compensatory damages, injunctive relief (for abatement and remediation), and punitive damages.  Defendants move under Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss Plaintiffs' strict liability claim, request for relief based on unjust enrichment, and their demand for punitive damages.

Plaintiffs' strict liability claim is facially defective for at least three reasons: ***First***, Plaintiffs fail to appreciate that the abnormally dangerous or "ultrahazardous" activity doctrine scrutinizes the risks inherent in the activity that led to the harm-causing accident, not the risks that arise in the accident's aftermath.  Plaintiffs make much of the hazards that TCE, PCE, and other chlorinated solvents pose to the community after they are released into the environment, but apart from briefly mentioning a few ordinary commercial/industrial processes, they have nothing to say about any inherent hazards of those processes that were the purported cause of the chemical releases.  Courts in this Circuit that have examined the commercial and industrial uses of chlorinated solvents like TCE and PCE have repeatedly rejected, including at the pleading stage, claims that such uses are ultrahazardous activities.

***Second***, Plaintiffs' fundamental theory in this case is antithetical to strict liability. Courts impose strict liability for ultrahazardous activity because the risk of harm inherent in such activities cannot be avoided even through the use of reasonable care. But if the alleged harm occurs because the defendant failed to exercise reasonable care, negligence, not strict liability, is the appropriate framework.  Not only do Plaintiffs all but ignore this defining feature of the ultrahazardous activity doctrine, they repeatedly allege that they would not have been harmed if Defendants had "properly" contained the chemicals at issue and notified the public about the presence of these chemicals in the environment.  *E.g.*, Compl. (Dkt. 1) ¶¶ 19–20.  According to Plaintiffs' own allegations, Defendants' exercise of reasonable care could have eliminated the purported harms, thus foreclosing their strict liability claim.

***Third***, even if ordinary commercial or industrial use of chlorinated solvents were an ultrahazardous activity (it is not), strict liability would be limited to the type of harm that allegedly makes such activity abnormally dangerous—serious personal injury or property destruction.  Plaintiffs claim that exposure to the chemicals at issue can cause cancer and other serious diseases, but they do not claim it has in this case.  Instead, Plaintiffs allege that they have suffered economic injury—medical monitoring costs and reduced property values—based on the possibility that residents of the area might become sick in the future.  A claim that a physical injury is merely possible in the future is not the type of serious physical injury to person or property that can support a strict liability claim for ultrahazardous activity.

Plaintiffs also fail to plead facts sufficient to demonstrate their entitlement to punitive damages.  As corporations, Defendants are legally incapable of harboring the animus required for punitive damages.  Plaintiffs must therefore identify officers, directors, or managing agents of Defendants, and describe the actions of such individuals constituting oppression, fraud, or malice, for which punitive damages can be awarded under California law.  Plaintiffs did neither.  Their conclusory assertions that Defendants acted with "actual malice" and "willful disregard" are not enough.  *E.g.*, *id.* ¶ 72.

Finally, California law does not recognize Plaintiffs' purported cause of action for "unjust enrichment." Unjust enrichment is not a claim, but a quasi-contractual remedial theory that, at best, could support an equitable award of restitution under the right circumstances. Those circumstances are not present here, especially given Plaintiffs' failure to plead that they lack an adequate remedy at law, as required by binding Ninth Circuit precedent. To the contrary, the remedies Plaintiffs seek—"damages" for diminished property value, stigma, and remediation and abatement costs—are exactly the same remedies sought by Plaintiffs (at law) under their causes of action for negligence, nuisance, strict liability, and trespass.

For these reasons, and others discussed further below, the Court should dismiss Plaintiffs' claim for strict liability based on abnormally dangerous activity, their demand for punitive damages, and their request for relief based on unjust enrichment.

## II.    SUMMARY OF ALLEGED FACTS

On May 10, 2021, Plaintiffs Jed and Alisa Behar, purporting to represent classes of individuals (1) who own or have owned residential property and (2) who have resided or worked in a defined area of Canoga Park, California, filed a class action complaint against Defendants asserting causes of action for negligence, private nuisance, strict liability for abnormally dangerous activity, trespass, and "unjust enrichment." Compl. ¶¶ 5, 9, 41–43, 48, 63–112.

Plaintiffs allege that Defendants succeeded to the liabilities of Litton Industries, Inc. in connection with Litton's ownership and operation of a commercial manufacturing facility located at 8020 Deering Avenue in Canoga Park. *Id.* ¶ 1 & n.1. Litton allegedly used the facility for circuit board manufacturing between 1967 and 2002. *Id.* ¶ 15.

Plaintiffs further allege that during this time, various volatile organic compounds ("VOCs") were used in the circuit board manufacturing process, as well as in "copper plating, silk screening, photo printing and chemical stripping." *Id.* ¶¶ 2, 15. They also allege that some of these VOCs, such as TCE, PCE, methylene chloride, and 1,4-

dioxane, leached into the groundwater and migrated to the soil beneath their properties. *Id.* ¶¶ 2, 15, 21–22, 24. Plaintiffs claim that their property was damaged, and they were exposed to contaminants, through a processed called "vapor intrusion," whereby chemical vapors migrate "though the soil and through building foundations and floors and into a building's rooms" and "degrade indoor air" quality. *Id.* ¶¶ 6, 24–25.

Plaintiffs do *not* allege that this vapor intrusion caused any physical injury to their persons or property beyond the mere presence of chemicals in the area near the facility. Instead, Plaintiffs seek compensatory damages related to alleged diminution in property value, remediation and abatement costs, and for "medical monitoring" costs to screen for cancer and other serious illnesses that allegedly may develop in the future because of exposure to the VOCs. *Id.* ¶¶ 57, 71, 76–77, 84, 108; *id.* at p. 29.

Relevant to this Motion, Plaintiffs allege that "Defendants, by using, disposing of, not controlling, and then failing to properly identify, contain, warn, abate, remediate and ultimately disclose the presence of Site Contaminants have engaged in an activity that is abnormally dangerous, ultrahazardous, and constitutes inherently or intrinsically dangerous activities for which they are strictly liable . . . ." *Id.* ¶ 96. Plaintiffs do not identify any hazards inherent in the activities at the facility that presumably led to the release of VOCs and alleged contamination of their property, but instead focus on the alleged toxicity of the chemicals once they were purportedly released into the environment. *Id.* ¶¶ 21–22, 97, 102. Plaintiffs contend the danger of these hazards "cannot be immediately eliminated through the use of reasonable care," *id.* ¶ 100, but allege no facts to support that contention.

With respect to each of Plaintiffs' tort claims except trespass, Plaintiffs assert that Defendants' acts and omissions allegedly resulting in contamination of Plaintiffs' properties, without Plaintiffs' knowledge, were "actuated by actual malice and/or accompanied by a reckless, wanton and willful disregard of persons who foreseeably might be harmed." *Id.* ¶¶ 72, 91, 104. Plaintiffs fail to offer any factual examples of acts or omissions performed with "actual malice." Nor do they identify any individual

Gibson, Dunn & Crutcher LLP

1  employed by Defendants who was responsible for the unidentified malicious acts or

2  omissions.  Nevertheless, Plaintiffs claim that they are entitled to punitive damages.  *Id.*

3  ¶ 33.

4       In addition to their demand for compensatory damages related to alleged

5  diminution of property value and need for remediation, Plaintiffs assert a "cause[] of

6  action" for unjust enrichment to recover these same economic losses.  *Id.* at p. 19, ¶ 112

7  (alleging injury due to "diminished property value, stigma, remediation and abatement

8  costs").  But there is no recognized cause of action for unjust enrichment, and, in any

9  event, Plaintiffs cannot obtain redress in equity for the same damages they seek at law.

10  Indeed, Plaintiffs do not even allege that their legal remedies are inadequate in any way.

## III.   THE LEGAL STANDARDS GOVERNING THIS MOTION

12       To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a

13  complaint must allege facts sufficient "to 'state a claim to relief that is plausible on its

14  face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*,

15  550 U.S. 544, 556, 570 (2007)).  That is, a court must be able to "draw [a] reasonable

16  inference that the defendant is liable for the misconduct alleged" from the *facts* included

17  in the complaint.  *Iqbal*, 556 U.S. at 678.  "Threadbare recitals of the elements of a cause

18  of action, supported by mere conclusory statements, do not suffice."  *Id.*  Nor do "'naked

19  assertion(s)' devoid of 'further factual enhancement.'"  *Id.* (quoting *Twombly*, 550 U.S.

20  at 557).

21       Accordingly, courts follow a two-step approach when evaluating the plausibility

22  of a complaint.  First, the court pares all conclusory statements and allegations from the

23  complaint (*Twombly*, 550 U.S. at 555), including plaintiffs' legal conclusions.  *See*

24  *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009) ("[C]onclusory allegations of

25  law . . . are insufficient to avoid a Rule 12(b)(6) dismissal." (internal quotation marks

26  omitted)).  Second, the court reviews the complaint's remaining factual allegations to

27  determine whether they "plausibly" entitle the plaintiff to relief, or whether they only

28  raise a "mere possibility of misconduct."  *Iqbal*, 556 U.S. at 678–80.  In the latter case,

dismissal is required. *See Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 1000 (9th Cir. 2014) (affirming dismissal and finding that the complaint did not contain sufficient factual allegations to state a plausible entitlement to relief); *Stanley Otake v. Wells Fargo Bank, N.A.*, No. 19-2266-JVS, 2020 WL 2527043, at *3 (C.D. Cal. Apr. 8, 2020) (dismissing Plaintiff's claim because "as pled [it did] not infer more than the mere possibility of misconduct").

This scrutiny at the pleadings stage is essential to avoid saddling defendants with expensive discovery obligations. *See Iqbal*, 556 U.S. at 678–79 ("Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."); *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014) ("[T]he factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.").

## IV.   ARGUMENT

Plaintiffs fail to meet their pleading burden with respect to their claim for strict liability based on abnormally dangerous activity, demand for punitive damages, and "claim" for unjust enrichment (which is not an independent cause of action). Their threadbare and conclusory allegations are insufficient to withstand a Federal Rule Civil Procedure 12(b)(6) motion, and those claims should be dismissed.

**A.   Plaintiffs Do Not State a Claim for Strict Liability Based on Abnormally Dangerous Activity.**

Plaintiffs contend that "by using, disposing of, not controlling, and then failing to properly identify, contain, warn, abate, remediate and ultimately disclose the presence of Site Contaminants" (such as TCE), Defendants engaged in "abnormally dangerous, ultrahazardous" and "intrinsically dangerous" activity for which they are strictly liable. Compl. ¶¶ 21–22, 96.   While California law[1] recognizes strict liability for

---

[1]  California substantive law applies to the claims Plaintiffs assert here. *See Takahashi v. Loomis Armored Car Serv.*, 625 F.2d 314, 316 (9th Cir. 1980) ("In [a] diversity action, the court must apply the substantive law of the forum state.").

"ultrahazardous" activity, Plaintiffs fundamentally misconstrue this narrow doctrine and fail to allege facts which, if true, demonstrate that Defendants' alleged activities were ultrahazardous and subject to strict liability.

California courts determine whether an activity is ultrahazardous by analyzing the following factors:

    (a)   existence of a high degree of risk of some harm to the person, land or chattels of others;

    (b)   likelihood that the harm that results from it will be great;

    (c)   inability to eliminate the risk by the exercise of reasonable care;

    (d)   extent to which the activity is not a matter of common usage;

    (e)   inappropriateness of the activity to the place where it is carried on; and

    (f)   extent to which its value to the community is outweighed by its dangerous attributes.

*Edwards v. Post Transp. Co.*, 228 Cal. App. 3d 980, 985 (1991) (citing Restatement 2d of Torts, § 520). Examples of ultrahazardous activities found by courts applying these factors include: test firing rocket engines (*Smith v. Lockheed Propulsion Co.*, 247 Cal. App. 2d 774, 785 (1967)); fumigating an occupied building with cyanide gas (*Luthringer v. Moore*, 31 Cal. 2d 489, 492–94 (1948)); and transporting bombs by rail (*Chavez v. S. Pac. Transp. Co.*, 413 F. Supp. 1203, 1209 (E.D. Cal. 1976)). Activities found *not* to be ultrahazardous include, among others: irrigation by canal leading to flooding, *Clark v. Di Prima*, 241 Cal. App. 2d 823, 829 (1966); discharge of firearms, *Moore v. R.G. Indus., Inc.*, 789 F.2d 1326, 1328 (9th Cir. 1986); and use of potassium perchlorate in manufacturing flares, leading to contamination of the groundwater with perchlorate. *Palmisano v. Olin Corp.*, No. 03-01607 RMW, 2005 WL 6777560, at *17 (N.D. Cal. June 24, 2005).

"While the inquiry of whether an activity should be classified as ultrahazardous requires fact-specific analysis regarding the activity in question, strict liability claims are still subject to dismissal at the pleadings stage if they are not plausibly pleaded."

*Clarke v. Pac. Gas & Elec. Co.*, 501 F. Supp. 3d 774, 791 (N.D. Cal. 2020) (rejecting plaintiff's contention that "[g]iven the inherently factual nature of the determination whether an activity is ultrahazardous . . . it would be inappropriate to resolve this determination on a motion to dismiss"). Indeed, federal district courts applying California law regularly grant motions to dismiss strict liability claims based on ultrahazardous activity. *See, e.g.*, *id.* (dismissing claim that operation of a manufactured gas plant, which led to soil and water contamination, was an ultrahazardous activity); *U.S. v. S. Cal. Edison*, 300 F. Supp. 2d 964, 991 (E.D. Cal. 2004) (dismissing claim that operation of a hydroelectric power plant was an ultrahazardous activity).

Plaintiffs have not stated a claim for strict liability based on ultrahazardous activity for at least three independent reasons.

### 1. *Plaintiffs Cannot Allege That the Nature of Defendants' Alleged Use of the Chemicals at Issue Is Ultrahazardous.*

Plaintiffs fundamentally misconceive how the ultrahazardous activity doctrine works. The Complaint focuses entirely on the risks arising *after* alleged contamination of soil and groundwater with TCE and other chemicals—not the risks involved in Defendants' alleged use of those chemicals. *See* Compl. ¶¶ 96–98. But "[t]he doctrine of ultrahazardous activity focuses not on a product and its defects but upon an activity intentionally undertaken by the defendant, which by its nature is very dangerous." *Pierce v. Pac. Gas & Elec. Co.*, 166 Cal. App. 3d 68, 85 (1985). In *Pierce*, the plaintiff was severely electrocuted following a series of mishaps beginning with the explosion of an untested power transformer, which the defendant's repair crew had installed after the previous transformer was destroyed in a lightning strike. *Id.* at 74. The court recognized that although "the ultimate result of the transformer failure was very hazardous . . . . the doctrine scrutinizes not the accident itself but the activity which led up to the accident." *Id.* at 85. The court went on to hold that the activity of maintaining electric power lines is not an ultrahazardous activity, even though severe injury can occur when something goes wrong. *Id.* Likewise, Plaintiffs' allegations about the hazards posed by the

1  chemicals at issue after they are released into the environment and not properly
2  controlled do not establish that the activities leading up to the alleged release and
3  contamination are ultrahazardous.

4      The appropriate focus of the ultrahazardous activity analysis is Defendants'
5  alleged use of chemicals at a "commercial manufacturing facility" for "circuit board
6  production, copper plating, silk screening, photo printing and chemical stripping," which
7  the Complaint mentions only in passing.  Compl. ¶¶ 1–2.  The Complaint says nothing
8  about the hazards, if any, associated with these common commercial processes and
9  therefore fails to state a claim that Defendants' activities were ultrahazardous.  *Clarke*,
10  501 F. Supp. 3d at 791 ("Courts have dismissed strict liability claims for failure to allege
11  an ultrahazardous activity.").

12      Courts in this circuit have consistently rejected—including at the pleading stage—
13  nearly identical claims that the commercial or industrial use of TCE, PCE, and similar
14  chemicals is an ultrahazardous activity.  *See, e.g.*, *Greenfield MHP Assocs., L.P. v.
15  Ametek, Inc.*, 145 F. Supp. 3d 1000, 1010 (S.D. Cal. 2015) (granting motion to dismiss).
16  Indeed, "In California, the use of TCE has never been considered so hazardous to the
17  public generally that liability must be imposed in the absence of negligence." *O'Connor
18  v. Boeing N. Am., Inc.*, No. 97-1554 DT (RCx), 2005 WL 6035255, at *18 (C.D. Cal.
19  Aug. 18, 2005).  As one court recognized, TCE and PCE are "used widely as solvents"
20  in "[m]any industries" including "industrial plants and dry cleaners." *In re Burbank
21  Env't. Litig.*, 42 F. Supp. 2d 976, 983 (C.D. Cal. 1998).  The *Burbank* court further
22  explained that "it is not the use of these chemicals that is likely to cause harm," but rather
23  the defendant's "alleged behavior in using and disposing of the chemicals that created
24  hazards." *Id.* at 983.  It therefore held that "plaintiffs have not stated sufficient facts to
25  establish [that] the use of TCE [and] PCE . . . is an ultrahazardous activity." *Id.*
26  Plaintiffs' strict liability claim in this case rests on the same types of allegations, *see*
27  Compl. ¶¶ 96, 100–01, and should be dismissed for the same reasons.

28

Gibson, Dunn &
Crutcher LLP

### 2. *Plaintiffs Fail to Allege That the Risks From Defendants' Alleged Activities Cannot Be Eliminated by the Exercise of Reasonable Care.*

"The theory of imposition of strict liability for ultrahazardous activity is that the danger cannot be eliminated through the use of care." *Edwards*, 228 Cal. App. 3d at 987. Accordingly, the inability to eliminate the risk of harm through the exercise of reasonable care is a particularly important and potentially dispositive hallmark of ultrahazardous activity claims. This is because "ordinary rules of fault are sufficient for allocation of the risk" of a given activity "[w]here the activity is dangerous only if insufficient care is exercised." *Id.* Following this reasoning, *Edwards* held that handling of sulfuric acid that resulted in a release of toxic gas that caused severe injuries to the plaintiff was not an ultrahazardous activity even though several Restatement factors weighed in favor of ultrahazardous activity (factors (a), (b), (d) and (f), *supra*, p. 15) and factor (e) was inapplicable. *Id.* at 986–87.

Here, Plaintiffs offer a bare conclusion that the alleged danger of Defendants' activities "cannot be immediately eliminated through the use of reasonable care," but allege no facts to support this "formulaic recitation" of factor (c) from the Restatement and *Edwards*. Compl. ¶ 100. This is exactly the sort of "naked assertion" devoid of "further factual enhancement" that is insufficient to discharge plaintiffs' obligation to state the grounds of their entitlement to relief. *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678.

Plaintiffs' more substantive allegations contradict their assertion that reasonable care cannot "immediately eliminate[]" the risk from Defendants' alleged activities, exposing the true nature of their claim. Compl. ¶ 100. Plaintiffs fault Defendants for "disposing of, not controlling, and then failing to *properly* identify, contain, warn, abate, remediate and ultimately disclose the presence of" TCE and other chemical solvents used in various industrial applications at the facility. *Id.* ¶ 96 (emphasis added). They allege that if Defendants had "*properly* remediated or contained the Contaminants, Plaintiffs' and the Class Members' properties would not have been contaminated and

their health would not have been put at risk." *Id.* ¶ 19 (emphasis added).  And they allege that, if Defendants had "notified the public, the Plaintiffs and the Class Members would not have purchased property and/or resided at property within and around the Class Area and would not have suffered damages as a result." *Id.* ¶ 20.

In short, Plaintiffs allege they would not have been injured had Defendants exercised reasonable care.  Under these alleged facts, "[t]here is no need for liability without proof of fault, because definitionally if there is damage it will have resulted from negligence and will be compensable." *Edwards*, 228 Cal. App. 3d at 987; *see also In re Burbank*, 42 F. Supp. 2d at 983.  Where, as here, a plaintiff's strict liability claim is founded on alleged harm that could have been prevented through the exercise of reasonable care, a motion to dismiss should be granted.  *See Greenfield*, 145 F. Supp. 3d at 1010 (granting motion to dismiss because "the risks associated with the use, storage, and/or disposal of such industrial solvents can be avoided through the exercise of reasonable car[e]").

### 3.    *Strict Liability Is Not Appropriate for Plaintiffs' Alleged Economic Injuries.*

Plaintiffs must allege not only that Defendants' activities were ultrahazardous, but that they suffered harm within the scope of that ultrahazardous risk. *Goodwin v. Reilley*, 176 Cal. App. 3d 86, 92 (1985).  "One who carries on an abnormally dangerous activity is not under strict liability for every possible harm that may result from carrying it on." *Id.*  As one court explained, "[d]ue to the very nature of the activity, the losses suffered as a result of such activity are likely to be substantial—an 'overwhelming misfortune to the person injured.'" *Chavez*, 413 F. Supp. at 1209 (quoting *Escola v. Coca Cola Bottling Co. of Fresno*, 24 Cal. 2d 453, 462 (1944)).

Plaintiffs' claim bears no resemblance to the rare cases in which the defendant stands accused of causing catastrophic physical injury to person or property by, for example, test firing rocket engines, *Smith*, 247 Cal. App. at 785, fumigating an occupied building with cyanide gas, *Luthringer*, 31 Cal. at 492–94, or transporting bombs by rail,

*Chavez*, 413 F. Supp. at 1209. Rather, Plaintiffs allege that they *might be injured in the future* by environmental exposure to chlorinated solvents that Defendants allegedly used in ordinary commercial/industrial applications. Plaintiffs' alleged harm specifically consists of: (1) costs of medical monitoring for diseases they do not have and may never develop; and (2) reduction in property values due to the public perception of such uncertain health risks. *See* Compl. at p. 29 ¶¶ D, E.

Defendants have uncovered no case holding that economic injuries arising from the mere *risk* of harm that a purported ultrahazardous activity *might* cause sometime in the future fall within the scope of the risks for which there is strict liability. To the contrary, this Court has granted a motion to dismiss a strict liability claim seeking economic damages (lost tourism revenue) from environmental contamination (an oil spill) caused by an alleged ultrahazardous activity. *Blue Water Boating Inc. v. Plains All Am. Pipeline, L.P.*, No. 16-3283 PSG (JEMx), 2017 WL 405425, at *4 (C.D. Cal. Jan. 26, 2017) (holding that the plaintiff's economic harms were "not in the same category" as the harms articulated in cases in which strict liability for ultrahazardous activity was found). The same reasoning compels dismissal here. Plaintiffs' alleged abstract economic injuries are not in the same category as the life-threatening health conditions that Plaintiffs claim could be (but have not been) caused by exposure to the chemicals at issue. Compl. ¶ 102.

## B. Plaintiffs Do Not Plead Facts Necessary to Support Their Demand for Punitive Damages.

Under California law, punitive damages are available to a plaintiff in a tort action "where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice." Cal. Civ. Code § 3294(a). "Punitive damages are never awarded as a matter of right, are disfavored by the law, and should be granted with the greatest of caution and only in the clearest of cases." *Altman v. PNC Mortgage*, 850 F. Supp. 2d 1057, 1086 (E.D. Cal. 2012) (citing *Henderson v. Sec. Nat'l Bank*, 72 Cal. App. 3d 764, 771 (1977)). A complaint may support a demand for punitive damages,

however, if it alleges the "'ultimate facts of the defendant's oppression, fraud, or malice.'" *Id.* (quoting *Cyrus v. Haveson*, 65 Cal. App. 3d 306, 316–17 (1976)). The adequacy of plaintiffs' pleadings is determined by the federal pleadings standards. *Id.* at 1085 (citing *Jackson v. Easy Bay Hosp.*, 980 F. Supp. 1341, 1353 (N.D. Cal. 1997)); *Cisneros v. Instant Capital Funding Group, Inc.*, 263 F.R.D. 595, 611 (E.D. Cal. 2009). The complaint, therefore, must include adequate "facts that defendants acted with requisite malice, oppression or fraud to support punitive damages claims." *Altman*, 850 F. Supp. 2d at 1086.

Where the defendant is a corporation, factual allegations of malice, oppression, or fraud must relate to the actions of an individual, because "[c]orporations are legal entities which do not have minds capable of recklessness, wickedness, or intent to injure or deceive." *Cruz v. HomeBase*, 83 Cal. App. 4th 160, 167 (2000); *see also In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 313 F. Supp. 3d 1113, 1147 ("[A] corporate entity cannot commit willful and malicious conduct; instead, 'the advance knowledge and conscious disregard, authorization, ratification or act of oppression, fraud, or malice must be on the part of an officer, director, or managing agent of the corporation.'") (quoting Cal. Civ. Code § 3294(b)). Thus, to adequately plead entitlement to punitive damages, a plaintiff "must plead that an officer, director, or managing agent of [defendant] committed an act of oppression, fraud, or malice." *In re Yahoo!*, 313 F. Supp. 3d at 1147; *accord Waddell v. Trek Bicycle Corp.*, No. 15-2082-DOC, 2016 WL 7507769, at *3 (C.D. Cal. Jan. 25, 2016) ("[I]n order to state a request for punitive damages against a corporation, a plaintiff must make allegations concerning an officer, director, or managing agent of that corporation.").

The Complaint fails to identify the name or title of even a single one of Defendants' officers, directors, or managing agents, let alone allege conduct by any such person that could qualify as oppressive, fraudulent, or malicious. This fatal omission requires dismissal of Plaintiffs' demand for punitive damages. *See Waddell*, 2016 WL 7507769, at *3 (where plaintiff "has not referenced any individual actors in his

1 complaint," plaintiff "has failed to allege sufficient facts to support punitive damages");

2 *Taiwan Semiconductor Mfg. Co. Ltd. v. Tela Innovations, Inc.*, No. 14-00362, 2014 WL

3 3705350, at *6 (N.D. Cal. July 24, 2014) ("Plaintiff's failure, then, to include the names

4 or titles of *any* individual actor is a fatal defect in its pleading of 'willful and malicious'

5 conduct." (emphasis in original)).   Plaintiffs' demand for punitive damages, therefore,

6 must be dismissed.  *Waddell*, 2016 WL 7507769, at *3.

7 **C.   Plaintiffs' "Cause of Action" for Unjust Enrichment Must Be Dismissed.**

8 Plaintiffs' fifth "cause of action" is for unjust enrichment.[2]   But California does

9 not recognize such a claim.  *See, e.g.*, *Durrell v. Sharp Healthcare*, 183 Cal. App. 4th

10 1350, 1370 (2010) (citing *Melchior v. New Line Prods., Inc.*, 106 Cal. App. 4th 779, 793

11 (2003)); *Levine v. Blue Shield of Cal.*, 189 Cal. App. 4th 1117, 1138 (2010).  Instead,

12 unjust enrichment is the "result of a failure to make restitution under circumstances

13 where it is equitable to do so." *Melchior*, 106 Cal. App. 4th at 793 (internal quotations

14 omitted).  It is not even considered a remedy; rather, it is a "general principle, underlying

15 various legal doctrines and remedies." *Id.* (internal quotations omitted).[3]  This "claim"

16 should therefore be dismissed with prejudice for the sole reason that "it is, in fact, not a

17 claim at all." *McVicar v. Goodman Global, Inc.*, 1 F. Supp. 3d 1044, 1059 (C.D. Cal.

18 2014) (dismissing unjust enrichment claim with prejudice); *see also Williamson v.*

19 *Reinalt-Thompson Corp.*, No. 11-03548, 2012 WL 1438812, at *5 (N.D. Cal. Apr. 25,

20 2012) (same).

21 In addition to this deficiency, the Court should dismiss Plaintiffs' request for relief

22 based on unjust enrichment because Plaintiffs have failed to plausibly show that they

23 meet the prerequisite for obtaining any equitable relief:  an inadequate remedy at law.

24

25 [2]  Plaintiffs have indicated their general agreement that unjust enrichment is not a
cause of action and have stated an intention to amend the Complaint accordingly.

26 But Plaintiffs' continued pursuit of equitable restitution is precluded for the
additional reasons discussed *infra*, pp. 14-16.

27 [3]  Plaintiffs also erroneously seek "damages" pursuant to this non-existent cause of

28 action.  Compl. ¶ 112.

*(Cont'd on next page)*

In *Sonner v. Premier Nutrition Corp.*, the Ninth Circuit addressed the question of "whether a federal court sitting in diversity can award equitable restitution under state law if an adequate legal remedy exists." 971 F.3d 834, 842 (9th Cir. 2020).[4] The Ninth Circuit answered "no" to this question. *Id.* at 844 (affirming dismissal of request for equitable restitution where plaintiff failed to establish she lacked adequate remedy at law). In light of the decision in *Sonner*, a plaintiff can only seek equitable relief, including common law unjust enrichment/restitution, if she has made plausible allegations that she lacks an adequate legal remedy. *Banks v. R.C. Bigelow, Inc.*, --- F. Supp. 3d ---, 2021 WL 1734779, at *6 (C.D. Cal. May 3, 2021) (dismissing purported claim to unjust enrichment with prejudice based on *Sonner*); *see Clark v. Am. Honda Motor Company, Inc.*, --- F. Supp. 3d ---, 2021 WL 1186338, at *7 n.5, *8 (C.D. Cal. March 25, 2021) (same).

But Plaintiffs do not plead (and cannot amend to plead) that they lack an adequate remedy at law. To the contrary, they seek to recover, due to alleged "unjust enrichment," "damages and additional costs . . . as diminished property value, stigma, remediation and abatement costs." Compl. ¶ 112. They also seek compensatory and punitive damages in their other causes of action. *Id.* at pp. 29-30.[5] Accordingly, Plaintiffs have no basis to allege that they have an inadequate remedy at law, and their unjust

---

[4] "[T]raditional principles governing equitable remedies in federal courts" apply to state law claims in federal diversity actions. *Sonner*, 971 F.3d at 843–44. Notably, California courts also hold that "equitable relief (such as restitution) will not be given when the plaintiff's remedies at law are adequate." *Collins v. eMachines, Inc.*, 202 Cal. App. 4th 249, 260 (2011) (concluding that "complaint does not state a claim for restitution based on unjust enrichment").

[5] *See also* Compl. ¶ 77 (alleging, with respect to negligence claim, that "Plaintiffs and the Class Members currently suffer actual property damage, diminution in the value of their property, stigma, need for abatement, [and] cleanup costs"); *id.* ¶ 89 (alleging, with respect to private nuisance claim, that "Plaintiffs and the Class Members have suffered and will continue to suffer economic losses and the loss of value to their property"); *id.* ¶ 103 (alleging, with respect to abnormally dangerous activity claim, that "Plaintiffs and the Class Members have suffered and continue to suffer actual damages and injuries including economic losses, property damages and the loss of value to their property"); *id.* ¶ 108 (alleging, with respect to trespass claim, that "Plaintiffs and the Class Members . . . suffer economic and non-economic damages including remediation and abatement costs, loss of use and enjoyment, stigma, and loss of property value").

enrichment "claim" should be dismissed with prejudice for this additional reason. *Banks*, 2021 WL 1734779, at *6; *Clark*, 2021 WL 1186338, at *7 n.5, *8 (dismissing "claim" for unjust enrichment because plaintiffs "have not pointed to any allegation in the [c]omplaint *pleading* that they lack an adequate remedy at law" and declining to address additional grounds for dismissal for that same reason (emphasis in original)). For these reasons, the Court should dismiss the unjust enrichment "claim" and all requests for equitable relief.

## V.    CONCLUSION

Plaintiffs' Complaint fails to allege facts sufficient to state a claim for strict liability for abnormally dangerous activity or to establish entitlement to punitive damages, and their cause of action for unjust enrichment has no basis in law. Plaintiffs' strict liability claim attempts to portray use of solvents in routine commercial/industrial processes as an ultrahazardous activity based on unrealized risks that allegedly arose long after the solvents were purportedly released into the environment. But that is not how the doctrine of strict liability for ultrahazardous activity works, and courts have consistently rejected the argument that the mere commercial/industrial use of chlorinated solvents is an ultrahazardous activity. Punitive damages are not available against Defendants because Plaintiffs fail to allege facts plausibly demonstrating that one of their officers, directors, or managing agents is guilty of oppression, fraud, or malice. Finally, unjust enrichment is not a cause of action, and regardless, such a request for equitable relief is barred by Plaintiffs' assertions of adequate remedies at law.

For these reasons, and as explained above, Defendants respectfully request that the Court grant this Motion.

/

/

/

/

/

1

Dated:        August 19, 2021          GIBSON, DUNN & CRUTCHER LLP

2

3                                              By:    */s/ Patrick W. Dennis*
                                                       Patrick W. Dennis
4
                                              Attorneys for Defendants NORTHROP
5                                             GRUMMAN CORPORATION and
                                              NORTHROP GRUMMAN SYSTEMS
6                                             CORPORATION

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

1

## CERTIFICATE OF SERVICE

I, Patrick W. Dennis, an attorney, hereby certify that the **DEFENDANTS NORTHROP GRUMMAN CORPORATION AND NORTHROP GRUMMAN SYSTEMS CORPORATION'S notice of motion and MOTION TO DISMISS CLAIMS FOR: (1) STRICT LIABILITY (ABNORMALLY DANGEROUS ACTIVITY); (2) PUNITIVE DAMAGES; AND (3) UNJUST ENRICHMENT** was served to counsel for the Plaintiffs through the Court's ECF/CM system on August 19, 2021.


By:   */s/ Patrick W. Dennis*
          Patrick W. Dennis

Attorneys for Defendants NORTHROP GRUMMAN CORPORATION and NORTHROP GRUMMAN SYSTEMS CORPORATION

Gibson, Dunn & Crutcher LLP

18