1   PATRICK W. DENNIS, SBN 106796
      pdennis@gibsondunn.com
2   CHRISTOPHER CHORBA, SBN 216692
      cchorba@gibsondunn.com
3   PERLETTE MICHELE JURA, SBN 242332
      pjura@gibsondunn.com
4   ABBEY HUDSON, SBN 266885
      ahudson@gibsondunn.com
5   ALEXANDER SWANSON, SBN 280947
      aswanson@gibsondunn.com
6   GIBSON, DUNN & CRUTCHER LLP
    333 South Grand Avenue
7   Los Angeles, CA 90071-3197
    Telephone:  213.229.7000
8   Facsimile:   213.229.7520

9   JOHN CERMAK, SBN 146799
      jcermak@cermaklegal.com
10  HANNAH BLOINK, SBN 307442
      hbloink@cermaklegal.com
11  CERMAK & INGLIN, LLP
    12121 Wilshire Blvd, Ste. 322
12  Los Angeles, CA 90025-1166
    Telephone:  424.465.1531
13  Facsimile:   424.371.5032

14  Attorneys for Defendants NORTHROP
    GRUMMAN CORPORATION and
15  NORTHROP GRUMMAN SYSTEMS
    CORPORATION
16

17              UNITED STATES DISTRICT COURT

18             CENTRAL DISTRICT OF CALIFORNIA

19  JED and ALISA BEHAR,                    CASE NO. 2:21-cv-03946-FMO-SK

20              Plaintiffs,                 **DEFENDANTS NORTHROP
                                            GRUMMAN CORPORATION AND
21       v.                                 NORTHROP GRUMMAN SYSTEMS
                                            CORPORATION'S NOTICE OF
22  NORTHROP GRUMMAN                        MOTION AND MOTION TO STRIKE
    CORPORATION and NORTHROP                CLASS ALLEGATIONS**
23  GRUMMAN SYSTEMS
    CORPORATION,                            **Hearing**:
24                                          Date:       September 23, 2021
                Defendants.                 Time:       10:00 a.m.
25                                          Place:      Courtroom 6D, 6th Floor,
                                                        350 W. 1st Street,
26                                                      Los Angeles, California 90012
                                            Judge:      Hon. Fernando M. Olguin
27

28                                          Complaint Served: June 30, 2021

Gibson, Dunn &
Crutcher LLP

## **NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT on September 23, 2021, at 10:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 6D of the above-entitled court, located at 350 W. 1st Street, 6th Floor, Los Angeles, California 90012, Defendants Northrop Grumman Corporation and Northrop Grumman Systems Corporation will and hereby do move the Court, pursuant to Rule 12(f) of the Federal Rules of Civil Procedure, for an order striking Plaintiffs' allegations regarding the purported "Medical Monitoring Class." Plaintiffs' allegations regarding the purported "Medical Monitoring Class" are impertinent because a class action cannot be maintained on medical monitoring claims seeking monetary relief.

This Motion is based upon this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the pleadings and papers on file in this action, any argument in connection with the Motion, and such further evidence or arguments as the Court may consider.

This Motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on August 6, 2021. The parties also exchanged correspondence after that conference, and they discussed several of the legal authorities cited in this Motion. Defendants understand that Plaintiffs will oppose this Motion.

Dated: August 19, 2021                    GIBSON, DUNN & CRUTCHER LLP


                                          By: */s/ Patrick W. Dennis*
                                          _____
                                                  Patrick W. Dennis

                                          Attorneys for Defendants NORTHROP
                                          GRUMMAN CORPORATION and
                                          NORTHROP GRUMMAN SYSTEMS
                                          CORPORATION

Gibson, Dunn &
Crutcher LLP

2

# TABLE OF CONTENTS

Page

MEMORANDUM OF POINTS AND AUTHORITIES ..................................................1

I.    INTRODUCTION AND SUMMARY OF ARGUMENT .................................1

II.   SUMMARY OF ALLEGED FACTS .................................................................2

III.  THE LEGAL STANDARDS GOVERNING THIS MOTION ..........................5

IV.   ARGUMENT......................................................................................................6

    A.   The Complaint Makes Clear that Plaintiffs Cannot Satisfy Rule 23(b)(3) Because Common Questions Do Not Predominate Over Individual Issues.........................................................................................7

    B.   Plaintiffs Cannot Seek Certification Under Rule 23(b)(1) or 23(b)(2) Because They Seek Monetary Relief..........................................12

        1.   *Certification Under Rule 23(b)(1)(A) or Rule 23(b)(2) Is Prohibited Where the Class Seeks Monetary Damages.* ..............12

        2.   *Plaintiffs Also Cannot Seek Certification Under Rule 23(b)(1)(B) Because Individual Adjudications Would Not Impair Other Class Members' Rights.*.............................................14

V.    CONCLUSION .................................................................................................16

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Gibson, Dunn &
Crutcher LLP

1

# TABLE OF AUTHORITIES

2

Page(s)

3

4

**CASES**

5

*Am. Express Co. v. Italian Colors Rest.*,
   570 U.S. 228 (2013).............................................................................................5

6

7

*Amchem Prods., Inc., v. Windsor*,
   521 U.S. 591 (1997).............................................................................................7

8

9

*Arch v. Am. Tobacco Co.*,
   175 F.R.D. 469 (E.D. Pa. 1997) ......................................................................14

10

11

*Barnes v. American Tobacco Co.*,
   161 F.3d 127 (3d Cir. 1998) .......................................................................10, 11

12

13

*Barraza v. C. R. Bard Inc.*,
   322 F.R.D. 369 (D. Ariz. 2017).......................................................................11

14

15

*Berger v. Home Depot USA, Inc.*,
   741 F.3d 1061 (9th Cir. 2014) .......................................................................6, 7

16

17

*Boughton v. Cotter Corp.*,
   65 F.3d 823 (10th Cir. 1995) ...........................................................................14

18

*Comcast Corp. v. Behrend*,
   569 U.S. 27 (2013)........................................................................................5, 11

19

20

*Cook v. Rockwell Int'l Corp.*,
   181 F.R.D. 473 (D. Colo. 1998) ......................................................................14

21

22

*Fantasy, Inc. v. Fogerty*,
   984 F.2d 1524 (9th Cir. 1993) ...........................................................................5

23

24

*Green v. Occidental Petroleum Corp.*,
   541 F.2d 1335 (9th Cir. 1976) .........................................................................15

25

26

*Haley v. Medtronic, Inc.*,
   169 F.R.D. 643 (C.D. Cal. 1996)......................................................................14

27

*Khosroabadi v. Mazgani Soc. Servs., Inc.*,
   No. 17-1700644-CJC, 2017 WL 8236358 (C.D. Cal. Sept. 26, 2017) ...................15

28

Gibson, Dunn &
Crutcher LLP

## TABLE OF AUTHORITIES
(continued)

Page(s)

*Lockheed Martin Corp. v. Super. Ct.*,
    29 Cal. 4th 1096 (2003) ...................................................................................... 8, 9

*Montoya v. Creditors Interchange Receivable Mgmt., LLC*,
    No. 11-103037-PSG, 2011 WL 971341 (C.D. Cal. Mar. 16, 2011) ........................ 5

*In re N. Dist. of California, Dalkon Shield IUD Prod. Liab. Litig.*,
    693 F.2d 847 (9th Cir. 1982) ............................................................................... 15

*O'Connor v. Boeing N. Am., Inc.*,
    180 F.R.D. 359 (C.D. Cal. 1997) .......................................................... 7, 10, 13, 14

*Ortiz v. Fibreboard Corp.*,
    527 U.S. 815 (1999) ........................................................................................ 14, 15

*In re Paxil Litig.*,
    212 F.R.D. 539 (C.D. Cal. 2003) .......................................................................... 14

*Potter v. Firestone Tire & Rubber Co.*,
    6 Cal. 4th 965 (1993) ..................................................................................... 7, 8, 9

*Ruegsegger v. Caliber Home Loans, Inc.*,
    No. 19-170907-DOC, 2019 WL 8163640 (C.D. Cal. Jan. 8, 2019) ........................ 5

*Sanders v. Apple Inc.*,
    672 F. Supp. 2d 978 (N.D. Cal. 2009) .......................................................... 5, 7, 12

*Smith v. Brown & Williamson Tobacco Corp.*,
    174 F.R.D. 90 (W.D. Mo. 1997) .......................................................................... 14

*Tan v. GrubHub, Inc.*,
    No. 16-05128-JSC, 2016 WL 4721439 (N.D. Cal. July 19, 2016) ......................... 5

*Thomas v. FAG Bearings Corp.*,
    846 F. Supp. 1400 (W.D. Mo. 1994) ................................................................... 11

*Thompson v. American Tobacco Co.*,
    189 F.R.D. 544 (D. Minn. 1999) ......................................................................... 11

*Tietsworth v. Sears*,
    720 F. Supp. 2d 1123 (N.D. Cal. 2010) ................................................................. 6

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Vinole v. Countrywide Home Loans, Inc.*,
    571 F.3d 935 (9th Cir. 2009) .................................................................. 2, 6

*Wal-Mart Stores Inc. v. Dukes*,
    564 U.S. 338 (2011).............................................................................. 5, 13

*Zinser v. Accufix Rsch. Inst., Inc.*,
    253 F.3d 1180 (9th Cir. 2001) ........................................ 1, 2, 7, 9, 12, 13

RULES

Civ. L.R. 23-3 ..................................................................................... 2, 5, 7

Fed. R. Civ. P. 12(f) ..................................................................................... 5

Fed. R. Civ. P. 23(b)(1)(A) ....................................................................... 12

Fed. R. Civ. P. 23(b)(1)(B) ....................................................................... 14

Fed. R. Civ. P. 23(b)(2) ............................................................................. 12

Fed. R. Civ. P. 23(b)(3) ............................................................................... 7

Fed. R. Civ. P. 23(c)(1)(A) ...................................................................... 2, 5

Fed. R. Civ. P. 23(d)(1)(D) .......................................................................... 6

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Gibson, Dunn &
Crutcher LLP

## **MEMORANDUM OF POINTS AND AUTHORITIES**

## **I.    INTRODUCTION AND SUMMARY OF ARGUMENT**

This putative class action seeks monetary damages for alleged contamination at certain properties in the Canoga Park neighborhood of Los Angeles.  Plaintiffs seek to certify two classes, a "Medical Monitoring Class" that would require Defendants to bear the costs of medical monitoring for those residents who lived or worked in this area at any time between 1967 and the present, as well as a "Property Damage Class" for property owners in the area.  This Motion seeks to strike the "Medical Monitoring Class," given the overwhelming weight of authority establishing that this type of monetary relief is inherently individualized and ill-suited for class treatment.  Although Defendants vigorously dispute all of Plaintiffs' allegations, including their effort to certify any "Property Damage Class," those issues will await resolution on a fully developed factual record.  But the Court need not, and should not, wait to resolve the "Medical Monitoring Class."  It should strike that putative class for several reasons that are apparent on the face of the Complaint:

First, although Defendants would contest each of the Rule 23 elements in challenging the Medical Monitoring Class, it is apparent from the allegations that Plaintiffs will not be able to satisfy Rule 23(b)(3)'s "predominance" requirement.  As the Ninth Circuit has explained, medical monitoring claims "inescapabl[y]" raise individual issues related to causation and damages, and these issues would predominate over any alleged "common" issues. *Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1189 (9th Cir. 2001).  Here, individual inquiries would be required to determine each class member's alleged exposure to the alleged contaminants, the level of increased risk of disease, and the monetary relief available.  Accordingly, a class action proceeding is actually an *inferior* vehicle through which to litigate this action, and no amount of discovery or amendment of the pleadings can alter that inescapable conclusion.

Second, as a matter of law, Plaintiffs cannot seek certification under the alternative Rule 23(b)(1)(A) or (b)(2) grounds, because they seek monetary, rather than

injunctive or declaratory, relief.   The Ninth Circuit has categorically rejected certification under Rule 23(b)(1)(A) or 23(b)(2) where a plaintiff seeks monetary relief in the form of a "medical monitoring fund." *Zinser*, 253 F.3d at 1193–96.   Here, Plaintiffs seek exactly that relief, Compl. (Dkt. 1) at p. 29, and their conclusory attempts to characterize such relief as "injunctive," *id.* ¶ 56, are unavailing.   Thus, Plaintiffs cannot seek certification under Rule 23(b)(1)(A) or Rule 23(b)(2).

Third, Plaintiffs also cannot seek certification under Rule 23(b)(1)(B) because this action for damages does not present a situation where individual adjudications would impair other class members' rights, and Plaintiffs have failed to even attempt to allege the requirements of this subdivision.

Under these circumstances, Plaintiffs do not and cannot meet Rule 23's stringent requirements for class certification.   Because Plaintiffs cannot possibly satisfy Rule 23(b)(3), and because "[t]he overarching focus remains whether trial by class representation would further the goals of efficiency and judicial economy," the Court should resolve this issue in Defendants' favor at this "early practicable time." *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 940, 946 (9th Cir. 2009); *see also* Fed. R. Civ. P. 23(c)(1)(A); Civ. L.R. 23-3.   Defendants respectfully request that the Court strike Plaintiffs' Medical Monitoring Class allegations from their Complaint.

## II.   SUMMARY OF ALLEGED FACTS

On May 10, 2021, Plaintiffs Jed and Alisa Behar, purporting to represent classes of individuals (1) who own or have owned residential property and (2) who have resided or worked in a defined area of Canoga Park, California, filed a class action complaint against Defendants asserting causes of action for negligence, private nuisance, strict liability for abnormally dangerous activity, trespass, and "unjust enrichment." Compl. ¶¶ 5, 41–43, 48, 63–112.

Plaintiffs allege that Defendants succeeded to the liabilities of Litton Industries, Inc. in connection with Litton's ownership and operation of a commercial manufacturing facility located at 8020 Deering Avenue in Canoga Park. *Id.* ¶ 1 & n.1.  Litton allegedly

used the facility for circuit board manufacturing between 1967 and 2002. *Id.* ¶ 15.

Plaintiffs further allege that during this time, various volatile organic compounds ("VOCs") were used in the circuit board manufacturing process, as well as in "copper plating, silk screening, photo printing and chemical stripping." *Id.* ¶¶ 2, 15. They also allege that some of these VOCs, such as trichloroethylene ("TCE"), perchloroethylene ("PCE"), methylene chloride, and 1,4-dioxane, leached into the groundwater and migrated to the soil beneath their properties. *Id.* ¶¶ 2, 15, 21–22, 24. Plaintiffs claim that their property was damaged, and they were exposed to contaminants, through a process called "vapor intrusion," whereby chemical vapors migrate "though the soil and through building foundations and floors and into a building's rooms" and "degrade indoor air" quality. *Id.* ¶¶ 6, 24–25.

Plaintiffs do not allege that this vapor intrusion caused any physical injury to their persons or property beyond the mere presence of chemicals in the area near the facility. Instead, Plaintiffs seek compensatory damages related to alleged diminution in property value, remediation and abatement costs, and "medical monitoring" costs to screen for cancer and other serious illnesses that allegedly may develop in the future because of exposure to the VOCs. *Id.* ¶¶ 57, 71, 76–77, 84, 108; *id.* at p. 29.

Plaintiffs seek to represent a Medical Monitoring Class defined as those persons who have lived or worked "in dwellings located within the Class Area impacted by the Contaminants and as a result thereof are at increased risk of developing injury, illness, and/ or disease." *Id.* ¶¶ 8, 48.[1] Plaintiffs do not allege any time bounds for this proposed class, leading to a presumption that they intend the class period to stretch all the way back to 1967. In their Prayer for Relief, Plaintiffs ask the Court to "[e]nter an Order

---

[1] Although Plaintiffs initially define the Medical Monitoring Class to include "those persons who ***live(d)*** in dwellings located within the Class Area," Compl. ¶ 8 (emphasis added), Plaintiffs expand this definition later in the Complaint to also include individuals who "***worked*** on a property in the Class Area for a period of time sufficient to appreciably increase their risk of injury," *id.* ¶ 48 (emphasis added). Defendants assume Plaintiffs intended the more expansive definition; however, under either class definition (as demonstrated *infra*), Plaintiffs' proposed Medical Monitoring Class cannot be certified, and their allegations should be stricken.

Gibson, Dunn & Crutcher LLP

requiring the Defendants to bear the costs of medical monitoring, for the Medical Monitoring Class including, but not limited to, testing, examination, preventative and diagnostic screening and treatment for conditions that can result from, or may potentially result from, exposure to the Site Contaminants." *Id.* at p. 29. Plaintiffs also purport to seek relief "in the form of an injunction requiring Defendants to establish a fund for the reasonable costs of medical monitoring," *id.* ¶ 56, although as explained below, this is simply a request for monetary relief disguised as a request for injunctive relief.

Plaintiffs seek certification of the Medical Monitoring Class under either Rule 23(b)(1), 23(b)(2), or 23(b)(3). Plaintiffs allege that "certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(1) because the prosecution of separate actions by individual Class Members would create a risk of inconsistent and/or varying adjudications that would establish incompatible standards of conduct for Defendants" and because "[a]djudications respecting individual Class Members would, as a practical matter, be dispositive of the interests of the other Class Members or would risk substantially impairing or impending [sic] their ability to prosecute their interests." *Id.* ¶ 54. Plaintiffs allege that certification of the Medical Monitoring Class "is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendants have acted or refused to act on grounds applicable to all Members of the Medical Monitoring Class, thereby making relief in the form of an injunction requiring Defendants to establish a fund for the reasonable costs of medical monitoring appropriate." *Id.* ¶ 56. And Plaintiffs allege that certification is appropriate under Fed. R. Civ. P. 23(b)(3) because "it would be impracticable and undesirable for each member of each putative class who has suffered harm to bring a separate action." *Id.* ¶ 59.

In reality, Plaintiffs cannot meet the requirements for class certification pursuant to any of the Rule 23(b) subdivisions, and Plaintiffs' Medical Monitoring Class allegations should be stricken from their Complaint.

## III.    THE LEGAL STANDARDS GOVERNING THIS MOTION

Under Rule 12(f), courts "may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "[T]he function of a [Rule] 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994).

Striking class allegations at the motion to dismiss stage is appropriate "[w]here the complaint demonstrates that a class action cannot be maintained on the facts alleged." *Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 990–91 (N.D. Cal. 2009) (striking class claims pursuant to Rule 12(f) motion); *see Ruegsegger v. Caliber Home Loans, Inc.*, No. 19-170907-DOC, 2019 WL 8163640, at *16 (C.D. Cal. Jan. 8, 2019) ("Class allegations may be stricken at the pleading stage."); *Montoya v. Creditors Interchange Receivable Mgmt., LLC*, No. 11-103037-PSG, 2011 WL 971341, at *1 (C.D. Cal. Mar. 16, 2011) (same); *Tan v. GrubHub, Inc.*, No. 16-05128-JSC, 2016 WL 4721439, at *5–6 (N.D. Cal. July 19, 2016) (granting defendants' motion for an order denying class certification on the pleadings).

Of course, a "class action is an exception to the usual rule that litigation is conducted by and on behalf of individual named parties only." *Wal-Mart Stores Inc. v. Dukes*, 564 U.S. 338, 348 (2011); *see also Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). And Rule 23 "imposes stringent requirements for certification that in practice exclude most claims." *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 234 (2013). Further, Rule 23(c)(1)(A) mandates that "[a]t an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action." Fed. R. Civ. P. 23(c)(1)(A); *see also* Civ. L.R. 23-3 (class certification must be determined "[a]t the earliest possible time after service of a pleading purporting to commence a class action"). Rule 23(d)(1)(D) similarly permits a court to "issue orders that . . . require that the pleadings be amended

to eliminate allegations about representation of absent persons." Fed. R. Civ. P. 23(d)(1)(D).

Taken together, these Rules permit District Courts to resolve and strike class action-related claims at the pleading stage where it is plain from the pleadings that the class cannot be certified. *See Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1146 (N.D. Cal. 2010) ("Under Rules 23(c)(1)(A) and 23(d)(1)(D), as well as pursuant to Rule 12(f), this Court has authority to strike class allegations prior to discovery if the complaint demonstrates that a class action cannot be maintained."). Because Plaintiffs' Complaint makes clear that they cannot possibly satisfy Rule 23, this Court should resolve this issue in Defendants' favor at this "early practicable time." *Vinole*, 571 F.3d at 940.

## IV. ARGUMENT

In order to certify a class, Plaintiffs must plead (and ultimately prove) each of the threshold requirements of Rule 23(a), as well as the requirements for certification under one of the subsections of Rule 23(b). *Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1067 (9th Cir. 2014), *abrogated on other grounds by Microsoft Corp. v. Baker*, 137 S. Ct. 1702 (2017). In their Complaint, Plaintiffs maintain that class certification is appropriate under either Rule 23(b)(1), 23(b)(2), or 23(b)(3). Compl. ¶¶ 46, 54–59. However, the face of the Complaint makes clear that Plaintiffs do not and cannot satisfy any of the Rule 23(b) requirements with respect to their Medical Monitoring Class.

Although a factual record would undoubtedly assist in evaluating several of the Rule 23(a) factors, the Court need not await a full discovery record to conclude that Plaintiffs cannot prove predominance, as required to certify a class for monetary relief. This is because too many complex, and inherently individualized, issues would necessarily be involved in resolving medical monitoring claims. Further, the alternative Rule 23(b)(1) and 23(b)(2) grounds are not applicable to Plaintiffs' proposed Medical Monitoring Class, because Plaintiffs seek ***only*** monetary relief, rather than injunctive or declaratory relief (despite their attempt to claim otherwise). Accordingly, because "the complaint demonstrates" that Plaintiffs' Medical Monitoring Class cannot be certified,

*Sanders*, 672 F. Supp. 2d at 990, their medical monitoring claims should be stricken "at the earliest possible time," Civ. L.R. 23-3.

## A.   The Complaint Makes Clear that Plaintiffs Cannot Satisfy Rule 23(b)(3) Because Common Questions Do Not Predominate Over Individual Issues.

Certification is appropriate under Rule 23(b)(3) only if "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc., v. Windsor*, 521 U.S. 591, 623 (1997). In analyzing predominance, "it is not enough to establish that common questions of law or fact merely exist, as it is under Rule 23(a)(2)'s commonality requirement." *O'Connor v. Boeing N. Am., Inc.*, 180 F.R.D. 359, 379 (C.D. Cal. 1997). Instead, the inquiry must focus on "the legal or factual questions that qualify each class member's case as a genuine controversy." *Amchem*, 521 U.S. at 623. To meet the predominance requirement of Rule 23(b)(3), "the common questions must be a significant aspect of the case that can be resolved for all members of the class in a single adjudication." *Berger*, 741 F.3d at 1068 (internal quotation marks and alterations omitted). The Supreme Court has urged caution where plaintiffs were "exposed to different . . . products, for different amounts of time, in different ways, and over different periods." *Amchem*, 521 U.S. at 624 (class certification not appropriate under Rule 23(b)(3) where each class member "has a different history of cigarette smoking, a factor that complicates the causation inquiry"). Plaintiffs cannot possibly make the requisite showing of predominance and superiority under Rule 23(b)(3) because the Medical Monitoring claim "inescapabl[y]" raises individual issues related to causation and damages. *See, e.g.*, *Zinser*, 253 F.3d at 1189.

The elements of a claim for medical monitoring damages are inherently individualized. In *Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 974 (1993), the California Supreme Court held that medical monitoring is "a compensable item of

damages in a negligence action where the proofs demonstrate, through reliable medical expert testimony, that the need for future monitoring is a reasonably certain consequence of the plaintiff's toxic exposure [*i.e.*, causation] and that the recommended monitoring is reasonable [*i.e.*, damages]." Under *Potter*, the specific factors for determining the reasonableness and necessity of medical monitoring are:

> (1)  the significance and extent of the plaintiff's exposure to the chemicals;
>
> (2)  the relative toxicity of the chemicals;
>
> (3)  the seriousness of the diseases for which plaintiff is at an increased risk;
>
> (4)  the relative increase in the plaintiff's chances of developing a disease as a result of the exposure, when compared to (a) plaintiff's chances of developing the disease had he or she not been exposed, and (b) the chances of members of the public at large of developing the disease; and
>
> (5)  the clinical value of early detection and diagnosis.

*Id.* at 1006 (considering whether plaintiff's increased risk of cancer due to exposure to toxic substances warranted medical monitoring).

Although Defendants would challenge all of these elements, at least two of them present individualized issues that would predominate over any alleged "common" issues, and these problems are inherent from the allegations (even if the Court assumes the truth of those contentions):  First, "the significance and extent of . . . exposure to the chemicals" will vary significantly among the putative class members based on both the duration of exposure as well as proximity to the Facility. *See Lockheed Martin Corp. v. Super. Ct.*, 29 Cal. 4th 1096, 1109 (2003) (holding that "[e]ach class member's actual toxic dosage" is relevant to determine whether medical monitoring is reasonable).[2]

---

[2]  Although *Lockheed* did not categorically hold that medical monitoring claims are *per se* uncertifiable, it held that the specific factual circumstances there did not warrant certification.  29 Cal. 4th at 1109.  Here, although Defendants dispute Plaintiffs' factual allegations, those allegations present the same individualized inquiries that foreclosed certification in *Lockheed*—specifically, the level of "[e]ach class member's actual toxic dosage" and whether, due to that alleged toxic dosage, each class member "is at greater risk of developing cancer." *Id.* at 1109–10.

Gibson, Dunn & Crutcher LLP

Plaintiffs allege that "a class member need only to have lived or worked on a property in the Class Area for a period of time sufficient to appreciably increase their risk of injury" and "many of [the 3800] Class Area properties have had multiple residents" since 1967. Compl. ¶ 48. Accordingly, Plaintiffs' putative Medical Monitoring Class would consist of members who have lived or worked in the Canoga Park area for anywhere from mere weeks up to 54 years. These individuals will certainly have different levels of exposure to the alleged contaminants, necessitating individual proof for each class member. *See Lockheed Martin Corp.*, 29 Cal. 4th at 1109 (noting the "duration of exposure to polluted water will vary among class members, as the class would include numerous people who lived in Redlands for a relatively short period of time during the more than 40-year class period"). Further, because the Class Area includes residences at various distances from the facility, determining the extent of each class member's exposure to the chemicals will likewise require individualized inquiries.[3]

Second, "the relative increase in the [class members'] chances of developing [cancer]" compared to the chances without exposure, *Potter*, 6 Cal. 4th at 974, depends on numerous factors unique to each member, such as "preexisting conditions, genetic makeup, age, gender, size, nutrition, adaptation and acclimatization to geographic and climatological factors, lifestyle, family history, social history, occupational history and personal health history," *Lockheed Martin Corp.*, 29 Cal. 4th at 1115 (Brown, J., concurring). Resolution of these many factors specific to each individual "would be a herculean task." *Id.*

Several other courts have held that class certification of a medical monitoring class is not appropriate based on the "formidable complexities" that contribute to the causation and damages inquiries. *See, e.g.*, *Zinser*, 253 F.3d at 1192 (affirming denial of class certification of medical monitoring claim where establishing a common cause of injury would require individual inquiry into "many factors").

---

[3] Although this Motion assumes that the exposures occurred, Defendants dispute Plaintiffs' exposure.

In *O'Connor*, for example, the plaintiffs sought to certify a medical monitoring class in the western San Fernando Valley, including areas of Canoga Park, based on the defendants' alleged releases of toxic substances including TCE into groundwater beneath their homes, along with other exposure pathways. 180 F.R.D. at 365. The court denied certification under Rule 23(b)(3), holding that "individual issues surrounding Plaintiffs' ability to establish entitlement to medical monitoring outweigh[ed]" common questions relating to whether the defendants negligently released hazardous substances into the environment. *Id.* at 381. The court explained that "questions surrounding whether Defendants' alleged releases of hazardous substances caused an individual's illness, entitling him or her to treatment, cannot be established on a class-wide basis because each claimant may have varying risk factors not associated with Defendants' conduct." *Id.* The court specifically noted that "exposure level, family history, and other risk factors, will dictate whether class members will qualify for the medical monitoring program." *Id.* at 377. "Furthermore, while a jury might be able to find that Defendants have generally caused an increased risk of diseases, such as cancer, for the Class, a jury would be required to individually determine whether this increased risk actually caused the class member's illness, entitling him or her to treatment costs." *Id.* at 381. Accordingly, the court held that plaintiffs could not establish predominance and declined to certify the class.

In *Barnes v. American Tobacco Co.*, 161 F.3d 127 (3d Cir. 1998), the Third Circuit upheld the decertification of a class involving medical monitoring claims based on exposure to hazardous substances in cigarettes. *Id.* at 131. The court broadly held that "the requirement that each class member demonstrate the need for medical monitoring precludes certification." *Id.* at 146. Specifically, the court noted that because "each class member must prove that the monitoring program he requires is different from that normally recommended in the absence of exposure," each class member would have to "present evidence about his individual smoking history and subject himself to cross-examination by the defendant about that history." *Id.* (internal

Gibson, Dunn & Crutcher LLP

10

1    quotation marks and citation omitted).  Thus, "[t]his element of the medical monitoring

2    claim . . . raises many individual issues" precluding certification.  *Id.*

3        And *Thompson v. American Tobacco Co.*, 189 F.R.D. 544 (D. Minn. 1999),

4    denied certification of a medical monitoring class under similar circumstances in which

5    the plaintiffs alleged they were at increased risk for disease based on exposure to

6    hazardous substances in cigarettes.  *Id.* at 555.  The court held that individual inquiries

7    would be required "to establish that [each class member's] need for medical monitoring

8    is solely due to smoking and not other risk factors such as weight, pre-existing illness,

9    or predisposition to illness."  *Id.* at 556.  Thus, the class could not be certified under

10   Rule 23(b)(3).

11       Additionally, in *Barraza v. C. R. Bard Inc.*, 322 F.R.D. 369 (D. Ariz. 2017), the

12   court denied a motion to certify a medical monitoring class where the plaintiffs alleged

13   that defendants' blood filters contained defects that put users at risk of injury or death.

14   *Id.* at 373–74.  The court held that individual inquiries would be required to determine

15   "the necessity of the proposed monitoring scheme" and "the amount of monitoring a

16   class member would require."  *Id.* at 382.  Accordingly, certification under Rule 23(b)(3)

17   was not appropriate.

18       In a case with substantially similar facts to this one, *Thomas v. FAG Bearings*

19   *Corp.*, 846 F. Supp. 1400 (W.D. Mo. 1994), the court denied certification of a medical

20   monitoring class where plaintiffs alleged that they were exposed to TCE through

21   groundwater contamination.  *Id.* at 1404.  The court held that individual inquiries would

22   be required to determine the amount of contamination to which each class member was

23   exposed and, even if plaintiffs could prove causation with common proof, "[t]he measure

24   of damages is dependent almost exclusively on individual factors."  *Id.*  Thus, a class

25   was not a superior "or even desirable mechanism."  *Id.* at 1404–05.

26       At bottom, the court must "take a close look at whether common questions

27   predominate over individual ones."  *Comcast Corp.*, 569 U.S. at 34 (internal quotation

28   marks and citation omitted).  Here, there is no possibility that common questions will

predominate due to the various individual inquiries necessary to determine each class member's alleged exposure to the alleged contaminants and level of increased risk of disease.  No amount of class discovery—nor any amendments to the allegations in their Complaint—could alter this reality.  Accordingly, Plaintiffs cannot certify the Medical Monitoring Class under Rule 23(b)(3), and their related class allegations should be stricken from the Complaint.  *Sanders*, 672 F. Supp. 2d at 990–91.

## B.    Plaintiffs Cannot Seek Certification Under Rule 23(b)(1) or 23(b)(2) Because They Seek Monetary Relief.

Plaintiffs' Medical Monitoring Class fares no better under the alternative grounds of Rule 23(b)(1) or 23(b)(2) because class certification under these provisions is expressly foreclosed where plaintiffs seek monetary, rather than declaratory or injunctive, relief.  That is precisely the case here, as Plaintiffs seek monetary relief in the form of "an Order requiring the Defendants to *bear the costs of medical monitoring*[] for the Medical Monitoring Class," as well as punitive damages.  Compl. pp. 29–30 (emphasis added).

### 1.    *Certification Under Rule 23(b)(1)(A) or Rule 23(b)(2) Is Prohibited Where the Class Seeks Monetary Damages*.

Under Rule 23(b)(1)(A), class certification is appropriate where the prosecution of separate actions by individual class members would create a risk of "inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for [Defendants]."  Fed. R. Civ. P. 23(b)(1)(A).  And certification under Rule 23(b)(2) is appropriate if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).

As an initial matter, "[c]lass certification under Rule 23(b)(2) is appropriate only where the *primary* relief sought is *declaratory or injunctive*."  *Zinser*, 253 F.3d at 1195 (emphases added).  A class seeking monetary damages can be certified under Rule

23(b)(2) only if "such relief is merely incidental to [a] primary claim for injunctive relief." *Id.* (internal quotation marks and citation omitted); *see also O'Connor*, 180 F.R.D. at 377 ("Rule 23(b)(2) class treatment is unavailable where the primary relief sought by the class is monetary damages."). Rule 23(b)(2) "does not authorize class certification when each class member would be entitled to an individualized award of monetary damages." *Wal-Mart Stores*, 564 U.S. at 360–61.

Moreover, the Ninth Circuit has categorically precluded certification under Rule 23(b)(1)(A) or 23(b)(2) where a plaintiff seeks monetary relief in the form of a "medical monitoring fund." *Zinser*, 253 F.3d at 1193–96. The court explained that Rule 23(b)(1)(A) certification requires more "than a risk that separate judgments would oblige the opposing party to pay damages to some class members but not to others or to pay them different amounts," and thus it is "not appropriate in an action for damages." *Id.* at 1193. The Ninth Circuit observed that because the plaintiff sought "the creation of a medical monitoring *fund*" rather than "the establishment of a medical monitoring program," the medical monitoring class could not be certified under Rule 23(b)(1)(A). *Id.* at 1194 (emphasis in original). Thus, although Plaintiffs claim that they seek relief "in the form of an *injunction* requiring Defendants to establish a fund for the reasonable costs of medical monitoring," Compl. ¶ 56 (emphasis added), a medical monitoring *fund* is categorically a form of monetary, rather than injunctive, relief and therefore prohibited under Rule 23(b)(1)(A) and 23(b)(2).

In *Zinser*, for example, the Ninth Circuit held that, because plaintiff's class action complaint sought "the establishment of a reserve fund" for past and future medical treatment, rather than an injunction requiring the defendant to establish a medical monitoring program, certification under Rule 23(b)(2) was not appropriate. *Zinser*, 253 F.3d at 1196. Similarly, *O'Connor* held that a medical monitoring class could not be certified under Rule 23(b)(2) because the plaintiffs sought "compensatory and punitive damages, as well as a medical monitoring program that includes a fund to pay for the treatment of diseases detected in class members." *O'Connor*, 180 F.R.D. at 378. The

court distinguished the plaintiffs' requested relief from cases where plaintiffs sought "a court-established medical monitoring program solely for the purposes of diagnosing disease and sharing information with class members." *Id.* at 378 n.23.

Consistent with *Zinser* and *O'Connor*, numerous courts have declined to certify medical monitoring classes that request funding for medical treatment. *See, e.g.*, *Boughton v. Cotter Corp.*, 65 F.3d 823, 827 (10th Cir. 1995); *Cook v. Rockwell Int'l Corp.*, 181 F.R.D. 473, 479–80 (D. Colo. 1998); *Arch v. Am. Tobacco Co.*, 175 F.R.D. 469, 483–85 (E.D. Pa. 1997); *Smith v. Brown & Williamson Tobacco Corp.*, 174 F.R.D. 90, 99–100 (W.D. Mo. 1997); *Haley v. Medtronic, Inc.*, 169 F.R.D. 643, 657 (C.D. Cal. 1996).

Here, Plaintiffs do not seek the establishment of a medical monitoring program. Rather, because Plaintiffs seek monetary relief requiring Defendants to "bear the costs of medical monitoring[] for the Medical Monitoring Class" as well as punitive damages, Compl. at pp. 29–30, no amount of discovery would permit them to establish that class treatment is appropriate under Rule 23(b)(1)(A) or Rule 23(b)(2). For these reasons, the Court should strike the Medical Monitoring Class allegations.

### 2.    *Plaintiffs Also Cannot Seek Certification Under Rule 23(b)(1)(B) Because Individual Adjudications Would Not Impair Other Class Members' Rights.*

Finally, Plaintiffs also appear to seek certification of their Medical Monitoring Class pursuant to Rule 23(b)(1)(B). However, certification under this subsection is reserved for "the most compelling situations," *In re Paxil Litig.*, 212 F.R.D. 539, 553 (C.D. Cal. 2003) (citing *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 842–45 (1999)), and is justified only if adjudications by individual members of the class would, as a practical matter, "be dispositive of the interests of the other members not parties to the individual adjudications or . . . substantially impair or impede their ability to protect their interests," Fed. R. Civ. P. 23(b)(1)(B). The Supreme Court has noted that this subsection was drafted to address "situations where lawsuits conducted with individual members of

the class would have the practical if not technical effect of concluding the interests of the other members as well, or of impairing the ability of the others to protect their own interests." *Ortiz*, 527 U.S. at 833 (internal quotation omitted).

*Ortiz* gave the following examples of cases in which such a risk of impairment may be found: "suits brought to reorganize fraternal-benefit societies"; "actions by shareholders to declare a dividend or otherwise to 'fix [their] rights'"; "and actions charging 'a breach of trust by an indenture trustee or other fiduciary similarly affecting the members of a large class' of beneficiaries, requiring an accounting or similar procedure 'to restore the subject of the trust.'" *Id.* at 833–34. The Supreme Court explained that "[i]n each of these categories, the shared character of rights claimed or relief awarded entails that any individual adjudication by a class member disposes of, or substantially affects, the interests of absent class members." *Id.* at 834.

The Ninth Circuit has held that there is no such risk of impairment in actions for monetary damages. *Green v. Occidental Petroleum Corp.*, 541 F.2d 1335, 1340 (9th Cir. 1976); *see also In re N. Dist. of California, Dalkon Shield IUD Prod. Liab. Litig.*, 693 F.2d 847, 851 (9th Cir. 1982) ("The Ninth Circuit has expressly barred class certification under [Rule] 23(b)(1)(B) for independent tort claims seeking compensatory damages, unless separate actions 'inescapably will alter the substance of the rights of others having similar claims.'").

While Plaintiffs' Complaint contains boilerplate language suggesting Plaintiffs may be seeking certification under Rule 23(b)(1)(B), Compl. ¶ 54, Plaintiffs have "failed to make a *prima facie* showing to meet the requirements of this provision," *Khosroabadi v. Mazgani Soc. Servs., Inc.*, No. 17-1700644-CJC, 2017 WL 8236358, at *5 (C.D. Cal. Sept. 26, 2017) (granting in part motion to deny class certification on the pleadings). Because Plaintiffs request monetary relief for the Medical Monitoring Class, there is no risk that individual adjudications would impair or inescapably alter other class members' rights. *See Green*, 541 F.2d at 1340. Accordingly, Plaintiffs cannot establish that class

treatment is appropriate under Rule 23(b)(1)(B).  Plaintiffs' Medical Monitoring Class

allegations should therefore be stricken from the Complaint.

**V.    CONCLUSION**

Plaintiffs cannot, as a matter of law, satisfy Rule 23's requirements related to the

Medical Monitoring Class.  Accordingly, for the foregoing reasons, this Court should

grant this Motion and strike Plaintiffs' Medical Monitoring Class allegations.


Dated:  August 19, 2021                    GIBSON, DUNN & CRUTCHER LLP


                                           By:  */s/ Patrick W. Dennis*
                                                      Patrick W. Dennis


                                           Attorneys for Defendants NORTHROP
                                           GRUMMAN CORPORATION and
                                           NORTHROP GRUMMAN SYSTEMS
                                           CORPORATION

Gibson, Dunn &
Crutcher LLP

1

## CERTIFICATE OF SERVICE

2      I, Patrick W. Dennis, an attorney, hereby certify that the **DEFENDANTS**

3   **NORTHROP GRUMMAN CORPORATION AND NORTHROP GRUMMAN**

4   **SYSTEMS CORPORATION'S notice of motion and MOTION TO STRIKE**

5   **CLASS ALLEGATIONS** was served to counsel for the Plaintiffs through the Court's

6   ECF/CM system on August 19, 2021.

7

8                                      By:   _/s/ Patrick W. Dennis_

9                                              Patrick W. Dennis

10                                      Attorneys for Defendants NORTHROP
                                        GRUMMAN CORPORATION and
11                                      NORTHROP GRUMMAN SYSTEMS
                                        CORPORATION

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28