1  PATRICK W. DENNIS, SBN 106796
     pdennis@gibsondunn.com
2  CHRISTOPHER CHORBA, SBN 216692
     cchorba@gibsondunn.com
3  PERLETTE MICHELE JURA, SBN 242332
     pjura@gibsondunn.com
4  ABBEY HUDSON, SBN 266885
     ahudson@gibsondunn.com
5  ALEXANDER SWANSON, SBN 280947
     aswanson@gibsondunn.com
6  GIBSON, DUNN & CRUTCHER LLP
   333 South Grand Avenue
7  Los Angeles, CA  90071-3197
   Telephone:  213.229.7000
8  Facsimile:   213.229.7520

9  JOHN CERMAK, SBN 146799
     jcermak@cermaklegal.com
10 HANNAH BLOINK, SBN 307442
     hbloink@cermaklegal.com
11 CERMAK & INGLIN, LLP
   12121 Wilshire Blvd, Ste 322
12 Los Angeles, CA 90025-1166
   Telephone:  424.465.1531
13 Facsimile:   424.371.5032

14 Attorneys for Defendants NORTHROP
   GRUMMAN CORPORATION and
15 NORTHROP GRUMMAN SYSTEMS
   CORPORATION

16                    UNITED STATES DISTRICT COURT

17                    CENTRAL DISTRICT OF CALIFORNIA

18

19 JED and ALISA BEHAR,                    CASE NO. 2:21-cv-03946-FMO-SK

                    Plaintiffs,            **DEFENDANTS NORTHROP
20                                         GRUMMAN CORPORATION AND
       v.                                  NORTHROP GRUMMAN SYSTEMS
21                                         CORPORATION'S NOTICE OF
   NORTHROP GRUMMAN                        MOTION AND MOTION TO DISMISS
22 CORPORATION and NORTHROP               FIRST AMENDED COMPLAINT
   GRUMMAN SYSTEMS                         CLAIMS FOR: (1) STRICT LIABILITY
23 CORPORATION,                            (ABNORMALLY DANGEROUS
                                           ACTIVITY); (2) PUNITIVE DAMAGES;
24                  Defendants.            AND (3) EQUITABLE RELIEF**

25                                         **Hearing**:
                                           Date:     November 4, 2021
26                                         Time:     10:00 a.m.
                                           Place:    Courtroom 6D, 6th Floor
27                                                   350 W. 1st Street
                                                     Los Angeles, California 90012
28                                         Judge:    Hon. Fernando M. Olguin

Gibson, Dunn &
Crutcher LLP

## **NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT on November 4, 2021, at 10:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 6D of the above-entitled court, located at 350 W. 1st Street, 6th Floor, Los Angeles, California 90012, Defendants Northrop Grumman Corporation and Northrop Grumman Systems Corporation will and hereby do move the Court, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for an order dismissing Plaintiffs' claim against Defendants for strict liability based on abnormally dangerous activity (the "strict liability claim"), demand for punitive damages, and request for equitable relief.

Plaintiffs' First Amended Complaint fails to state a claim upon which relief may be granted as to each of these issues as follows:  (1) With respect to Plaintiffs' strict liability claim, the Complaint does not allege facts that, if true, establish that Defendants or their predecessors engaged in activities that were ultrahazardous, that the risks of such activities could not be eliminated through the exercise of reasonable care, or that Plaintiffs' alleged injuries fall within the scope of any alleged ultrahazardous risk; (2) Plaintiffs' demand for punitive damages fails because Plaintiffs have not alleged conduct by any specific individual officer, director, or managing agent of Defendants that was malicious, oppressive, or fraudulent; and (3) Plaintiffs' request for equitable relief should be dismissed because Plaintiffs have not pleaded a valid theory of restitution nor alleged, with respect to both restitution and their request for injunctive relief, that they lack an adequate remedy at law—a necessary prerequisite under binding federal law.

This Motion is based upon this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the pleadings and papers on file in this action, any argument in connection with the Motion, and such further evidence or arguments as the Court may consider.

Gibson, Dunn &
Crutcher LLP

This Motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on September 7, 2021 (and previously, in connection with the earlier version of this Motion, on August 6, 2021).  Defendants understand that Plaintiffs will oppose this Motion.

Dated: September 15, 2021

GIBSON, DUNN & CRUTCHER LLP

By: _/s/ Patrick W. Dennis_
Patrick W. Dennis

Attorneys for Defendants NORTHROP GRUMMAN CORPORATION and NORTHROP GRUMMAN SYSTEMS CORPORATION

Gibson, Dunn & Crutcher LLP

# TABLE OF CONTENTS

Page

MEMORANDUM OF POINTS AND AUTHORITIES ............................................... 1

I.    INTRODUCTION AND SUMMARY OF ARGUMENT .................................. 1

II.   PROCEDURAL BACKGROUND AND SUMMARY OF ALLEGED
      FACTS........................................................................................................... 3

III.  THE LEGAL STANDARDS GOVERNING THIS MOTION ........................ 6

IV.   ARGUMENT.................................................................................................. 7

      A.    Plaintiffs Do Not State a Claim for Strict Liability Based on
            Abnormally Dangerous Activity. ........................................................ 7

            1.    *Plaintiffs Cannot Allege That the Nature of Defendants'
                  Alleged Use or Disposal of the Chemicals at Issue Is
                  Ultrahazardous.* ....................................................................... 9

            2.    *Plaintiffs Fail to Allege That the Risks From Defendants'
                  Alleged Activities Cannot Be Eliminated by the Exercise of
                  Reasonable Care.*..................................................................... 11

            3.    *Strict Liability Is Not Appropriate for Plaintiffs' Alleged
                  Economic Injuries.* .................................................................. 13

            4.    *Plaintiffs' Strict Liability Claim Should Be Dismissed with
                  Prejudice.* ............................................................................... 14

      B.    Plaintiffs Do Not Plead Facts Necessary to Support Their Demand
            for Punitive Damages. ........................................................................ 14

      C.    The Court Should Dismiss All of Plaintiffs' Requests for Equitable
            Relief. ................................................................................................. 17

V.    CONCLUSION ............................................................................................. 20

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Altman v. PNC Mortgage*,
 850 F. Supp. 2d 1057 (E.D. Cal. 2012) .................................................................. 15

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) ............................................................................................. 6, 7, 12

*Banks v. R.C. Bigelow, Inc.*,
 No. 20-cv-6208 DDP, 2021 WL 1734779 (C.D. Cal. May 3, 2021) ...................... 19

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007) ......................................................................................... 6, 12

*Blue Water Boating Inc. v. Plains All Am. Pipeline, L.P.*,
 No. 16-3283 PSG, 2017 WL 405425 (C.D. Cal. Jan. 26, 2017) ............................ 14

*Bonner v. Rite Aid Corporation*,
 No. 2:19-cv-00674-MCE-EFB, 2020 WL 2836487 (E.D. Cal. June 1, 2020) ........... 7

*In re Burbank Env't. Litig.*,
 42 F. Supp. 2d 976 (C.D. Cal. 1998) ............................................................. 9, 11, 13

*Chavez v. S. Pac. Transp. Co.*,
 413 F. Supp. 1203 (E.D. Cal. 1976) ..................................................................... 8, 13

*Cisneros v. Instant Capital Funding Group, Inc.*,
 263 F.R.D. 595 (E.D. Cal. 2009) ........................................................................... 15

*Clark v. Am. Honda Motor Co.*,
 No. cv 20-3147 AB, 2021 WL 1186338 (C.D. Cal. Mar. 25, 2021) ..................... 19

*Clark v. Di Prima*,
 241 Cal. App. 2d 823 (1966) ..................................................................................... 8

*Clarke v. Pac. Gas & Elec. Co.*,
 501 F. Supp. 3d 774 (N.D. Cal. 2020) .................................................................. 9, 10

*Collins v. eMachines, Inc.*,
 202 Cal. App. 4th 249 (2011) ................................................................................. 18

Gibson, Dunn & Crutcher LLP

ii

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Cousins v. Lockyer*,
   568 F.3d 1063 (9th Cir. 2009) ........................................................................ 6

*Cruz v. HomeBase*,
   83 Cal. App. 4th 160 (2000) ......................................................................... 15

*Cyrus v. Haveson*,
   65 Cal. App. 3d 306 (1976) .......................................................................... 15

*Durrell v. Sharp Healthcare*,
   183 Cal. App. 4th 1350 (2010) .................................................................... 17

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
   751 F.3d 990 (9th Cir. 2014) ..................................................................... 6, 7

*Edwards v. Post Transp. Co.*,
   228 Cal. App. 3d 980 (1991) ..................................................... 8, 11, 12, 13

*Escola v. Coca Cola Bottling Co. of Fresno*,
   24 Cal. 2d 453 (1944) .................................................................................. 13

*Goodwin v. Reilley*,
   176 Cal. App. 3d 86 (1985) ......................................................................... 13

*Gordon v. City of Oakland*,
   627 F.3d 1092 (9th Cir. 2010) ........................................................... 7, 14, 17

*Greenfield MHP Assocs., L.P. v. Ametek, Inc.*,
   145 F. Supp. 3d 1000 (S.D. Cal. 2015) ................................................... 9, 13

*Henderson v. Sec. Nat'l Bank*,
   72 Cal. App. 3d 764 (1977) ......................................................................... 15

*In re iPhone Application Litig.*,
   844 F. Supp. 2d 1040 (N.D. Cal. 2012) ..................................................... 18

*Jackson v. Easy Bay Hosp.*,
   980 F. Supp. 1341 (N.D. Cal. 1997) ........................................................... 15

*Luthringer v. Moore*,
   31 Cal. 2d 489 (1948) .............................................................................. 8, 13

Gibson, Dunn &
Crutcher LLP

# TABLE OF AUTHORITIES
(continued)

Page(s)

*In re MacBook Keyboard Litig.*,
   No. 18-2813, 2020 WL 6047253 (N.D. Cal. Oct. 13, 2020) .............................. 19, 20

*McBride v. Boughton*,
   123 Cal. App. 4th 379 (2004) ............................................................ 17, 18

*Melchior v. New Line Prods., Inc.*,
   106 Cal. App. 4th 779 (2003) .................................................................. 17

*Moore v. R.G. Indus., Inc.*,
   789 F.2d 1326 (9th Cir. 1986) ................................................................... 8

*O'Connor v. Boeing N. Am., Inc.*,
   No. 97-1554 DT, 2005 WL 6035255 (C.D. Cal. Aug. 18, 2005) .......................... 10

*Palmisano v. Olin Corp.*,
   No. 03-01607, 2005 WL 6777560 (N.D. Cal. June 24, 2005) .................................. 9

*Perlmutter v. Lehigh Hanson, Inc.*,
   No. 21-02571, 2021 WL 4033029 (N.D. Cal. Sept. 3, 2021) ................................ 19

*Pierce v. Pac. Gas & Elec. Co.*,
   166 Cal. App. 3d 68 (1985) .............................................................. 10, 11

*Reddy v. Litton Indus., Inc.*,
   912 F.2d 291 (9th Cir. 1990) .................................................................. 14

*Rosal v. First Fed. Bank of California*,
   671 F. Supp. 2d 1111 (N.D. Cal. 2009) ...................................................... 18

*Smith v. Lockheed Propulsion Co.*,
   247 Cal. App. 2d 774 (1967) ............................................................. 8, 13

*Sonner v. Premier Nutrition Corp.*,
   971 F.3d 834 (9th Cir. 2020) .................................................................. 18

*Stanley Otake v. Wells Fargo Bank, N.A.*,
   No. 19-2266-JVS, 2020 WL 2527043 (C.D. Cal. Apr. 8, 2020) .............................. 6

*Taiwan Semiconductor Mfg. Co. Ltd. v. Tela Innovations, Inc.*,
   No. 14-00362, 2014 WL 3705350 (N.D. Cal. July 24, 2014) ............................. 16, 17

Gibson, Dunn &
Crutcher LLP

iv

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Takahashi v. Loomis Armored Car Serv.*,
  625 F.2d 314 (9th Cir. 1980) ........................................................................ 8

*U.S. v. S. Cal. Edison*,
  300 F. Supp. 2d 964 (E.D. Cal. 2004) ........................................................... 9

*United Guar. Mortg. Indem. Co. v. Countrywide Fin. Corp.*,
  660 F. Supp. 2d 1163 (C.D. Cal. 2009) ......................................... 14, 17, 20

*Waddell v. Trek Bicycle Corp.*,
  No. 15-2082-DOC, 2016 WL 7507769 (C.D. Cal. Jan. 25, 2016) .............. 15, 16, 17

*Whittlestone, Inc. v. Handi-Craft Co.*,
  618 F.3d 970 (9th Cir. 2010) ........................................................................ 7

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
  313 F. Supp. 3d 1113 (N.D. Cal. 2018) .................................................. 15, 16

## STATUTES

Cal. Civ. Code § 3294(a) ................................................................................. 15

Cal. Civ. Code § 3294(b) ................................................................................. 15

## TREATISES

Restatement 2d of Torts, § 520 ......................................................................... 8

Gibson, Dunn &
Crutcher LLP

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiffs' First Amended Complaint alleges that their residential properties were contaminated by chlorinated solvents such as trichloroethylene ("TCE") and perchloroethylene ("PCE") used in commercial manufacturing that took place decades ago at an industrial facility in Canoga Park.   Defendants Northrop Grumman Corporation and Northrop Grumman Systems Corporation never actually operated the facility, but Plaintiffs nevertheless blame them for the alleged contamination and seek to hold them liable for allegedly failing to notify the community about it.  Plaintiffs also assert that the contamination has reduced the value of their property and exposed them to the risk of developing cancer or other illnesses in the future, allegedly necessitating a medical monitoring program.  Plaintiffs bring causes of action for negligence, nuisance, strict liability based on abnormally dangerous activity ("strict liability"), and trespass, and they seek compensatory damages, injunctive relief (for abatement and remediation), equitable restitution, and punitive damages.  Defendants move under Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss Plaintiffs' strict liability claim, their demand for punitive damages, and their request for equitable relief.

Plaintiffs' strict liability claim is facially defective for at least three reasons: ***First***, Plaintiffs fail to appreciate that the abnormally dangerous or "ultrahazardous" activity doctrine scrutinizes the risks inherent in the type of activity that led to the harm-causing accident, not the risks that arise in the accident's aftermath.  Plaintiffs make much of the hazards that TCE, PCE, and other chlorinated solvents pose to the community after they are released into the environment, but apart from briefly mentioning a few ordinary commercial/industrial processes, they have nothing to say about any inherent hazards of those processes that were the purported cause of the chemical releases.  Courts in this Circuit that have examined the commercial and industrial uses of chlorinated solvents like TCE and PCE have repeatedly rejected, including at the pleading stage, claims that such uses are ultrahazardous activities.

**Second**, Plaintiffs' fundamental theory in this case is antithetical to strict liability. Courts impose strict liability for ultrahazardous activity because the risk of harm inherent in such activities cannot be avoided even through the use of reasonable care. But if the alleged harm occurs because the defendant failed to exercise reasonable care, then negligence, not strict liability, is the appropriate framework. Not only do Plaintiffs all but ignore this defining feature of the ultrahazardous activity doctrine, they repeatedly allege that they would not have been harmed if Defendants had "properly" contained and/or disposed of the chemicals at issue and notified the public about the presence of these chemicals in the environment. *E.g.*, First Am. Compl. ("FAC") (Dkt. 41) ¶¶ 19–20. According to Plaintiffs' own allegations, Defendants' exercise of reasonable care could have eliminated the purported harms, thus foreclosing their strict liability claim.

**Third**, even if ordinary commercial or industrial use of chlorinated solvents were an ultrahazardous activity (it is not), strict liability would be limited to the type of harm that allegedly makes such activity abnormally dangerous—serious personal injury or property destruction. Plaintiffs claim that exposure to the chemicals at issue can cause cancer and other serious diseases, but they do not claim it has in this case. Instead, Plaintiffs allege that they have suffered economic injury—medical monitoring costs and reduced property values—based on the possibility that residents of the area might become sick in the future. A claim that a physical injury is merely possible in the future is not the type of serious physical injury to person or property that can support a strict liability claim for ultrahazardous activity.

Plaintiffs also fail to plead facts sufficient to demonstrate their entitlement to punitive damages. As corporations, Defendants are legally incapable of harboring the animus required for punitive damages. Plaintiffs must therefore identify officers, directors, or managing agents of Defendants, and describe the actions of such individuals constituting oppression, fraud, or malice, for which punitive damages can be awarded under California law. Plaintiffs did neither. Their conclusory assertions that Defendants

acted with "actual malice" and that unspecified members of "senior management" acted with "willful disregard" are not enough. *Id.* ¶¶ 33, 72, 91, 104.

Finally, Plaintiffs seek equitable restitution, but they have failed to plead a valid basis for this relief, such as a fraudulently-procured contract or Defendants obtaining a benefit from Plaintiffs through fraud, conversion, or duress. Plaintiffs also cannot establish their entitlement to equitable relief (restitution or injunction) more broadly, however, because they do not plead (and cannot amend in good faith to allege) that they lack an adequate remedy at law, as required by binding Ninth Circuit precedent.

All of these deficiencies were present in Plaintiffs' original complaint, and were already the subject of a motion to dismiss. Despite two conferences of counsel on these issues, and a full view of Defendants' legal arguments in their previously-filed motion to dismiss, Plaintiffs have made minimal amendments that have not cured these deficiencies. Further amendment would be futile, and the Court should dismiss with prejudice Plaintiffs' claim for strict liability based on abnormally dangerous activity, their demand for punitive damages, and their prayers for equitable restitution and injunctive relief.

## II.     PROCEDURAL BACKGROUND AND SUMMARY OF ALLEGED FACTS

On May 10, 2021, Plaintiffs Jed and Alisa Behar, purporting to represent classes of individuals (1) who own or have owned residential property and (2) who have resided or worked in a defined area of Canoga Park, California, filed a class action complaint against Defendants asserting causes of action for negligence, private nuisance, strict liability for abnormally dangerous activity, trespass, and "unjust enrichment." Compl. (Dkt. 1) ¶¶ 5, 9, 41–43, 48, 63–112.

On August 19, 2021, Defendants filed a motion to dismiss Plaintiffs' claims for strict liability and unjust enrichment/equitable relief and their demand for punitive damages under Fed. R. Civ. P. Rule 12(b)(6). (Dkt. 35.) At the same time, Defendants filed a motion to strike Plaintiffs' medical monitoring class allegations. (Dkt. 36.)

Plaintiffs filed their FAC on September 1, 2021. (Dkt. 41.) The FAC drops Plaintiffs' unjust enrichment claim in favor of demands for "restitution" (based on an unjust enrichment theory) as an *additional* remedy for Defendants' alleged negligence, continuing nuisance, strict liability, and "trespass/continuing trespass." FAC ¶¶ 77, 83, 103, 108. Plaintiffs also made minimal changes to the allegations supporting their strict liability claim and demand for punitive damages. FAC ¶ 33, 98. In light of Plaintiffs' FAC, the Court then denied as moot Defendants' motions addressing Plaintiffs' original complaint. (Dkt. 42.)

As in their original complaint, Plaintiffs allege in the FAC that Defendants succeeded to the liabilities of Litton Industries, Inc. in connection with Litton's ownership and operation of a commercial manufacturing facility located at 8020 Deering Avenue in Canoga Park. FAC ¶ 1 & n.1. Litton allegedly used the facility for circuit board manufacturing between 1967 and 2002. *Id.* ¶ 15.

Plaintiffs further allege that, during this time, various volatile organic compounds ("VOCs") were used in the circuit board manufacturing process, as well as in "copper plating, silk screening, photo printing and chemical stripping." *Id.* ¶¶ 2, 15. They also allege that some of these VOCs, such as TCE, PCE, methylene chloride, and 1,4-dioxane, leached into the groundwater and migrated to the soil beneath their properties. *Id.* ¶¶ 2, 15, 21–22, 24. Plaintiffs claim that their property was damaged, and they were exposed to contaminants, through a processed called "vapor intrusion," whereby chemical vapors migrate "though the soil and through building foundations and floors and into a building's rooms" and "degrade indoor air" quality. *Id.* ¶¶ 6, 24–25.

Plaintiffs do *not* allege that this vapor intrusion caused any physical injury to their persons or property beyond the mere presence of chemicals in the area near the facility. Instead, Plaintiffs seek compensatory damages related to alleged diminution in property value, remediation and abatement costs, and for "medical monitoring" costs to screen for cancer and other serious illnesses that allegedly may develop in the future because of exposure to the VOCs. *Id.* ¶¶ 57, 71, 76–77, 84, 108; *id.* at p. 29.

Relevant to this Motion, Plaintiffs allege that "Defendants, by using, disposing of, not controlling, and then failing to properly identify, contain, warn, abate, remediate and ultimately disclose the presence of Site Contaminants have engaged in an activity that is abnormally dangerous, ultrahazardous, and constitutes inherently or intrinsically dangerous activities for which they are strictly liable . . . ." *Id.* ¶ 96.  Plaintiffs do not identify any hazards inherent in the activities at the facility that presumably led to the release of VOCs and alleged contamination of their property, but instead focus on the alleged toxicity of the chemicals once they were purportedly released into the environment.  *Id.* ¶¶ 21–22, 97, 102.  Plaintiffs contend the danger of these hazards "cannot be immediately eliminated through the use of reasonable care," *id.* ¶ 100, but allege no facts to support that contention.

Plaintiffs claim they are entitled to punitive damages "as the result of the carelessness, recklessness, negligent, willful and wanton actions in violation of law, and willful disregard of persons who foreseeably might be harmed by such acts or omissions by the Defendants' senior management or ratification thereby." *Id.* ¶ 33.  But they do not identify any examples of acts or omissions performed with "actual malice," and they do not identify any particular individual employed by Defendants who was allegedly responsible for the unidentified malicious acts or omissions.

In addition to Plaintiffs' demand for compensatory damages in each of their causes of action, Plaintiffs also seek, with respect to those causes of action, "restitution" for the amount allegedly "saved" by Defendants "by not safely and properly disposing [of] their waste by disposing of their waste on Plaintiffs [sic] and the Class Members [sic] property." *Id.* ¶¶ 77, 83, 103, 108.  Their allegations, however, do not fit within any valid theory that would entitle them to equitable restitution.  Plaintiffs also seek injunctive relief, "requiring Defendants to abate the nuisance, to conduct a prompt and thorough investigation, and to engage in identification, excavation, containment, abatement and removal of all Site Contaminants . . . ." *Id.* ¶ 55.  But they do not allege that their legal remedies are inadequate in any way.  Plaintiffs cannot obtain redress in

equity when they seek damages at law, unless they have established that their legal remedies are insufficient.  Plaintiffs failed to satisfy this prerequisite in their original complaint, and they have not done so in the FAC.

### III.    THE LEGAL STANDARDS GOVERNING THIS MOTION

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must allege facts sufficient "to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007)).  That is, a court must be able to "draw [a] reasonable inference that the defendant is liable for the misconduct alleged" from the *facts* included in the complaint.  *Iqbal*, 556 U.S. at 678.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*  Nor do "'naked assertion(s)' devoid of 'further factual enhancement.'"  *Id.* (quoting *Twombly*, 550 U.S. at 557).

Accordingly, courts follow a two-step approach when evaluating the plausibility of a complaint.  First, the court pares all conclusory statements and allegations from the complaint (*Twombly*, 550 U.S. at 555), including plaintiffs' legal conclusions.  *See Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009) ("[C]onclusory allegations of law . . . are insufficient to avoid a Rule 12(b)(6) dismissal." (internal quotation marks omitted)).  Second, the court reviews the complaint's remaining factual allegations to determine whether they "plausibly" entitle the plaintiff to relief, or whether they only raise a "mere possibility of misconduct."  *Iqbal*, 556 U.S. at 678–80.  In the latter case, dismissal is required.  *See Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 1000 (9th Cir. 2014) (affirming dismissal and finding that the complaint did not contain sufficient factual allegations to state a plausible entitlement to relief); *Stanley Otake v. Wells Fargo Bank, N.A.*, No. 19-2266-JVS, 2020 WL 2527043, at *3 (C.D. Cal. Apr. 8, 2020) (dismissing Plaintiff's claim because "as pled [it did] not infer more than the mere possibility of misconduct").

This scrutiny at the pleadings stage is essential to avoid saddling defendants with expensive discovery obligations.  *See Iqbal*, 556 U.S. at 678–79 ("Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."); *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014) ("[T]he factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.").  "Although leave to amend a deficient complaint shall be freely given when justice so requires . . . leave may be denied if amendment of the complaint would be futile."  *Gordon v. City of Oakland*, 627 F.3d 1092, 1094 (9th Cir. 2010).

Finally, a Rule 12(b) motion is an appropriate vehicle for dismissing a requested remedy such as punitive damages or equitable relief.  *Bonner v. Rite Aid Corporation*, No. 2:19-cv-00674-MCE-EFB, 2020 WL 2836487, at *2 n.4 (E.D. Cal. June 1, 2020) (challenges to requests for restitution and punitive damages should "be made pursuant to Rule 12(b)(6), especially when, as here, the sufficiency of the pleading is at issue" (citing *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 974–75 (9th Cir. 2010))).

## IV.   ARGUMENT

On their second attempt, Plaintiffs again fail to meet their pleading burden with respect to their claim for strict liability based on abnormally dangerous activity, the demand for punitive damages, injunctive relief, and the new request for equitable restitution.  Their threadbare and conclusory allegations are insufficient to withstand a Federal Rule of Civil Procedure 12(b)(6) motion, and those claims should be dismissed with prejudice.

### A.   Plaintiffs Do Not State a Claim for Strict Liability Based on Abnormally Dangerous Activity.

Plaintiffs contend that "by using, disposing of, not controlling, and then failing to properly identify, contain, warn, abate, remediate and ultimately disclose the presence of Site Contaminants" (such as TCE), Defendants engaged in "abnormally dangerous,

ultrahazardous" and "intrinsically dangerous" activity for which they are strictly liable. FAC ¶¶ 21–22, 96.  While California law[1] recognizes strict liability for "ultrahazardous" activity, Plaintiffs fundamentally misconstrue this narrow doctrine and fail to allege facts which, if true, demonstrate that Defendants' alleged activities were ultrahazardous and subject to strict liability.

California courts determine whether an activity is ultrahazardous by analyzing the following factors:

(a)   existence of a high degree of risk of some harm to the person, land or chattels of others;

(b)   likelihood that the harm that results from it will be great;

(c)   inability to eliminate the risk by the exercise of reasonable care;

(d)   extent to which the activity is not a matter of common usage;

(e)   inappropriateness of the activity to the place where it is carried on; and

(f)   extent to which its value to the community is outweighed by its dangerous attributes.

*Edwards v. Post Transp. Co.*, 228 Cal. App. 3d 980, 985 (1991) (citing Restatement 2d of Torts, § 520).  Examples of ultrahazardous activities found by courts applying these factors include:  test firing rocket engines (*Smith v. Lockheed Propulsion Co.*, 247 Cal. App. 2d 774, 785 (1967)); fumigating an occupied building with cyanide gas (*Luthringer v. Moore*, 31 Cal. 2d 489, 492–94 (1948)); and transporting bombs by rail (*Chavez v. S. Pac. Transp. Co.*, 413 F. Supp. 1203, 1209 (E.D. Cal. 1976)).  Activities found *not* to be ultrahazardous include, among others:  irrigation by canal leading to flooding, *Clark v. Di Prima*, 241 Cal. App. 2d 823, 829 (1966); discharge of firearms, *Moore v. R.G. Indus., Inc.*, 789 F.2d 1326, 1328 (9th Cir. 1986); and use of potassium perchlorate in manufacturing flares, leading to contamination of the groundwater with

---

[1]  California substantive law applies to the claims Plaintiffs assert here. *See Takahashi v. Loomis Armored Car Serv.*, 625 F.2d 314, 316 (9th Cir. 1980) ("In [a] diversity action, the court must apply the substantive law of the forum state.").

perchlorate.  *Palmisano v. Olin Corp.*, No. 03-01607, 2005 WL 6777560, at *17 (N.D. Cal. June 24, 2005).

"While the inquiry of whether an activity should be classified as ultrahazardous requires fact-specific analysis regarding the activity in question, strict liability claims are still subject to dismissal at the pleadings stage if they are not plausibly pleaded." *Clarke v. Pac. Gas & Elec. Co.*, 501 F. Supp. 3d 774, 791 (N.D. Cal. 2020) (rejecting plaintiff's contention that "[g]iven the inherently factual nature of the determination whether an activity is ultrahazardous . . . it would be inappropriate to resolve this determination on a motion to dismiss").  Indeed, federal district courts applying California law regularly grant motions to dismiss strict liability claims based on ultrahazardous activity.  *See, e.g.*, *id.* (dismissing claim that operation of a manufactured gas plant, which led to soil and water contamination, was an ultrahazardous activity); *U.S. v. S. Cal. Edison*, 300 F. Supp. 2d 964, 991 (E.D. Cal. 2004) (dismissing claim that operation of a hydroelectric power plant was an ultrahazardous activity).

Plaintiffs have not stated a claim for strict liability based on ultrahazardous activity for at least three independent reasons.

### 1.     *Plaintiffs Cannot Allege That the Nature of Defendants' Alleged Use or Disposal of the Chemicals at Issue Is Ultrahazardous.*

Courts in this circuit have consistently rejected—including at the pleading stage—claims that the commercial or industrial use and disposal of TCE, PCE, and similar chemicals is an ultrahazardous activity.  *See, e.g.*, *Greenfield MHP Assocs., L.P. v. Ametek, Inc.*, 145 F. Supp. 3d 1000, 1010 (S.D. Cal. 2015) (granting motion to dismiss). As one court recognized, TCE and PCE are "used widely as solvents" in "[m]any industries" including "industrial plants and dry cleaners."  *In re Burbank Env't. Litig.*, 42 F. Supp. 2d 976, 983 (C.D. Cal. 1998) (holding that "that "plaintiffs have not stated sufficient facts to establish [that] the use of TCE [and] PCE . . . is an ultrahazardous activity").  Thus, "[i]n California, the use of TCE has never been considered so hazardous to the public generally that liability must be imposed in the absence of

negligence." *O'Connor v. Boeing N. Am., Inc.*, No. 97-1554 DT (RCx), 2005 WL 6035255, at *18 (C.D. Cal. Aug. 18, 2005). Plaintiffs' virtually identical claims should fair no better.

Plaintiffs fundamentally misconceive how the ultrahazardous activity doctrine works. The FAC focuses entirely on the alleged consequences of Defendants' specific alleged wrongdoing—not on the risks *inherent* in the *type* of activities that allegedly caused Plaintiffs' injuries. *See* FAC ¶¶ 96–98. But "[t]he doctrine of ultrahazardous activity focuses not on a product and its defects but upon an activity intentionally undertaken by the defendant, which by its nature is very dangerous." *Pierce v. Pac. Gas & Elec. Co.*, 166 Cal. App. 3d 68, 85 (1985). In *Pierce*, the plaintiff was severely electrocuted following a series of mishaps beginning with the explosion of an untested power transformer, which the defendant's repair crew had installed after the previous transformer was destroyed in a lightning strike. *Id.* at 74. The court recognized that although "the ultimate result of the transformer failure was very hazardous . . . . the doctrine scrutinizes not the accident itself but the activity which led up to the accident." *Id.* at 85. The court went on to hold that the activity of maintaining electric power lines is not an ultrahazardous activity, even though severe injury can occur when something goes wrong. *Id.* Likewise, Plaintiffs' allegations about the hazards posed by the chemicals at issue after they are improperly disposed of and released into the environment do not establish that the activities leading up to the alleged release and contamination are ultrahazardous.

The appropriate focus of the ultrahazardous activity analysis is Defendants' alleged use of chemicals at a "commercial manufacturing facility" for "circuit board production, copper plating, silk screening, photo printing and chemical stripping," which the FAC mentions only in passing. FAC ¶¶ 1–2. The FAC says nothing about the hazards, if any, associated with these common commercial processes and therefore fails to state a claim that Defendants' activities were ultrahazardous. *Clarke*, 501 F. Supp.

3d at 791 ("Courts have dismissed strict liability claims for failure to allege an ultrahazardous activity.").

Plaintiffs' only substantive allegations about "activity intentionally undertaken" by Defendants, *Pierce*, 166 Cal. App. 3d at 85, concern the specific manner in which Defendants allegedly disposed of TCE and PCE.  FAC ¶ 98.  Plaintiffs amended their complaint to now allege that "Defendants disposed of these Contaminants into a buried clarifier which would not treat or remove the Contaminates [sic], and then discharged these contaminates [sic] into a vitrified clay pipe sewer line," which it is "well known" "cannot contain PCE or TCE."  *Id.*  With these allegations, Plaintiffs seem to contend that Defendants' particular method of disposing of PCE and TCE was an ultrahazardous activity.  But strict liability does not apply where the hazard is created merely by the defendant's specific "alleged behavior in using and disposing of the chemicals."  *In re Burbank*, 42 F. Supp. 2d at 983.  Plaintiffs must allege, at minimum, that *any* attempt to dispose of the chemicals at issue is *inherently* ultrahazardous, not just that Defendants' alleged particular choices—disposal into an ineffective clarifier and discharge into leaky sewer pipes—created a high risk of harm.  Plaintiffs failed to do so even on their second attempt to state a strict liability claim.

### 2. Plaintiffs Fail to Allege That the Risks From Defendants' Alleged Activities Cannot Be Eliminated by the Exercise of Reasonable Care.

"The theory of imposition of strict liability for ultrahazardous activity is that the danger cannot be eliminated through the use of care."  *Edwards*, 228 Cal. App. 3d at 987.  Accordingly, the inability to eliminate the risk of harm through the exercise of reasonable care is a particularly important and potentially dispositive hallmark of ultrahazardous activity claims.  This is because "ordinary rules of fault are sufficient for allocation of the risk" of a given activity "[w]here the activity is dangerous only if insufficient care is exercised."  *Id.*  Following this reasoning, *Edwards* held that handling of sulfuric acid that resulted in a release of toxic gas that caused severe injuries to the plaintiff was not an ultrahazardous activity even though several Restatement factors

weighed in favor of ultrahazardous activity (factors (a), (b), (d) and (f), *supra*, p. 15) and factor (e) was inapplicable. *Id.* at 986–87.

Here, Plaintiffs offer a bare conclusion that the alleged danger of Defendants' activities "cannot be immediately eliminated through the use of reasonable care," but allege no facts to support this "formulaic recitation" of factor (c) from the Restatement and *Edwards*. FAC ¶ 100. This is exactly the sort of "naked assertion" devoid of "further factual enhancement" that is insufficient to discharge plaintiffs' obligation to state the grounds of their entitlement to relief. *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678.

Plaintiffs' more substantive allegations contradict their assertion that reasonable care cannot "immediately eliminate[]" the risk from Defendants' alleged activities, exposing the true nature of their claim. FAC ¶ 100. Plaintiffs fault Defendants for "disposing of, not controlling, and then failing to *properly* identify, contain, warn, abate, remediate and ultimately disclose the presence of" TCE and other chemical solvents used in various industrial applications at the facility. *Id.* ¶ 96 (emphasis added). They allege that if Defendants had "*properly* remediated or contained the Contaminants, Plaintiffs' and the Class Members' properties would not have been contaminated and their health would not have been put at risk." *Id.* ¶ 19 (emphasis added). And they allege that, if Defendants had "notified the public, the Plaintiffs and the Class Members would not have purchased property and/or resided at property within and around the Class Area and would not have suffered damages as a result." *Id.* ¶ 20. Even Plaintiffs' new allegations concerning Defendants' alleged disposal of TCE and PCE reflect alleged negligence: Defendants allegedly dumped chemicals into a clarifier ill-suited to the task, and then discharged them into clay sewer pipes that leaked. *Id.* ¶ 98. Thus, according to the FAC, the contamination could have been avoided if Defendants had simply exercised more care in their disposal of the chemicals by using proper equipment, and Plaintiffs do not claim that Defendants' alleged disposal method was the only one available.

In short, Plaintiffs allege they would not have been injured had Defendants exercised reasonable care. Under these alleged facts, "[t]here is no need for liability without proof of fault, because definitionally if there is damage it will have resulted from negligence and will be compensable." *Edwards*, 228 Cal. App. 3d at 987; *see also In re Burbank*, 42 F. Supp. 2d at 983. Where, as here, a plaintiff's strict liability claim is founded on alleged harm that could have been prevented through the exercise of reasonable care, a motion to dismiss should be granted. *See Greenfield*, 145 F. Supp. 3d at 1010 (granting motion to dismiss because "the risks associated with the use, storage, and/or disposal of such industrial solvents can be avoided through the exercise of reasonable car[e]").

### 3. *Strict Liability Is Not Appropriate for Plaintiffs' Alleged Economic Injuries.*

Plaintiffs must allege not only that Defendants' activities were ultrahazardous, but that they suffered harm within the scope of that ultrahazardous risk. *Goodwin v. Reilley*, 176 Cal. App. 3d 86, 92 (1985). "One who carries on an abnormally dangerous activity is not under strict liability for every possible harm that may result from carrying it on." *Id.* As one court explained, "[d]ue to the very nature of the activity, the losses suffered as a result of such activity are likely to be substantial—an 'overwhelming misfortune to the person injured.'" *Chavez*, 413 F. Supp. at 1209 (quoting *Escola v. Coca Cola Bottling Co. of Fresno*, 24 Cal. 2d 453, 462 (1944)).

Plaintiffs' claim bears no resemblance to the rare cases in which the defendant stands accused of causing catastrophic physical injury to person or property by, for example, test firing rocket engines, *Smith*, 247 Cal. App. at 785, fumigating an occupied building with cyanide gas, *Luthringer*, 31 Cal. at 492–94, or transporting bombs by rail, *Chavez*, 413 F. Supp. at 1209. Rather, Plaintiffs allege that they *might be injured in the future* by environmental exposure to chlorinated solvents that Defendants allegedly used in ordinary commercial/industrial applications. Plaintiffs' alleged harm specifically consists of: (1) costs of medical monitoring for diseases they do not have and may never

develop; and (2) reduction in property values due to the public perception of such uncertain health risks.  *See* FAC at p. 39 ¶¶ D, E.

Defendants have uncovered no case holding that economic injuries arising from the mere *risk* of harm that a purported ultrahazardous activity *might* cause sometime in the future fall within the scope of the risks for which there is strict liability.  To the contrary, this Court has granted a motion to dismiss a strict liability claim seeking economic damages (lost tourism revenue) from environmental contamination (an oil spill) caused by an alleged ultrahazardous activity.  *Blue Water Boating Inc. v. Plains All Am. Pipeline, L.P.*, No. 16-3283 PSG (JEMx), 2017 WL 405425, at *4 (C.D. Cal. Jan. 26, 2017) (holding that the plaintiff's economic harms were "not in the same category" as the harms articulated in cases in which strict liability for ultrahazardous activity was found).  The same reasoning compels dismissal here.  Plaintiffs' alleged abstract economic injuries are not in the same category as the life-threatening health conditions that Plaintiffs claim could be (but have not been) caused by exposure to the chemicals at issue.  FAC ¶ 102.

### 4.  *Plaintiffs' Strict Liability Claim Should Be Dismissed with Prejudice.*

Plaintiffs' failure to allege a cognizable strict liability claim, even after Defendants repeatedly apprised Plaintiffs of the deficiencies discussed above, establishes that any further amendment would be futile.  Accordingly, Plaintiffs' claim for strict liability based on ultrahazardous activity should be dismissed with prejudice.  *Gordon*, 627 F.3d at 1094; *United Guar. Mortg. Indem. Co. v. Countrywide Fin. Corp.*, 660 F. Supp. 2d 1163, 1171 (C.D. Cal. 2009) ("[D]ismissal with prejudice is appropriate if amendment would be 'futile.'" (citing *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990))).

### B.  Plaintiffs Do Not Plead Facts Necessary to Support Their Demand for Punitive Damages.

Under California law, punitive damages are available to a plaintiff in a tort action "where it is proven by clear and convincing evidence that the defendant has been guilty

of oppression, fraud, or malice." Cal. Civ. Code § 3294(a).  "Punitive damages are never awarded as a matter of right, are disfavored by the law, and should be granted with the greatest of caution and only in the clearest of cases." *Altman v. PNC Mortgage*, 850 F. Supp. 2d 1057, 1086 (E.D. Cal. 2012) (citing *Henderson v. Sec. Nat'l Bank*, 72 Cal. App. 3d 764, 771 (1977)).  A complaint may support a demand for punitive damages, however, if it alleges the "'ultimate facts of the defendant's oppression, fraud, or malice.'"  *Id.* (quoting *Cyrus v. Haveson*, 65 Cal. App. 3d 306, 316–17 (1976)).  The adequacy of plaintiffs' pleadings is determined by the federal pleadings standards.  *Id.* at 1085 (citing *Jackson v. Easy Bay Hosp.*, 980 F. Supp. 1341, 1353 (N.D. Cal. 1997)); *Cisneros v. Instant Capital Funding Group, Inc.*, 263 F.R.D. 595, 611 (E.D. Cal. 2009). The complaint, therefore, must include adequate "facts that defendants acted with requisite malice, oppression or fraud to support punitive damages claims." *Altman*, 850 F. Supp. 2d at 1086.

Where the defendant is a corporation, factual allegations of malice, oppression, or fraud must relate to the actions of an individual, because "[c]orporations are legal entities which do not have minds capable of recklessness, wickedness, or intent to injure or deceive." *Cruz v. HomeBase*, 83 Cal. App. 4th 160, 167 (2000); *see also In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 313 F. Supp. 3d 1113, 1147 (N.D. Cal. 2018) ("[A] corporate entity cannot commit willful and malicious conduct; instead, 'the advance knowledge and conscious disregard, authorization, ratification or act of oppression, fraud, or malice must be on the part of an officer, director, or managing agent of the corporation.'" (quoting Cal. Civ. Code § 3294(b))).  Thus, to adequately plead entitlement to punitive damages, a plaintiff "must plead that an officer, director, or managing agent of [defendant] committed an act of oppression, fraud, or malice." *In re Yahoo!*, 313 F. Supp. 3d at 1147; *accord Waddell v. Trek Bicycle Corp.*, No. 15-2082-DOC, 2016 WL 7507769, at *3 (C.D. Cal. Jan. 25, 2016) ("[I]n order to state a request for punitive damages against a corporation, a plaintiff must make allegations concerning an officer, director, or managing agent of that corporation.").  A plaintiff can satisfy this

requirement by "includ[ing] the names or titles of *any* individual actor . . . ." *Taiwan Semiconductor Mfg. Co. Ltd. v. Tela Innovations, Inc.*, No. 14-00362, 2014 WL 3705350, at \*6 (N.D. Cal. July 24, 2014) (emphasis in original); *see also In re Yahoo!*, 313 F. Supp. 3d at 1148 (plaintiffs satisfied pleading requirement by including "the names and titles of individual actors who are alleged to have committed malicious conduct" and descriptions of that conduct).

Here, Plaintiffs make only the bare allegation that they are entitled to punitive damages "as the result of the carelessness, recklessness, negligent, willful and wanton actions in violation of the law, and willful disregard of persons who foreseeably might be harmed by such acts or omission by the Defendants' senior management or ratification thereby." FAC ¶ 33.[2] Plaintiffs have, for a second time, failed to identify the name or title of even a single one of Defendants' officers, directors, or managing agents, let alone alleged conduct by any such person that could qualify as oppressive, fraudulent, or malicious. This fatal omission requires dismissal of Plaintiffs' demand for punitive damages. *See Waddell*, 2016 WL 7507769, at \*3 (where plaintiff "has not referenced any individual actors in his complaint," plaintiff "has failed to allege sufficient facts to support punitive damages"); *Taiwan Semiconductor*, 2014 WL 3705350, at \*6 ("Plaintiff's failure, then, to include the names or titles of *any* individual actor is a fatal defect in its pleading of 'willful and malicious' conduct.") (emphasis in original).

Plaintiffs had the opportunity to amend their complaint to cure this problem, but they failed to do so. Instead, they added a singular conclusory reference to unidentified members of "senior management," and not even one factual allegation regarding alleged conduct by "senior management" that demonstrates malice, oppression, or fraud. Plaintiffs' new allegation is plainly insufficient. *See In re Yahoo!*, 313 F. Supp. 3d at

---

[2] Plaintiffs also allege, in the same conclusory manner but without even passing reference to any employees of Defendants, that Defendants caused injury to plaintiffs "through acts and omissions actuated by actual malice and/or accompanied by a reckless, wanton and willful disregard . . . ." FAC ¶¶ 72, 91, 104.

Gibson, Dunn & Crutcher LLP

1148; *Waddell*, 2016 WL 7507769, at *3; *Taiwan Semiconductor*, 2014 WL 3705350, at *6. Their frivolous amendment in the FAC demonstrates that allowing Plaintiffs a second attempt to amend their pleadings would be futile. Plaintiffs' demand for punitive damages should therefore be dismissed with prejudice. *Gordon*, 627 F.3d at 1094; *United Guar.*, 660 F. Supp. at 1171 ("[D]ismissal with prejudice is appropriate if amendment would be 'futile.'").

## C.   The Court Should Dismiss All of Plaintiffs' Requests for Equitable Relief.

Defendants previously conferred with Plaintiffs' counsel and moved to dismiss the improper unjust enrichment "cause of action." (Dkt. 35 at 14–16.) Plaintiffs have now dropped that purported claim, but their FAC still seeks the equitable remedy of "restitution" for alleged negligence, private nuisance, strict liability for abnormally dangerous activity, and trespass. FAC ¶¶ 77, 83, 103, 108.[3] Plaintiffs seek this equitable monetary relief in addition to their prayer for compensatory damages in each of their legal causes of action. *Id.* ¶¶ 77, 84, 103, 108. Plaintiffs also ask for an injunction "requiring Defendants to abate the nuisance, to conduct a prompt and thorough investigation, and to engage in identification, excavation, containment, abatement and removal of all Site Contaminants from the properties of Plaintiffs and the Members of the Classes . . . ." *Id.* ¶¶ 55. Plaintiffs' requests for restitution and other equitable relief fail for several reasons.

***First***, Plaintiffs do not plead any basis for restitution. To support this request, Plaintiffs claim that Defendants realized a cost savings by "not safely and properly disposing of their waste by disposing their waste on Plaintiffs [sic] and the Class Members [sic] property." *Id.* ¶¶ 77, 83, 103, 108. Under California law, there are several permissible bases for seeking restitution, including "in lieu of breach of contract damages when the parties had an express contract, but it was procured by fraud or is unenforceable or ineffective for some reason." *McBride v. Boughton*, 123 Cal. App. 4th

---

[3]   Unjust enrichment and restitution are "synonymous." *Durrell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1370 (2010); *Melchior v. New Line Prods., Inc.*, 106 Cal. App. 4th 779, 793 (2003).

379, 388 (2004).  "Alternatively, restitution may be awarded where defendant obtained a benefit from the plaintiff by fraud, duress, conversion, or similar conduct," and in these situations, "the plaintiff may choose not to sue in tort, but instead to seek restitution on a quasi-contract theory . . . ."  *Id.*  But Plaintiffs do not allege any of these grounds:  They identify no contract that would permit restitution on a quasi-contractual theory, nor do they allege that Defendants obtained a benefit by "fraud, duress, [or] conversion."  *Id.*  In fact, they do not even seek quasi-contractual restitution *in lieu of* tort damages.  *Id.*; *Rosal v. First Fed. Bank of California*, 671 F. Supp. 2d 1111, 1133 (N.D. Cal. 2009) ("[A] claim for restitution is inconsistent and incompatible with a . . . claim in tort.").  The Court should dismiss the request for equitable restitution on these grounds alone.  *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1076 (N.D. Cal. 2012) (dismissing claim for restitution because plaintiffs "have not stated a claim for common law tort such as conversion, nor . . . established that Defendants obtained a benefit from the plaintiff by fraud or duress . . .").

> **Second**, the Court should dismiss all of Plaintiffs' requested equitable relief on the independent ground that they do not plead an inadequate remedy at law, which is a necessary prerequisite for obtaining equitable relief in federal court.  Binding Ninth Circuit precedent has addressed the question of "whether a federal court sitting in diversity can award equitable restitution under state law if an adequate legal remedy exists."  *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 842 (9th Cir. 2020).[4]  The Ninth Circuit answered "no" to this question.  *Id.* at 844 (affirming dismissal of request for equitable restitution where plaintiff failed to establish she lacked adequate remedy at law).  In light of the decision in *Sonner*, a plaintiff can only seek equitable relief, including common law restitution and injunction, if she has made plausible allegations

---

[4]  "[T]raditional principles governing equitable remedies in federal courts" apply to state law claims in federal diversity actions.  *Sonner*, 971 F.3d at 843–44.  Notably, California courts also hold that "equitable relief (such as restitution) will not be given when the plaintiff's remedies at law are adequate."  *Collins v. eMachines, Inc.*, 202 Cal. App. 4th 249, 260 (2011) (concluding that "complaint does not state a claim for restitution based on unjust enrichment").

that she lacks an adequate legal remedy.  Courts have applied *Sonner* outside of the Unfair Competition Law context and to the types of restitution sought here.  *See, e.g.*, *Banks v. R.C. Bigelow, Inc.*, No. 20-cv-6208 DDP (RAOx), 2021 WL 1734779, at *6 (C.D. Cal. May 3, 2021) (dismissing with prejudice request for relief under unjust enrichment theory, based on *Sonner*); *Clark v. Am. Honda Motor Co.*, No. cv 20-3147 AB (MRWx), 2021 WL 1186338, at *7 n.5, *8 (C.D. Cal. Mar. 25, 2021) (same). Likewise, courts apply *Sonner* to other equitable remedies, including injunctive relief. *E.g.*, *In re MacBook Keyboard Litig.*, No. 18-2813, 2020 WL 6047253, at *3 (N.D. Cal. Oct. 13, 2020) (applying *Sonner* to claim for injunctive relief and collecting decisions from "numerous courts in this circuit" doing the same).

Here, Plaintiffs do not plead (and cannot amend to plead) that they lack an adequate remedy at law.  Plaintiffs already received an opportunity to add any such allegations to their FAC, and they failed to do so.  Instead, Plaintiffs make clear that they also seek to recover compensatory and punitive damages for their alleged injuries due to Defendants' claimed negligence, private nuisance, strict liability for abnormally dangerous activity, and trespass.  FAC ¶¶ 77, 84, 103, 108; *id.* at pp. 29–30.  Never do they explain how such monetary damages and legal relief would be inadequate. Accordingly, Plaintiffs have no basis to allege that they have an inadequate remedy at law, and their requests for equitable relief should be dismissed with prejudice for this additional reason.  *Banks*, 2021 WL 1734779, at *6; *Clark*, 2021 WL 1186338, at *7 n.5, *8 (dismissing "claim" to recover for unjust enrichment because plaintiffs "have not pointed to any allegation in the [c]omplaint *pleading* that they lack an adequate remedy at law" and declining to address additional grounds for dismissal for that same reason (emphasis in original)); *In re MacBook*, 2020 WL 6047253, at *4 (dismissing all claims for equitable relief with prejudice where "monetary damages would provide an adequate remedy for the alleged injury").[5]

---

[5] *Compare, e.g.*, *Perlmutter v. Lehigh Hanson, Inc.*, No. 21-02571, 2021 WL 4033029 (N.D. Cal. Sept. 3, 2021), in which the district court permitted plaintiffs to

*(Cont'd on next page)*

Gibson, Dunn & Crutcher LLP

For these reasons, and because allowing Plaintiffs *another* opportunity to amend would be futile, *United Guar.*, 660 F. Supp. at 1171, the Court should dismiss Plaintiffs' requests for restitution and injunctive relief with prejudice.

## V.   CONCLUSION

Plaintiffs' FAC fails to allege facts sufficient to state a claim for strict liability for abnormally dangerous activity or to establish entitlement to punitive damages or restitution.  Plaintiffs' strict liability claim attempts to portray use of solvents in routine commercial/industrial processes as an ultrahazardous activity based on unrealized risks that allegedly arose long after the solvents were purportedly released into the environment.  But that is not how the doctrine of strict liability for ultrahazardous activity works, and courts have consistently rejected the argument that the mere commercial/industrial use of chlorinated solvents is an ultrahazardous activity.  Punitive damages are not available against Defendants because Plaintiffs fail to allege facts plausibly demonstrating that one of their officers, directors, or managing agents is guilty of oppression, fraud, or malice.  Finally, Plaintiffs have not pleaded a permissible basis for seeking restitution, and regardless, their request for equitable relief (both restitution and injunction) are barred by Plaintiffs' seeking remedies at law in tort for the same alleged wrongs.

For these reasons, and as explained above, Defendants respectfully request that the Court grant this Motion with prejudice.

/

/

/

/

---

continue to pursue injunctive relief in a private nuisance lawsuit, because the plaintiffs specifically alleged that emissions from defendants' industrial facility "forced them to 'retreat inside' rather than use their backyards, gardens, and neighborhood."  *Id*. at *5.  The district court concluded that these allegations supported a "reasonable inference that Plaintiffs have suffered an irreparable injury that remedies available at law could not compensate."  *Id*. at *6.  Here, however, Plaintiffs have not made any comparable allegations.

Gibson, Dunn &
Crutcher LLP

Dated:          September 15, 2021                    GIBSON, DUNN & CRUTCHER LLP


By:   */s/ Patrick W. Dennis*
                    Patrick W. Dennis

Attorneys for Defendants NORTHROP
GRUMMAN CORPORATION and
NORTHROP GRUMMAN SYSTEMS
CORPORATION

Gibson, Dunn &
Crutcher LLP

21

1

## <u>CERTIFICATE OF SERVICE</u>

2   I, Patrick W. Dennis, an attorney, hereby certify that the DEFENDANTS

3 NORTHROP GRUMMAN CORPORATION AND NORTHROP GRUMMAN

4 SYSTEMS CORPORATION'S NOTICE OF MOTION AND MOTION TO DISMISS

5 FIRST AMENDED COMPLAINT CLAIMS FOR: (1) STRICT LIABILITY

6 (ABNORMALLY DANGEROUS ACTIVITY); (2) PUNITIVE DAMAGES; AND

7 (3) EQUITABLE RELIEF was served to counsel for the Plaintiffs through the Court's

8 ECF/CM system on September 15, 2021.

9

10        By: */s/ Patrick W. Dennis*

11            Patrick W. Dennis

12        Attorneys for Defendants NORTHROP

         GRUMMAN CORPORATION and

13        NORTHROP GRUMMAN SYSTEMS

         CORPORATION

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP