# EXHIBIT 1

**STATE OF CALIFORNIA**
**CALIFORNIA REGIONAL WATER QUALITY CONTROL BOARD**
**LOS ANGELES REGION**

**CLEANUP AND ABATEMENT ORDER NO. R4-2022-XXXX**
**REQUIRING**

**WILLIAM GIAMELA**
**AND**
**LITTON SYSTEMS, INC. (now known as NORTHROP GRUMMAN CORPORATION)**

**TO ASSESS, CLEANUP, AND ABATE**
**WASTE DISCHARGED TO WATERS OF THE STATE PURSUANT TO CALIFORNIA**
**WATER CODE SECTIONS 13267 and 13304 AT 8020 DEERING AVENUE, CANOGA**
**PARK, CALIFORNIA**
**(SITE CLEANUP PROGRAM NO. 0843 AND SITE ID NO. 2040T00)**

This Cleanup and Abatement Order No. R4-2022-XXXX (Order) is issued to **William Giamela and Litton Industries, Inc. (now known as Northrop Grumman Corporation) ("Dischargers")** based on provisions of Water Code sections 13304 and 13267, which authorize the California Regional Water Quality Control Board, Los Angeles Region (Los Angeles Water Board) to issue this Cleanup and Abatement Order and require the submittal of technical and monitoring reports.

The Los Angeles Water Board finds that:

**BACKGROUND**

1. **Discharger(s):** Dischargers have caused or permitted waste to be discharged or deposited where it is, or probably will be, discharged into the waters of the State, which creates, or threatens to create, a condition of pollution or nuisance. The presence of high levels of contamination in groundwater, the soil matrix, and soil vapor and the threat of vapor intrusion caused by these contaminants constitutes a public nuisance per se because the pollution occurred as a result of discharges of wastes in violation of the Water Code.

2. **Location:** The Site is located at 8020 Deering Avenue, Canoga Park, California. Attachment A, Figure 1, Site Location Map, attached hereto and incorporated herein by reference, depicts the location of the Site. Additionally, Figure 2, Site Map, of Attachment A, also attached hereto and incorporated herein, depicts the buildings occupying the Site and the surrounding area. The land use setting in the vicinity of the Site is light industrial and manufacturing facilities, located to the north, south and west. Residential areas are to the east. Contamination from the Site extends in groundwater and soil vapor beneath the residential areas for at least two miles.

Commercial Property                     Cleanup and Abatement Order No. R4-2022-XXXX
SCP No. 0843                                                                    Page 2

## SITE HISTORY

3. **Site Description and Activities:** The Site is approximately 825 feet above mean sea level. The vadose zone and aquifer materials at the Site include interbedded sand, silt and clay. Groundwater occurs approximately 42 feet below ground surface (bgs), in a sandy unit. The Site is underlain by approximately 325 feet of Quaternary alluvium, resting on the Pliocene Pico Formation. "Clayey" aquifer material may extend from about 80 feet bgs to the Pico Formation. The thickness of the "clayey" material was evaluated with a 200-foot-deep boring made in October 2015. The nearest active water supply wells are more than five miles from the Site.  The nearest surface water body, Browns Canyon Wash is approximately 2,000 feet east of the Site. Brown Canyon Wash merges with the Los Angeles River approximately 1.5 miles south-southeast of the Site.

The Site (1.75 acres) is currently owned by William Giamela and occupied by Coast United-Bench Ad Company. The Site was also the location of the former Litton Industries (acquired by Northrop Grumman in 2001) and was first developed in the 1960s. The onsite building was constructed in 1967. Past manufacturing activities included circuit-board production, copper plating, silk screening, photo printing, and chemical stripping. Currently, advertising, and graphic design/printing activities occur on Site.

## SITE OWNERSHIP AND OPERATIONS

4. **Chemical Usage:** As recorded in documents available in the case file (https://geotracker.waterboards.ca.gov/profile_report.asp?global_id=SL2044T1600), known significant Site features used by Litton Industries, Inc., include an approximately 28,000 square-foot building, a four-stage underground clarifier (removed in 2006), and a covered, drum-storage area (currently empty). Available information indicates that the contaminants released at the Site were associated with the storage, transfer and use of solvents, acids, and metal wastes used during or discharged from the above-listed manufacturing activities.

## EVIDENCE OF WASTE DISCHARGE AND BASIS FOR SECTION 13304 ORDER

The above sections summarized the ownership and documented chemical usage at the Site. The following evidence indicates discharges occurred:

5. **Summary of Findings from Investigations:**

Soil, soil vapor and groundwater assessments were performed at the Site between 1998 and the present. An evaluation of the analytical results from these assessments indicate that waste was discharged and continues to migrate offsite unabated in the subsurface:

- Metal contaminants and volatile organic compounds (VOCs) occur at the highest concentrations near the clarifier. VOCs are also found in soil beneath the building,

Commercial Property                    Cleanup and Abatement Order No. R4-2022-XXXX
SCP No. 0843                                                                    Page 3

toward the south property line, and continue to migrate in groundwater off the property downgradient to the southeast.

- Utilizing a phased approach for assessment of VOCs on- and offsite, the VOC plume in groundwater was delineated: The VOC plume in groundwater is approximately 2.4 miles long and 1.8 miles wide.

- The trichloroethylene (TCE) plume in groundwater spans the longest and widest of all the chemicals of concern (COCs). All other COC plume boundaries fall within the TCE plume boundary.

- The VOC plume boundaries in soil vapor mirror the VOC plume boundary in groundwater.

The Los Angeles Water Board has reviewed and evaluated the technical reports and records pertaining to the discharge, detection, and distribution of wastes at the Site and the Site vicinity. The Site assessments indicate that the soil, soil vapor and/or groundwater are impacted with wastes exceeding screening levels:

a. Soil contamination includes the metals, chromium, copper, lead, and nickel, and the VOCs, perchloroethylene (PCE), trichloroethene (TCE), 1,1,1-trichloroethane (1,1,1-TCA), cis-1,2-dichloroethene (c-1,2-DCE), 1,2-dichloroethene (1,2-DCE), and chloroform.

b. The highest concentration of any VOC in groundwater is TCE. Groundwater contamination includes the VOCs, PCE, TCE, 1,1,1-TCA, c-1,2-DCE, 1,2-DCE, and chloroform.  TCE in groundwater extends offsite.

c. The maximum concentration of TCE in the soil matrix is 160 mg/kg. The concentration of TCE in the soil matrix exceeds the San Francisco Bay Regional Board, Environmental Screening Level (ESLs) of 0.64 and the USEPA's Protection of Groundwater Soil Screening Levels (SSLs) of 0.0051 for soil posing a threat to groundwater quality.

d. The maximum concentrations of TCE, PCE, and cis-1,2-DCE in soil vapor are 2900 µg/m$^3$, 740 µg/m$^3$, and 67 µg/m$^3$, respectively. The concentrations of TCE, PCE, and 1,1,1-TCE in soil vapor exceed the ESLs of 0.48 µg/m$^3$, 0.46 µg/m$^3$, and 8.3 µg/m$^3$, respectively for residential land use and the ESLs for commercial/industrial land use, which are 3 µg/m$^3$, 2 µg/m$^3$, and 35 µg/m$^3$, respectively.

e. The maximum concentrations of VOCs in groundwater for TCE, PCE, cis-1,2-DCE, 1,1,1-TCA, and 1,1-DCE are 770,000 µg/L, 11,000 µg/L, 92,000 µg/L, 84,000 µg/L, 28,000 µg/L, respectively. The concentrations of TCE, PCE, cis-1,2-DCE, 1,1,1-TCA, and 1,1-DCE in the groundwater exceed the State's Maximum Contaminant Levels (MCL) of 5 µg/L for TCE and PCE; 6 µg/L for cis-1,2-DCE and 1,1-DCE; and 200 µg/L for 1,1,1-TCA.

Commercial Property
SCP No. 0843

Cleanup and Abatement Order No. R4-2022-XXXX
Page 4

The contaminant with the highest concentration is TCE, with the detectable dissolved TCE plume extending approximately 5,500 feet downgradient (southeast) from the Site. The dissolved plume extends under a residential area. The depth to groundwater ranges approximately from 32 to 48 ft bgs on Site and from 13 to 35 ft bgs offsite. Because the depth to groundwater is shallow, the presence of the VOCs in the subsurface threatens to cause vapor intrusion into buildings and residential structures downgradient of the Site.

6. **Source Elimination and Remediation Status:** The following source removal and soil cleanup activities have been completed at the Site:

   a. 2006: A four stage underground clarifier was removed from the Site and 243 tons of soil excavated;

   b. June 2005-2007: Soil vapor extraction (SVE) system operated (discontinued when SVE operations reached asymptotic levels).

   c. 2007: In-situ chemical oxidation (ISCO) pilot test conducted;

   d. 2011: Second ISCO pilot test conducted from September 2011 to April 2012;

   e. 2015: Third ISCO pilot test conducted in low permeability soils;

   f. 2018-Present: Additional onsite/source area remediation is being conducted in soils from 37 to 62 feet bgs (known as the shallow channel sand complex). Groundwater is pumped from the subsurface, treated at the surface and then reinjected into the subsurface to control the offsite migration of the VOC plume in groundwater.

   Addition remediation is necessary based upon high residual concentrations of constituents of concern in all media. In addition, remediation to date has been focused on onsite areas, but does not address the extensive offsite plume, which poses a threat to nearby residential areas.

7. **Regulatory Status:** The Los Angeles Water Board has conducted regulatory oversight of the investigation and remediation to date but has not issued any prior orders.

8. **Sources of Information:** The sources for the evidence summarized above include but are not limited to reports and other documentation in Los Angeles Water Board files, including documentation of meetings and telephone calls, and e-mail communication with Dischargers, their attorneys, and/or consultants, and presentations given to Los Angeles Water Board staff. Relevant reports and data are available in the GeoTracker database at:

   https://geotracker.waterboards.ca.gov/profile_report?global_id=SL2044T1600

## AUTHORITY – LEGAL REQUIREMENTS

9.   Water Code section 13304, subdivision (a) provides that:

*"(a) Any person who has discharged or discharges waste into the waters of this state in violation of any waste discharge requirement or other order or prohibition issued by a regional board or the state board, or who has caused or permitted, causes or permits, or threatens to cause or permit any waste to be discharged or deposited where it is, or probably will be, discharged into the waters of the state and creates, or threatens to create, a condition of pollution or nuisance, shall upon order of the regional board, clean up the waste or abate the effects of the waste, or, in the case of threatened pollution or nuisance, take other necessary remedial action, including, but not limited to, overseeing cleanup and abatement efforts. A cleanup and abatement order issued by the state board or a regional board may require the provision of, or payment for, uninterrupted replacement water service, which may include wellhead treatment, to each affected public water supplier or private well owner. Upon failure of any person to comply with the cleanup or abatement order, the Attorney General, at the request of the board, shall petition the superior court for that county for the issuance of an injunction requiring the person to comply with the order. In the suit, the court shall have jurisdiction to grant a prohibitory or mandatory injunction, either preliminary or permanent, as the facts may warrant."*

10.  Water Code section 13304, subdivision (c)(1) provides that:

*". . . the person or persons who discharged the waste, discharges the waste, or threatened to cause or permit the discharge of the waste within the meaning of subdivision (a), are liable to that government agency to the extent of the reasonable costs actually incurred in cleaning up the waste, abating the effects of the waste, supervising cleanup or abatement activities, or taking other remedial actions. . ."*

11. Water Code section 13267, subdivision (b)(1) provides that:

*"In conducting an investigation . . ., the regional board may require that any person who has discharged, discharges, or is suspected of having discharged or, discharging, or who proposes to discharge waste within its region . . .shall furnish, under penalty of perjury, technical or monitoring program reports which the regional board requires. The burden, including costs, of these reports shall bear a reasonable relationship to the need for the report and the benefits to be obtained from the reports. In requiring those reports, the regional board shall provide the person with a written explanation with regard to the need for the  shall identify the evidence that supports requiring that person to provide the reports."*

This Order requires investigation and submittal of work plans.  Based upon Los Angeles Water Board staff experience with similar investigations, the approximate cost of these reports is in the range of $200,000. The burden, including costs, of these reports bears a

Commercial Property
SCP No. 0843

Cleanup and Abatement Order No. R4-2022-XXXX
Page 6

reasonable relationship to the need for the reports and the benefits to be obtained. Specifically, the technical reports required by this Order are necessary assure compliance with Water Code section 13304 and State Water Board Resolution 92-49, including to adequately investigate the extent and persistence of discharges, and intrinsic to cleanup of the site to protect the beneficial uses of waters of the state, to protect against nuisance, and to protect human health and the environment.

12. The State Water Resources Control Board (hereafter State Water Board) has adopted Resolution No. 92-49, the Policies and Procedures for Investigation and Cleanup and Abatement of Discharges Under Water Code Section 13304 (Resolution 92-49). This Policy sets forth the policies and procedures to be used during an investigation or cleanup of a polluted site and requires that cleanup levels be consistent with State Water Board Resolution 68-16, the Statement of Policy with Respect to Maintaining High Quality of Waters in California (Resolution 68-16). Resolution 92-49 and the Basin Plan establish the cleanup levels to be achieved. Resolution 92-49 requires the waste to be cleaned up in a manner to promote attainment of background water quality, or if that is not feasible, to an alternative level that is the most stringent level that is economically and technologically feasible in accordance with California Code of Regulations, title 23, section 2550.4. Any alternative cleanup level must (1) be consistent with the maximum benefit to the people of the state; (2) not unreasonably affect present and anticipated beneficial use of such water; and (3) not result in water quality less than that prescribed in the Basin Plan and applicable Water Quality Control Plans and Policies of the State Water Board.

13. The Los Angeles Water Board's Water Quality Control Plan for the Coastal Watersheds of Los Angeles and Ventura Counties (Basin Plan) identifies beneficial uses and establishes water quality objectives to protect those uses. The Site lies within the Los Angeles Groundwater Basin. The designated beneficial uses of the groundwater beneath the Site are domestic/municipal (MUN), industrial, and agricultural supply. Water quality objectives to protect the beneficial use of MUN that apply to the groundwater at the Site include the "Chemical Constituents and Radioactivity", which incorporates by reference the State MCLs set forth in Title 22 of the California Code of Regulations. The exceedance of applicable narrative or numeric water quality objectives in the Basin Plan constitutes contamination, pollution and nuisance as defined in Water Code section 13050. The wastes detected in the soil matrix and soil vapor at the Site have caused and threaten to continue to cause nuisance, as defined in Water Code section 13050.

14. The threat of vapor intrusion into buildings at and near the Site has caused or threatens to cause nuisance as defined in Water Code section 13050, subdivision (m). The Los Angeles Water Board may require the Dischargers to submit a Public Participation Plan or engage in other activities to disseminate information and gather community input regarding the Site, as authorized or required by Water Code sections 13307.1, 13307.5 and 13307.6.

Commercial Property
Cleanup and Abatement Order No. R4-2022-XXXX
SCP No. 0843
Page 7

15. This Order requires investigation and cleanup of the Site in compliance with the Water Code, the applicable Basin Plan, State Water Board Resolutions 92-49 and 68-16, and other applicable plans, policies, and regulations.  All Dischargers are responsible for complying with each and every requirement, unless otherwise specifically noted.

## DISCHARGER LIABILITY

16. The waste constituents discharged at the site constitute "waste" as defined in Water Code section 13050, subdivision (d).

17. The relevant facts and weight of the evidence indicates that the following Dischargers caused or permitted waste to be discharged into waters of the state and are therefore appropriately identified in this Order:

William Giamela is a discharger because, as the current owner of the property, he has caused or permitted waste to be discharged or deposited where it has discharged to waters of the state and has created, and continues to threaten to create, a condition of pollution or nuisance.[1]  As the current owner of the property, William Giamela has the legal ability to control the discharge.

Litton Industries, Inc. is a discharger because, as an operator at the Site, its activities caused or permitted waste to be to be discharged or deposited where it has discharged to waters of the state and has created, and continues to threaten to create, a condition of pollution or nuisance.  The activities that have caused the discharges of the wastes are described above in the SITE OWNERSHIP AND OPERATIONS section.  In approximately 2001, Litton Industries, Inc., merged with Northrop Grumman Corporation.

18. Due to the activities described in this Order, the Dischargers have caused or permitted wastes to be discharged or deposited where the wastes are, or probably will be discharged into the waters of the State which creates a condition of pollution or nuisance.

19. The Dischargers have caused or permitted VOCs to be discharged or deposited where the wastes are or probably will pose a potential human health threat to

---

[1] *Tesoro Refining & Marketing Company LLC v. Los Angeles Regional Water Quality Control Board*, 42 Cal.App.5th 453, 457 (2019), held "the term 'discharge' must be read to include not only the initial occurrence [of a discharge], but also the passive migration of the contamination into the soil."  The Court affirmatively cited State Board precedent: "State Board held that a continuous and ongoing movement of contamination from a source through the soil and into the groundwater is a discharge to waters of the state and subject to regulation."  (*Ibid.*, citing State Water Board Order WQ 86-2 (*Zoecon Corp*), WQ74-13 (*Atchison, Topeka, et al*), and WQ 89-8 (*Spitzer*) ["[D]ischarge continues as long as pollutants are being emitted at the site"].  See also State Water Board Order WQ 89-1 (*Schmidl*).)  Under California law, courts have historically held, and modern courts maintain, that possessors of land may be liable for a nuisance on that land even if the possessor did not create the nuisance. (See *Leslie Salt Co. v. San Francisco Bay Conservation and Dev. Comm'n* (1984) 153 Cal.App.3d 605, 619–620).

Commercial Property
SCP No. 0843

Cleanup and Abatement Order No. R4-2022-XXXX
Page 8

occupants of the Site through direct contact exposure to contaminated soil, soil vapor and/or groundwater, or through vapor intrusion into indoor air or through other exposure pathways.

20. The Los Angeles Water Board will consider whether additional dischargers caused or permitted the discharge of waste at the Site and whether additional dischargers should be added to this Order. The Los Angeles Water Board may amend this Order or issue a separate order or orders in the future as more information becomes available. The Los Angeles Water Board is issuing this Order to avoid further delay of Site remediation.

## OTHER CONSIDERATIONS

21. Issuance of this Order is being taken for the protection of the environment and as such is exempt from provisions of the California Environmental Quality Act (CEQA) (Pub. Res. Code §§ 21000 *et seq.*) in accordance with title 14, California Code of Regulations, sections 15061, subdivision (b)(3), 15306, 15307, 15308, and 15321. This Order generally requires the Discharger(s) to submit plans for approval prior to implementation of cleanup activities at the Site. Mere submittal of plans is exempt from CEQA as submittal will not cause a direct or indirect physical change in the environment and/or is an activity that cannot possibly have a significant effect on the environment. CEQA review at this time would be premature and speculative, as there is not enough information concerning the Dischargers' proposed remedial activities and possible associated environmental impacts. If the Los Angeles Water Board determines that implementation of any plan required by this Order will have a significant effect on the environment, the Los Angeles Water Board will conduct the necessary and appropriate environmental review prior to Executive Officer's approval of the applicable plan.

22. Pursuant to Water Code section 13304, the Los Angeles Water Board may seek reimbursement for all reasonable costs to oversee cleanup of such waste, abatement of the effects thereof, or other remedial action.

23. It is the policy of the State of California that every human being has the right to safe, clean, affordable, and accessible water adequate for human consumption, cooking, and sanitary purposes. This Order promotes that policy by requiring the Discharger(s) to clean up the groundwater to meet drinking water standards.

24. Any person aggrieved by this action of the Los Angeles Water Board may petition the State Water Board to review the action in accordance with Water Code section 13320 and title 23, California Code of Regulations, sections 2050 and following. The State Water Board must receive the petition by 5:00 p.m., 30 days after the date of this Order, except that if the thirtieth day following the date of this Order falls on a Saturday, Sunday, or state holiday, the petition must be received by the State Water Board by 5:00 p.m. on the next business day. Note that filing a petition does not stay the requirements of this Order. Copies of the law and regulations

Commercial Property                           Cleanup and Abatement Order No. R4-2022-XXXX
SCP No. 0843                                                                          Page 9

applicable to filing petitions will be provided upon request or may be found on the Internet at:

http://www.waterboards.ca.gov/public_notices/petitions/water_quality

**REQUIRED ACTIONS**

**THEREFORE, IT IS HEREBY ORDERED**, pursuant to Water Code sections 13304 and 13267 that the Discharger(s) shall investigate, cleanup the waste and abate the effects of waste forthwith discharging at and from the **Site.** "Forthwith" means as soon as reasonably possible, but in any event no later than the compliance dates below.  More specifically, the Discharger(s) shall:

1. **Develop and Submit a Site Conceptual Model:** The Site Conceptual Model (SCM) currently addresses on-Site but does not address the extent of off-Site contamination. The SCM should be updated to include the entire impacted area and include a written presentation with graphic illustrations of the discharge scenario, geology and hydrogeology, waste fate and transport in the soil matrix, soil gas and groundwater, distribution of wastes, exposure pathways, sensitive receptors, and other relevant information. The SCM shall be based upon the actual data already collected from the Site and shall identify data gaps, i.e., areas where further investigation is necessary.

    If information presented in the SCM suggests that assessment, characterization, and delineation of waste constituents is incomplete, you shall prepare and submit a work plan to complete assessment and characterization of VOCs and other potential waste constituents in soil vapor, the soil matrix and groundwater and to fully delineate the vertical and lateral extent of wastes in the soil and groundwater onsite and offsite as set forth in Required Action 2 below.

    The SCM shall also be updated as new information becomes available. The SCM shall be updated and submitted upon request by the Los Angeles Water Board.

2. **Develop, Submit, and Implement a Site Assessment Work Plan(s) to Assess, Characterize and Delineate the Extent of Wastes in Soil, Soil Vapor, and Groundwater:**

    a.  Asses the VOC plume in soil vapor on-Site and at 8000 Deering Ave. property downgradient from the subject site.

3. **Conduct Remedial Actions:** Implement a cleanup and abatement program for the cleanup of wastes in the soil matrix, soil vapor, and groundwater and the abatement of the effects of the discharges of waste on beneficial uses of water. Specifically, you shall:

    a.  Submit a workplan (Remedial Action Workplan) acceptable to the Executive Officer to evaluate remedial action alternatives for the VOC plume in groundwater on- and off-Site. The Remedial Action Workplan shall recommend one or more alternatives

Commercial Property
SCP No. 0843

Cleanup and Abatement Order No. R4-2022-XXXX
Page 10

for implementation. The Remedial Action Workplan shall specify a proposed time schedule, with remedial measures commencing in the timeframe established in **Attachment B**. Work may be phased to allow the investigation to proceed efficiently.

b. Complete all tasks in the Remedial Action Workplan and submit a technical report acceptable to the Executive Officer documenting completion. For ongoing actions, such as soil vapor extraction, groundwater extraction, indoor air remediation and/or monitoring, the report shall document start-up as opposed to completion.  (The RAP task may be subdivided if desired; e.g., onsite soil, onsite groundwater, and offsite groundwater; indoor air - each part would have a workplan followed by a technical report.)

c. Develop a comprehensive Remedial Action Plan(s) (RAP) for cleanup of wastes in the soil matrix, soil vapor and groundwater originating from the Site and submit it to the Los Angeles Water Board for review and approval. The RAP shall include, at a minimum:

   i. The feasibility study or assessment report for evaluation of the cleanup technologies considered for remediation of the soil matrix, soil vapor and groundwater and the need for interim remedial measures and pilot tests. Multiple remedial measures may be needed and may be implemented to achieve all Site cleanup goals.

   ii. Cleanup proposals for soil and groundwater that comply with State Water Board Resolution 92-49 and Resolution 68-16.

   iii. A description of the selection criteria for choosing the proposed method over other potential remedial options. Discuss the technical merit, suitability of the selected method under the given site conditions and waste constituents present, economic and technological feasibility, and immediate and/or future benefits to the people of the state.

   iv. A description of any pilot projects intended to be implemented.

   v. An estimation of the cumulative mass of wastes to be removed with the method selected. Include all calculations and the methodology used to obtain this estimate.

   vi. A detailed surface containment and soil management plan.

   vii. A proposed schedule for completion of the RAP by the deadline included in Attachment B.

d. Upon Los Angeles Water Board approval of the Remedial Action Plan(s), you shall implement the RAP in accordance with the approved schedule.

Commercial Property  
SCP No. 0843

Cleanup and Abatement Order No. R4-2022-XXXX  
Page 11

e.  You shall submit remediation progress reports to this Los Angeles Water Board according to the requirements and schedule specified in **Attachment B**. The remediation progress reports shall document all performance data associated with the operating systems.

f.  Complete all remedial actions and submit a remedial action completion report no later than the deadline specified in **Attachment B**.

4.  The Dischargers shall submit information and take actions addressing public participation requirements of Water Code sections 13307.5 and 13307.6 as required in **Attachment B** or when otherwise directed by the Executive Officer. The Dischargers are required to prepare and submit a Public Participation Plan for review and approval by the Executive Officer, with the goal of having the Los Angeles Water Board provide the stakeholders and other interested persons with periodic, meaningful opportunities to review, comment upon, and to influence investigation and cleanup activities at the Site.

The following tasks shall be completed by the deadlines in **Attachment B**:

a.  Submit a draft fact sheet that provides information, appropriately targeted to the literacy and translational needs of the community, about the investigation and remedial activities concerning the discharges of waste at the Site.

b.  Deliver an approved fact sheet to all interested persons on a schedule to be determined by the Executive Officer.

Public participation activities shall coincide with key decision-making points throughout the process as specified or as directed by the Executive Officer.

5.  **Conduct Groundwater Monitoring:** Implement a groundwater monitoring program as set forth in **Attachment B**. **The groundwater monitoring reports shall be submitted according to the schedule specified in Attachment C.**

6.  **Time Schedule:** The Dischargers shall submit all required work plans and reports and complete work within the schedule in any approved work plan or RAP and the time schedule set forth in **Attachment B** attached hereto and incorporated herein by reference, which may be revised by the Executive Officer at his/her discretion.

7.  The Los Angeles Water Board's authorized representative(s) shall be allowed:

a.  Entry upon premises where a regulated facility or activity is located, conducted, or where records are stored, under the conditions of this Order;

b.  Access to copy any records that are stored under the conditions of this Order;

c.  Access to inspect any facility, equipment (including monitoring and control equipment), practices, or operations regulated or required under this Order; and

Commercial Property
SCP No. 0843

Cleanup and Abatement Order No. R4-2022-XXXX
Page 12

    d.  The right to photograph, sample, and monitor the Site for the purpose of ensuring compliance with this Order, or as otherwise authorized by the Water Code.

8. **Contractor/Consultant Qualification:** As required by the Business and Professions Code sections 6735, 7835, and 7835.1, all reports shall be prepared by, or under the supervision of, a California registered professional engineer or geologist and signed by the registered professional.  All technical reports submitted by the Discharger(s) shall include a statement signed by the authorized representative certifying under penalty of law that the representative has examined and is familiar with the report and that to his knowledge, the report is true, complete, and accurate. All technical documents shall be signed by and stamped with the seal of the above-mentioned qualified professionals that reflects a license expiration date.

9. This Order is not intended to permit or allow the Discharger(s) to cease any work required by any other Order issued by the Los Angeles Water Board, nor shall it be used as a reason to stop or redirect any investigation or cleanup, or remediation programs ordered by the Los Angeles Water Board or any other agency.  Furthermore, this Order does not exempt the Discharger(s) from compliance with any other laws, regulations, or ordinances which may be applicable, nor does it legalize these waste treatment and disposal facilities, and it leaves unaffected any further restrictions on those facilities which may be contained in other statutes or required by other agencies.

10. The Discharger(s) shall submit a notice to the Los Angeles Water Board 30 days in advance of any planned changes in name, ownership, or control of the Site and shall a notice to the Los Angeles Water Board 30 days in advance of any planned physical changes to the Site that may affect compliance with this Order.  In the event of a change in ownership or operator, the Discharger(s) also shall provide a notice 30 days in advance, by letter, to the succeeding owner/operator of the existence of this Order and shall submit a copy of this advance notice to the Los Angeles Water Board.

11. Abandonment of any groundwater well(s) at the Site must be approved by and reported to the Los Angeles Water Board at least 30 days in advance.  Any groundwater wells removed must be replaced within a reasonable time, at a location approved by the Regional Board.  With written justification, the Los Angeles Water Board may approve the abandonment of groundwater wells without replacement. When a well is removed, all work shall be completed in accordance with California Department of Water Resources Bulletin 74-90, "California Well Standards," Monitoring Well Standards Chapter, Part III, Sections 16-19.

12. In the event compliance cannot be achieved within the terms of this Order, the Discharger(s) may request, in writing, an extension of the time specified.  The extension request shall include an explanation why the specified date could not or will not be met and justification for the requested period of extension.  Any extension request shall be submitted as soon as the situation is recognized and no later than the compliance date.  Extension requests not approved in writing with reference to this Order are denied.

Commercial Property                          Cleanup and Abatement Order No. R4-2022-XXXX
SCP No. 0843                                                                      Page 13

13. Reference herein to determinations and considerations to be made by the Los Angeles Water Board regarding the terms of the Order shall be made by the Executive Officer or his/her designee. Decisions and directives made by the Executive Officer with respect to this Order shall be as if made by the Los Angeles Water Board.

14. The Los Angeles Water Board, through its Executive Officer, may revise this Order as additional information becomes available. Upon request by the Dischargers, and for good cause shown, the Executive Officer may defer, delete or extend the date of compliance for any action required of the Dischargers under this Order. The authority of the Los Angeles Water Board, as contained in the Water Code, to order investigation and cleanup, in addition to that described herein, is in no way limited by this Order.

15. Continue any remediation or monitoring activities until such time as the Executive Officer determines that sufficient cleanup has been accomplished and this Order has been rescinded.

16. Reimburse the Los Angeles Water Board for reasonable costs associated with oversight of the investigation and cleanup of the waste at or emanating from the Site. Provide the Los Angeles Water Board with the name or names and contact information for the person to be provided billing statements from the State Water Resources Control Board.

17. As necessary to assure compliance with the California Environmental Quality Act, provide information or prepare draft environmental documentation evaluating the potential environmental impacts associates with implementation of the Remedial Action Plans and submit to the Los Angeles Water Board as directed by the Executive Officer.

18. The Los Angeles Water Board, under the authority given by Water Code section 13267, subdivision (b)(1), requires you to include a perjury statement in all reports submitted under this Order. The perjury statement shall be signed by a senior authorized representative (not by a consultant). The perjury statement shall be in the following format:

   "I, [NAME], certify under penalty of law that this document and all attachments were prepared by me, or under my direction or supervision, in accordance with a system designed to assure that qualified personnel properly gathered and evaluated the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations."

19. The State Water Board adopted regulations requiring the electronic submittals of information over the internet using the State Water Board GeoTracker data

Commercial Property                Cleanup and Abatement Order No. R4-2022-XXXX
SCP No. 0843                                                           Page 14

management system.  You are required not only to submit hard copy reports required in this Order, but also to comply by uploading all reports and correspondence prepared to date on to the GeoTracker data management system.  The text of the regulations can be found at the URL:

https://www.waterboards.ca.gov/water_issues/programs/ust/electronic_submittal/

20. Failure to comply with the terms or conditions of this Order may result in imposition of civil liabilities, imposed either administratively by the Los Angeles Water Board or judicially by the Superior Court in accordance with Water Code sections 13268, 13304, 13308, and/or 13350, and/or referral to the Attorney General of the State of California.

21. None of the obligations imposed by this Order on the Dischargers are intended to constitute a debt, damage claim, penalty or other civil action which should be limited or discharged in a bankruptcy proceeding.  All obligations are imposed pursuant to the police powers of the State of California intended to protect the public health, safety, welfare, and environment.

Ordered by: _____          Date: _____

Renee Purdy

Executive Officer

Commercial Property
SCP No. 0843

Cleanup and Abatement Order No. R4-2022-XXXX
Page 15

## ATTACHMENT A
### (Maps)

**FIGURE 1**……………………………………………………**SITE VICINITY MAP**

**FIGURE 2**……………………………………………………**SITE MAP**



Commercial Property
SCP No. 0843

Cleanup and Abatement Order No. R4-2022-XXXX
Page 16

## FIGURE 1: SITE VICINITY MAP



Commercial Property
SCP No. 0843

Cleanup and Abatement Order No. R4-2022-XXXX
Page 17

**FIGURE 2: SITE MAP**



Commercial Property  Cleanup and Abatement Order No. R4-2022-XXXX
SCP No. 0843                                            Page 18

## ATTACHMENT B: TIME SCHEDULE

| DIRECTIVE | DUE DATE |
|---|---|
| **1. Site Conceptual Model:** | |
| a. Submit a Revised Site Conceptual Model | a. Revised Site Conceptual Model due **90 days** from date of Order adoption. |
| b. Submit a Final Site Conceptual Model | b. Final Site Conceptual Model due within **30 days** of completing the Site Assessment. |
| **2. Site Assessment Work Plan:** | |
| a. Submit a Site Assessment Work Plan for completing delineation of the lateral and vertical extent of wastes in soil vapor. | a. On-Site assessment in progress. |
| b. Complete delineation of lateral and vertical extent of wastes. | b. Complete delineation required within **6 months** of the date of Order adoption. |
| **3. Conduct Remedial Action:** | |
| a. Submit an on- and off-Site Remedial Action Plan (RAP) | a. Within 60 days of adoption of the Order. |
| b. Implement the RAP and submit an RAP Completion Report | b. All remedial actions must be complete and cleanup goals achieved no later than **August 31, 2026**. |
| c. Prepare and submit Remediation Progress Reports for the remediation system implemented. | c. Quarterly beginning **July 15** of the year implementation of the RAP begins. |
| d. Upon completion of implementation of the RAP, submit a Remedial Action Completion Report. | d. Remedial Action Completion Report due within **30 days** of completing cleanup. |
| | |
| **4. Public Participation Plan** | |

Commercial Property
SCP No. 0843

Cleanup and Abatement Order No. R4-2022-XXXX

Page 19

| DIRECTIVE | DUE DATE |
|---|---|
| a. Submit a baseline community assessment | a. Within **60 days** of adoption of the Order. |
| b. Submit an interested persons contact list | b. Within **60 days** of adoption of the Order. |
| c. Submit a draft fact sheet | c. Within **60 days** of adoption of the Order. |
| d. Deliver approved fact sheet to interested persons. | d. According to schedule required by Executive Officer. |
| **5. Groundwater Monitoring**<br><br>The Dischargers shall conduct quarterly groundwater monitoring according to Attachment C (Monitoring and Reporting Program) and the following schedule.<br><br>**Monitoring Period**<br>January - March<br>April - June<br>July - September<br>October - December | Quarterly groundwater monitoring reports are due according to the following schedule after Executive Officer approval of the Groundwater Monitoring Program.<br><br>**Report Due Date**<br>April 15<br>July 15<br>October 15<br>January 15 |

Commercial Property                          Cleanup and Abatement Order No. R4-2022-XXXX
SCP No. 0843                                                                          Page 20

## ATTACHMENT C:

## MONITORING AND REPORTING PROGRAM FOR CLEANUP AND ABATEMENT ORDER NO. R4-2021-XXXX

This Monitoring and Reporting Program is part of Cleanup and Abatement Order No. R4-2021-0130 (CAO). Failure to comply with this program constitutes noncompliance with the CAO and California Water Code, which can result in the imposition of civil monetary liability. All sampling and analyses shall be by USEPA approved methods. The test methods chosen for detection of the constituents of concern shall be subject to review and concurrence by the Regional Water Board.

Laboratory analytical reports to be included in technical reports shall contain a complete list of chemical constituents, which are tested for and reported on by the testing laboratory. In addition, the reports shall include both the method detection limit and the practical quantification limit for the testing methods. All samples shall be analyzed allowable holding time. All quality assurance/quality control (QA/QC) samples must be run on the same dates when samples were actually analyzed. Proper chain of custody procedures must be followed and a copy of the completed chain of custody form shall be submitted with the report. All analyses must be performed by a State Water Resources Control Board Division of Drinking Water accredited laboratory.

The Los Angeles Water Board's *Quality Assurance Project Plan, September 2008*, can be used as a reference and guidance for project activities involving sample collection, handling, analysis, and data reporting. The guidance is available on the Los Angeles Water Board's website at:

http://www.waterboards.ca.gov/rwqcb4/water_issues/programs/remediation/Board_SGV -SFVCleanupProgram_Sept2008_QAPP.pdf

## GROUNDWATER MONITORING

The Dischargers shall collect groundwater samples from groundwater monitoring wells installed for the purpose of site investigation and monitoring. Any monitoring wells installed in the future shall be added to the groundwater monitoring program and sampled quarterly. The groundwater surface elevation (in feet above mean sea level [MSL]) in all monitoring wells shall be measured and used to determine the gradient and direction of groundwater flow.

The following shall constitute the monitoring program for groundwater:

Commercial Property
SCP No. 0843

Cleanup and Abatement Order No. R4-2022-XXXX
Page 21

| Constituent | EPA Method |
|---|---|
| Volatile Organic Compounds (full scan) | EPA 8260B |
| Temperature | Field[*] |
| pH | Field[*] |
| Electrical Conductivity | Field[*] |
| Dissolved oxygen | Field[*] |
| Oxidation-Reduction Potential (ORP) | Field[*] |
| Turbidity | Field[*] |

---

[*] Field – To be measured in the field.

## REMEDIATION SYSTEMS

Reports on remediation systems shall contain the following information regarding the site remediation systems:

1. Maps showing the location of all remediation wells and groundwater monitoring wells, if applicable;

2. The status of each remediation system including hours operating and any down time for maintenance and/or repair;

3. All air sparge well operating records including status of each well and volume and pressure of air being injected;

4. All soil vapor extraction well records, including the status of each well and PID readings of other acceptable methods of determining relative volatile concentrations taken at a minimum quarterly. Readings of volatile concentrations drawn from SVE wells shall be taken at a frequency that allows the efficient operation and evaluation of the SVE system. A system operation log to document the system's total hours of operation and parameters, including the system's flow rate, temperature, and applied vacuums at the SVE treatment system and the system manifold

5. All In-Situ well operating records including the injection volume and pressure for the amendment being introduced. Prior to implementation of the injection, all in-situ remediation shall enroll under appropriate Waste Discharge Requirements from this Los Angeles Water Board;

6. The report shall include documentation and manifest forms of waste generated during operation of the remedial system;

7. The report shall include copies of all required valid permits to construct and operate the remedial systems.

Commercial Property                          Cleanup and Abatement Order No. R4-2022-XXXX
SCP No. 0843                                                                   Page 22

8. The report shall include tables summarizing the operating and performance parameters for the remediation systems; and

9. System inspection sheets shall document field activities conducted during each Site visit and shall be included in quarterly monitoring reports.

## MONITORING FREQUENCIES

Specifications in this monitoring program are subject to periodic revisions. Monitoring requirements may be modified or revised by the Executive Officer based on review of monitoring data submitted pursuant to this Order. Monitoring frequencies may be adjusted, or parameters and locations removed or added by the Executive Officer if Site conditions indicate that the changes are necessary.

## REPORTING REQUIREMENTS

1. The Dischargers shall report all monitoring data and information as specified herein. Reports that do not comply with the required format will be REJECTED and the Dischargers shall be deemed to be in noncompliance with the Monitoring and Reporting Program.

2. Quarterly groundwater monitoring reports shall be submitted to the Regional Water Board according to the schedule below.

| Monitoring Period | Report Due |
|---|---|
| January – March | April 15 |
| April – June | July 15 |
| July – September | October 15 |
| October – December | January 15 |

Groundwater monitoring reports shall include a contour map showing groundwater elevations at the Site and the groundwater flow direction. The quarterly groundwater monitoring reports shall include tables summarizing the historical depth-to-water, groundwater elevations, and historical analytical results for each monitoring well. The results of any monitoring done more frequently that required at the locations specified in the Monitoring and Reporting Program shall be reported to the Regional Water Board. Field monitoring well sampling sheets shall be completed for each monitoring well sampled and included in the report.

Quarterly remediation progress reports shall be submitted to the Regional Water Board according to the schedule below.

Commercial Property
SCP No. 0843

Cleanup and Abatement Order No. R4-2022-XXXX

Page 23

| Monitoring Period | Report Due |
|---|---|
| January – March | April 15 |
| April – June | July 15 |
| July – September | October 15 |
| October – December | January 15 |

3. Remediation progress reports shall include an estimate of the cumulative mass of contaminant removed from the subsurface, system operating time, the effectiveness of the remediation system, any field notes pertaining to the operation and maintenance of the system, and, if applicable, the reasons for and duration of all interruptions in the operation of any remediation system and actions planned or taken to correct and prevent interruptions.

4. In reporting the monitoring data, the Dischargers shall arrange the data in tabular form so that the date, the constituents, and the concentrations are readily discernible. The data shall be summarized to demonstrate compliance with the requirements. All data shall be submitted in electronic form in a form acceptable to the Los Angeles Water Board.