1  PATRICK W. DENNIS, SBN 106796
     pdennis@gibsondunn.com
2  CHRISTOPHER CHORBA, SBN 216692
     cchorba@gibsondunn.com
3  ABBEY HUDSON, SBN 266885
     ahudson@gibsondunn.com
4  DEENA KLABER, SBN 285237
     dklaber@gibsondunn.com
5  JOSEPH D. EDMONDS, SBN 297984
     jedmonds@gibsondunn.com
6  GIBSON, DUNN & CRUTCHER LLP
   333 South Grand Avenue
7  Los Angeles, CA  90071-3197
   Telephone: 213.229.7000 / Facsimile:  213.229.7520
8
   JOHN CERMAK, SBN 146799
9    jcermak@cermaklegal.com
   HANNAH BLOINK, SBN 307442
10    hbloink@cermaklegal.com
   CERMAK & INGLIN, LLP
11  12121 Wilshire Blvd, Ste 322
   Los Angeles, CA 90025-1166
12  Telephone: 424.465.1531 / Facsimile:  424.371.5032

13  *Attorneys for Defendants*

14  [Additional Counsel Listed on Next Page]

15              UNITED STATES DISTRICT COURT

16            CENTRAL DISTRICT OF CALIFORNIA

17  JED and ALISA BEHAR, individually and on          CASE NO. 2:21-cv-03946-HDV-SK
    behalf of all others similarly situated,
18
                       Plaintiffs,               DISTRICT JUDGE HERNÁN D. VERA
19
           v.                                    **JOINT RULE 26(f) REPORT**
20
    NORTHROP GRUMMAN CORPORATION
21  and NORTHROP GRUMMAN SYSTEMS                  Scheduling Conf.:  October 15, 2024
    CORPORATION,                                  Time:              10:00 a.m.
22                                                Courtroom:         5B
                       Defendants.
23

24

25

26

27

28

1    MICHAEL AKSELRUD (SBN 285033)
2        michael.akselrud@lanierlawfirm.com
     THE LANIER LAW FIRM, P.C.
3    2829 Townsgate Rd., Ste. 100
     Westlake Village, California 91361
4    Telephone: (310) 277-5100
     Facsimile:  (310) 277-5103
5
6    W. MARK LANIER (pro hac vice)
         WML@lanierlawfirm.com
7    ALEX J. BROWN (pro hac vice)
         Alex.Brown@lanierlawfirm.com
8    Ryan D. Ellis (pro hac vice)
         Ryan.Ellis@lanierlawfirm.com
9    THE LANIER LAW FIRM, P.C.
10   10940 W. Sam Houston Pkwy N
     Houston, Texas 77064
11   Telephone: (713) 659-5200
     Facsimile: (713) 659-2204
12
13   CHRISTOPHER T. NIDEL (pro hac vice)
         chris@nidellaw.com
14   JONATHAN NACE (pro hac vice)
         jon@nidellaw.com
15   WILLIAM W. COWLES (pro hac vice)
         will@nidellaw.com
16   NIDEL & NACE, P.L.L.C.
17   One Church Street, Suite 802
     Rockville, MD 20850
18   Telephone: (202) 780-5153
19
     DAVID P. PAGE (pro hac vice)
20       dpage@eenradvocates.com
     ENVIRONMENTAL ENERGY & NATURAL
21   RESOURCES ADVOCATES, PLLC
     1921 S Boston Ave.
22   Tulsa, Oklahoma 74119
     Telephone: (918) 764-8984
23
24   GIDEON KRACOV (Cal. SBA # 179815)
         gk@gideonlaw.net
25   LAW OFFICE OF GIDEON KRACOV
     801 S. Grand Ave., 11th Floor
26   Los Angeles, CA 90017
     Telephone: (213) 629-2071
27
28   *Attorneys for Plaintiffs*

## I.    Statement of the Case

<u>Plaintiffs' Position</u>

On May 10, 2021, Jed and Alisa Behar filed this suit on behalf of themselves and a class of homeowners in Canoga Park, Los Angeles. This case relates to alleged damages Plaintiffs and other similarly situated homeowners in Canoga Park claim to have suffered because of contamination emanating from Defendants' facility located at 8020 Deering Avenue, Canoga Park, California (the "Site").

Plaintiffs allege that various volatile organic compounds ("VOCs") were used by Defendants in the circuit board manufacturing process at the Site, and that some of these VOCs leached into the groundwater and migrated to the soil beneath their property. Second Amended Complaint ("SAC") ¶¶ 2, 15, 21–22, 24. Plaintiffs claim that their property was damaged due to groundwater contamination from the Defendants' operations at the Site and failure to remediate that contamination. Plaintiffs allege common law claims of negligence, nuisance, and trespass resulting from the alleged mismanagement and disposal of these VOCs at the Site.

On July 1, 2024, this Court granted Plaintiffs' motion for class certification and certified liability and damages classes under Rule 23(b)(3). ECF Doc. 175. On September 4, 2024, the Ninth Circuit denied Defendants' Rule 23(f) petition seeking interlocutory review of this Court's class certification decision.

Defendants' legal predecessors, Litton Industries and Litton Systems, used VOCs (in particular, the chlorinated solvents TCE and PCE) to manufacture circuit boards at the Site. Those solvents were released into the soil and groundwater by disposing of contaminated wastewater from Site operations into the sanitary sewer, and from improper handling, treatment, and discharges on-Site. Due to groundwater flow to the south and east for decades, thousands of homes and miles of the groundwater in the Canoga Park residential area have been contaminated. The Site is centered in a residential area where people live, work, and play, and where the water table is extremely shallow—ranging from 13 to 35 feet below grade.

1    Defendants have taken primary responsibility for this contamination which poses a serious risk

2    of vapor intrusion. The Regional Water Quality Control Board found that Defendants are responsible

3    for the contamination and the response costs.

4    Defendants have kept nearby homeowners in the dark about the contamination and its impact

5    on their properties. Defendants' so-called community outreach plan failed because it did not apprise

6    the homeowners in the area of the factual presence of the contamination plume, that their property was

7    contaminated, that there was any risk associated with the contamination, or who was responsible for

8    the contamination.

9    Defendants did not begin testing the indoor air of any nearby residences until 2017. When they

10    finally did begin testing, the testing performed was woefully inadequate and technically flawed.

11    Defendants failed to follow testing guidance offered by CalEPA and USEPA and the protocols put in

12    place were insufficient to ensure the testing was done to capture the true threat of vapor intrusion.

13    Due to contamination across the plume area—which is delineated as having groundwater TCE

14    contamination above state screening limits for vapor intrusion from groundwater—Plaintiffs and the

15    class members suffered common damage to their properties.

16    Defendants' Position

17    Plaintiffs' claims are based on the mere presence of chemicals in groundwater deep beneath

18    their home, which they assert resulted from Litton Systems' operations more than 50 years ago.  There

19    is no evidence that Litton Systems' operations at the Site caused a release of chemicals.  After the

20    Litton entities sold the Site in 1974, a series of unrelated entities operated at the Site, some using the

21    same chemicals at issue here.  Northrop Grumman acquired Litton Industries, Inc. in 2001, and soon

22    after joined the ongoing effort to investigate the contamination.  Northrop Grumman has voluntarily

23    investigated and remediated the Site under the supervision of the Los Angeles Regional Water Quality

24    Control Board (Regional Board) for almost two decades, and reports detailing the contamination have

25    been publicly available online that anyone can access for years.  Contrary to Plaintiffs' claims, the

26    Regional Board has never issued an order finding Northrop Grumman responsible for the

27    contamination or remediation costs.

28

In 2007, under the Regional Board's direction, Northrop Grumman began assessing the risk of off-site vapor intrusion, even though detected concentrations were below regulatory screening levels. Another off-site vapor intrusion study began in 2014. This study involved extensive community outreach, and at the Regional Board's direction more than 13,000 fact sheets disclosing the contamination and cleanup were mailed from 2015 to 2017 to owners and occupants of properties throughout the Class Area and to various elected officials. In 2017, the Regional Board selected more than 350 homes located over areas of the highest concentration of TCE in the groundwater to offer indoor air testing. None of the homes tested were found to have indoor air concentrations that exceeded the "action levels" for TCE—a regulatory level that typically triggers some type of response. And while several homes exceeded screening levels—a level that equates to a one-in-one-million risk of adverse health effects—the Regional Board agreed that indoor sources of TCE, unrelated to the groundwater, likely contributed to those exceedances. After reviewing the data, the Regional Board approved Northrop Grumman's long-term plan to monitor contamination in the area. In January 2024, the Regional Board approved distributing over 5,000 fact sheets on Regional Board letterhead to nearby residents, repeating its conclusions regarding the residential vapor intrusion investigation and enumerating next steps in the remediation.

In May 2021, Plaintiffs filed this action alleging negligence, private nuisance, and trespass, seeking damages for mitigation costs, property damage, diminished property value, and punitive damages, based on the theory that they were exposed to chemical vapors in their homes from vapor intrusion. Plaintiffs also alleged claims for both fear of cancer and the costs of medical monitoring as a result of the claimed exposures.

In May 2022, Northrop Grumman had Plaintiffs' residence tested using the Regional Board approved procedures. Indoor TCE concentrations in the home were lower than outdoor (i.e., ambient) air TCE concentrations, and several times lower than regulatory screening levels. No TCE was detected in soil vapors beneath the home, confirming that background TCE levels in the home did not result from vapor intrusion. Indoor PCE concentrations in the home were also below screening levels. The testing consultant concluded that "vapor intrusion does not appear to be an exposure pathway of concern" for Plaintiffs. Plaintiffs' expert conceded there is no evidence of vapor intrusion at the home,

and Plaintiffs have not conducted any testing of their own to show vapor intrusion has actually occurred anywhere in the class.  Since filing their case, Plaintiffs have abandoned much of their original theory of the case, dropping their claims for medical monitoring, fear of cancer, and loss of use and enjoyment, and abandoning their theory of liability based on vapor intrusion.

In December 2023, Plaintiffs moved for class certification, introducing a new "Mitigation Class," a new class boundary, a new class definition that excluded "anyone who purchased a home with disclosure of contamination," and a new theory of liability based not on *actual* vapor intrusion— which Plaintiffs admittedly cannot prove—but on the mere presence of contamination in the groundwater.  Plaintiffs claim diminished property value for the class, despite their expert's theory that values will only decrease at some point in the future, roughly one year after class notice is sent. Plaintiffs also seek damages to "immediately install mitigation systems" at each home in the Class Area, despite the lack of any evidence that vapor intrusion is occurring in the Class Area.  In July 2024, the Court certified a Property Damage Class and a Mitigation Class, each comprised of all persons who own a single-family house or townhome within the Class Area at the time of certification, but excluding anyone who purchased a home with disclosure of contamination.

## II.    Subject Matter Jurisdiction

Plaintiffs claim jurisdiction under 28 U.S.C. §§ 1332, 1367 (Diversity of Citizenship and Supplemental Jurisdiction). Defendants do not contest subject matter jurisdiction, although they reserve the right to argue that Plaintiffs and/or putative class members lack Article III standing.

## III.    Legal Issues

### Plaintiffs' Statement

This case is predicated on common law claims of negligence, nuisance, and trespass. Class treatment under Rule 23 is proper because Plaintiffs and the class members suffered common damage to their properties. Questions of whether their property is impacted, its value has suffered, it requires mitigation, and Defendants' liability are all common to the class members.

Now that the class has been certified, Plaintiffs foresee that the remaining legal issues are (i) filing a motion for service of approval of class notice and serving the class members, (ii) Plaintiffs'

potential motion for summary judgment on the issue that Defendants' fact sheet mailers did not trigger any class members statute of limitations; (iii) motions *in limine*, and (iv) whether to bifurcate the trial.

Defendants have indicated that they want to re-open discovery to conduct discovery on individual class members as well as supplement expert opinions and have suggested a re-do of their six *Daubert* motions before trial. Plaintiffs oppose these. Discovery was never bifurcated and the issues Defendants seek to discover could, and should, have been pursued long ago. Further, recognizing that the scheduling order required that expert reports be submitted simultaneously for both for class certification and merits determination purposes, Defendants already filed hundreds of pages of what they called "comprehensive" *Daubert* briefing. *See, e.g.,* Doc. 133 at 3 n.1. Since the parties have already filed comprehensive *Daubert* briefs both on class and merits issues, in the absence of any material supplementation to an expert report, the Court can make final pre-trial *Daubert* rulings without any further briefing or additional submissions.

Second, as the Court recently confirmed, discovery is closed. Doc. 177 at 3. Even if Defendants have some non-speculative basis to assert affirmative defenses unique to specific class members, the Ninth Circuit has made clear that such issues only become relevant *after* a liability verdict. *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1131–32 (9th Cir. 2017) ("Rule 23 specifically contemplates the need for such individualized claim determinations *after a finding of liability*.") (emphasis added). Accordingly, Defendants have no basis to conduct class discovery that will impose an additional year-long delay and numerous inefficiencies that were addressed by this Court's finding that Rule 23 was met. Defendants' hyper-speculation that some class member *may have* independently learned about contamination on their property is not sufficient to upend the efficiency of a certified class deemed to have met Rule 23. Plaintiffs' opposition with a detailed response was filed on September 27, 2024. Docs. 181-82.

Defendants' proposed motion to stay this case pending a decision in *Navarro v. Exxon Mobil Corp.*, No. 32-3274 (9th Cir., Nov. 2, 2023), is unsupported and lacks merit. The Ninth Circuit's rejection of Defendants' Rule 23(f) petition closes the door on interlocutory appeals and, regardless, *Navarro* is a factually distinct case with no significant informative value for the present case.

Finally, in response to Defendants' below statement, neither California law nor Dr. Boyle's opinion on property damages requires waiting "a year or two" to prove property damages at trial because the properties have already been damaged by the contaminants present.

Defendants' Statement

Plaintiffs have not yet met and conferred with Defendants regarding their anticipated motion to approve class notification, so Defendants have not formulated a position on plaintiffs' anticipated motion.

Defendants have filed a motion to amend the scheduling order and reopen discovery on a limited basis so that Defendants may take limited additional fact discovery to determine whether absent class members "purchased a home with disclosure of contamination at their property from the 8020 Deering Avenue Site," Dkt. 115 at 1, in order to determine whether they meet the criteria of Plaintiffs' new class definition. Dkt. 180. Defendants propose that the deadline for completion of that discovery be set for twelve months following mailing of class notice, in approximately December 2025, depending on when notice is mailed.

Pursuant to their obligation under Rule 26(e), Defendants have also sought leave to promptly supplement the report of their hydrogeology and vapor intrusion experts to incorporate results from renewed groundwater and soil vapor sampling completed in January 2024, which Defendants have produced to Plaintiffs, and to address Plaintiffs' new theory of liability that the mere presence of TCE in groundwater, rather than vapor intrusion, injures class properties. Dkt. 180. In their opposition to Defendants' motion, Plaintiffs conceded that "[i]f Defendants want to supplement expert reports, they can do so under the normal course and requirements." Dkt. 181 at 16. Defendants will do so.

Prior to the case management conference, Defendants also intend to file a motion to stay this action pending a decision in *Navarro v. Exxon Mobil Corp.*, No. 32-3274 (9th Cir., Nov. 2, 2023), as the issues presented to the Ninth Circuit in that case substantially overlap with class and merits issues presented here.[1] In *Navarro*, the Ninth Circuit will determine whether nuisance and trespass claims

---

[1] Defendants note that at the time they first exchanged positions with Plaintiffs, they were still investigating the need for a stay, and had not met and conferred with Plaintiffs to obtain Plaintiffs' position. On September 30, 2024, after meeting and conferring with Plaintiffs, Defendants added a

*(Cont'd on next page)*

are viable under California law when based on underground contamination creating a risk of vapor intrusion, and whether exceedance of a regulatory screening level can support a nuisance claim—issues that are key to the viability of Plaintiffs' claims. A stay may issue upon consideration of "(1) the possible damage which may result from the granting of a stay, (2) the hardship or inequity which a party may suffer if the case is allowed to go forward, and (3) the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Peck v. Cnty. of Orange*, 528 F. Supp. 3d 1100, 1106 (C.D. Cal. 2021) (*quoting Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005)). All of these criteria are satisfied here, most critically because both parties will suffer hardships/inequities absent a stay. Absent a stay, the parties and this Court may devote substantial resources to claims that *Navarro* ultimately determines are not viable. And if the class is notified of claims that *Navarro* ultimately holds are erroneous, under Plaintiffs' expert's theory, it will needlessly cause hundreds of millions of dollars of value diminution in the class area. Dkt. 132-6 at 1638:17–1639:9. The class was certified only under rule 23(b)(3) as to "monetary relief," Dkt. 175 at 6, and delay in obtaining money damages is generally non-persuasive in opposing a stay. *I.K. v. Sylvan Union School Dist.*, 681 F. Supp. 2d 1179, 1191 (E.D. Cal. 2010). If a stay is granted, Defendants would request that the entire case calendar be extended (at the same intervals) and go into effect 30 days after the Ninth Circuit ruling in the *Navarro* matter.

Following Defendants' proposed additional discovery, Defendants intend to move for summary judgment as to all of Plaintiffs' claims based on a complete factual record. Defendants propose that the deadline for serving opening briefs for summary judgment motions be set for 60 days following the fact discovery cut-off, in approximately March 2026.

Defendants will likely also file or renew their motions to exclude various expert opinions prior to trial. Additional data may support or refute certain experts' opinions in this case. Defendants should be permitted to file additional or supplemental motions to exclude experts on grounds not previously addressed at the class certification stage, as the Court's class certification order is clear that its *Daubert*

---

more robust summary of their arguments to this joint report, which unfortunately provided little time for Plaintiffs to provide a substantive response in this joint report. Plaintiffs stated during the meet and confer call that they intend to oppose the request for a stay, and dispute Defendants' contentions outlined above.

1    determinations were "not a final determination . . . with respect to future proceedings in this action"

2    but were limited to the class certification context.  Dkt. 175 at 12.  Defendants propose the deadline for

3    such motions be set concurrent with the deadline for motions in limine—i.e., 28 days before the pre-

4    trial conference, in approximately June 2026.

5         Due to the necessary additional fact discovery, supplemental expert reports, summary judgment

6    motions, and motions to exclude expert reports, Defendants anticipate a trial date in approximately

7    August 2026.

8         **IV.    Parties, Evidence, etc.**

9              Plaintiffs' Statement

10        Parties:  Jed and Alisa Behar are the named Plaintiffs and class representatives. The certified

11   class mitigation and property damages classes include "all persons who own a single family home or

12   townhome within the PCA at the time of Class Certification," while excluding employees of

13   Defendants as well as anyone who purchased a home with disclosure of contamination at their property

14   from the 8020 Deering Avenue Site. Doc. 175 at 16.

15        Defendants are Northrop Grumman Corporation and Northrop Grumman Corporation who

16   merged with the original owner/operator of the Site - Litton Industries, Inc., and are responsible for the

17   contamination and negligent clean-up.

18        Percipient Witnesses: Plaintiffs plan to call the two class representatives, Jed and Alisa Behar.

19   Plaintiffs also expect to call persons employed by or designated to testify by the Defendants like Rule

20   30(b)(6) witnesses Kevin Miskin, Abraham Mercado, and Kassidy Jones; Joseph Kwan (Corporate

21   Director for Environmental Remediation); and Shantal Der Boghosian (Environmental Remediation

22   Project Manager).

23        Plaintiffs will also call the consulting firms who advised Defendants as to the scope and extent

24   of Defendants' contamination, including but not limited to Helen Dawson, Ph.D., an environmental

25   consultant from Geosyntec, Matthew Thomas, from Geosyntec, and Jeff Gwinn and Matthew Nelson

26   from Orion Environmental, Inc. who performed the indoor air testing for Defendants.

27

28

1    Plaintiffs may also call representatives of the RWQCB or the California Office of

2    Environmental Health Hazard Assessment ("OEHHA"), including but not limited to Akzayakatl

3    Mexikatzin, the Water Board's Project Manager for the Site.

4    Plaintiffs also anticipate calling experts in the areas of chemical fate and transport, chemical

5    hazards, the industry state-of-knowledge concerning the chemicals Defendants, and methods of hazard

6    abatement. These include Dr. Laton, a hydrogeologist who defined the extent of the plume; Dr. Tonkin,

7    a hydrogeologist who modeled contaminant migration; Dr. Kram, a vapor intrusion expert who

8    assessed Defendants' testing and mitigation; Dr. Gorman, an industrial historian and engineer who

9    assessed the likely source of contaminants; Dr. Ryer-Powder, a toxicologist who summarized the

10   toxicology of plume contaminants; and, Dr. Boyle a real estate economist who addressed property

11   damage caused by contamination. Plaintiffs reserve their rights to call other witnesses as necessary.

12   Key Documents on Main issue of Case:  The evidence in this case will be largely through expert

13   testimony.  There are, however, a number of key documents that relate to the adequacy of Defendants'

14   testing and investigation, including draft and final versions of the reports summarizing the testing and

15   providing the data gathered as part of those investigations. In addition, documents related to the

16   removal of the clarifier (the "Removal Report"), the testing of soil and groundwater on and around

17   8020 Deering, and the testing of groundwater and soil vapor throughout the class area will provide the

18   fundamental evidence of the extent of contamination, the threat to the class area and the source of the

19   contamination.

20   Defendants' Statement

21   The defendants are Northrop Grumman Corporation and Northrop Grumman Systems

22   Corporation, as the successor-in-interest to Litton Industries, Inc.  Northrop Grumman Systems

23   Corporation is a wholly-owned subsidiary of Northrop Grumman Corporation.  Defendant Northrop

24   Grumman Corporation has one additional subsidiary: Northrop Grumman Overseas Holdings, Inc.

25   Defendant Northrop Grumman Systems Corporation's subsidiary is Northrop Grumman Guidance and

26   Electronics Company (formally known as Litton Systems, Inc.).  Northrop Grumman Guidance and

27   Electronics Company is not a party to this litigation.

28

11

Northrop Grumman Corporation is not a proper party to this action.  Northrop Grumman Corporation is a pure shareholder for Northrop Grumman Systems Corporation and was never either an owner or operator of the Site, nor did it succeed to the liabilities of any entity that was an owner or operator of the Site.  Defendants have offered to stipulate to substitute Northrop Grumman Guidance and Electronics Company, Inc. for Northrop Grumman Corporation as a defendant, but Plaintiffs have refused.  Defendants anticipate raising this legal issue through motion practice.

Given the passage of time since the Litton Entities' ownership of the Site, Defendants' investigation remains ongoing.  Without prejudice to their right to present additional witnesses, Defendants anticipate that key percipient witnesses will include: the named Plaintiffs; class members; a Northrop Grumman representative; individuals identified in the parties' Rule 26 Initial Disclosures and in their discovery responses; and individuals identified in Plaintiffs' statement above.  Defendants will offer expert testimony, including in response to Plaintiffs' proffered experts.  Key documents will include records from the Regional Board regarding off-site vapor intrusion studies and indoor air testing results; records reflecting Defendants' community outreach efforts in the Class Area; documents relating to other owners and operators of the Site; data from multiple sampling events in the Class Area; sales data from the Class Area; and expert reports.

## V.    Damages

Plaintiffs' Statement

Plaintiffs seek a judgment in favor of the entire class for loss of property value, cost of mitigation, stigma, costs and fees of suit, attorneys' fees, prejudgment and post-judgment interest, and punitive damages.

The realistic range of provable damages is approximated by the two class damage models for economic property damage ($236,000,000) and mitigation property damage ($277,800,000).

Defendants' Statement

Defendants deny that they are liable for any damages claimed by Plaintiffs in this action or that Plaintiffs are entitled to any equitable relief.  Defendants dispute that Plaintiffs are entitled to mitigation damages for their permanent trespass and nuisance claims or that Plaintiffs may seek double recovery in the form of economic property damage and mitigation property damage for the same alleged harm.

Defendants also dispute that stigma damages are available as a matter of law.  Defendants also dispute that Plaintiffs are entitled to punitive damages.

### VI.    Insurance

Plaintiffs' Statement

N/A

Defendants' Statement

One insurance carrier indicated a willingness to participate in the defense of this case, subject to certain reservations and the right to recover any defense costs paid.

### VII.    Motions

(a) **Procedural Motions:**

Pursuant to the October 28, 2021, Scheduling and Case Management Order, Dkt. 54, the deadline to file any stipulation or motion to amend as to any claims, defenses, and/or parties passed on January 28, 2022.  The parties do not anticipate any motions seeking to transfer venue or challenge the court's jurisdiction.

Plaintiffs' Statement:  Plaintiffs do not currently anticipate any procedural motions other than a motion for approval of class notice.

Defendants' Statement:  Defendants intend to file a motion to stay this action pending a decision in *Navarro v. Exxon Mobil Corp.*, No. 32-3274 (9th Cir., Nov. 2, 2023) as the issues presented to the Ninth Circuit in that case substantially overlap with class and merits issues presented here, and allowing this case to move forward now would substantially harm the parties (under Plaintiffs' theory) and would be inefficient, as discussed above in section III.

(b) **Dispositive Motions**:

Plaintiffs' Statement:  Plaintiffs may seek summary judgment on the issue that Defendants' fact sheet mailers did not trigger any class members' statute of limitations.

Defendants' Statement:  Defendants intend to file a motion for summary judgment after any and all discovery in this case is complete.  The anticipated summary judgement motion would be brought on several grounds, including (1) Plaintiffs have not suffered a non-speculative present injury as required for their negligence claim, (2) Plaintiffs cannot prove that Defendants' predecessor

breached the standard of care as required for their negligence claim, (3) Plaintiffs have not suffered a physical invasion as required for their trespass claim, and do not own or possess the allegedly contaminated groundwater beneath their home, (4) Plaintiffs waived any "experiential" lost use and enjoyment in seeking class certification, Dkt. 175 at 24, and cannot prove an essential element of their nuisance claim, (5) Plaintiffs cannot recover mitigation damages for their permanent nuisance or trespass claims, (6) the statute of limitations bars the Behars' claims, and (7) there is no evidence of oppression, fraud, or malice by Defendants' officer, director, or managing agent as required to support their request for punitive damages.  There is currently no deadline set for summary judgment motions. The Court's previous order amending the scheduling order, Dkt. 86, anticipated setting dates and deadlines for summary judgment after the resolution of the motion for class certification.  Defendants request that the deadline to file opening briefs for the motion for summary judgment be set for 60 days after the requested fact discovery cut-off, in approximately March 2026.

Plaintiffs testified that they never received any of the fact sheets mailed to the Class Area. Accordingly, it is unclear how they will demonstrate standing to adjudicate the statute of limitations defense on behalf of class members who did receive those mailings.

(c) **Class Certification Motion**:

On July 1, 2024, the Court certified two classes:  (1) a Mitigation Class, and (2) a Property Damage Class, each comprised of "[a]ll persons who own a single family or townhome within the [Class Area] at the time of Class Certification," excluding "employees of Defendants as well as anyone who purchased a home with disclosure of contamination at their property from the 8020 Deering Avenue Site."  Dkt. 175.

Plaintiffs' Statement:  In its Class Certification Order (Doc. 175), the Court certified two classes in this case. Plaintiffs do not anticipate any further class certification motions other than approval of class notice.

Defendants' Statement:  Plaintiffs have not met and conferred with Defendants regarding their anticipated motion to approve class notification, and Defendants have not formulated a position on it. Defendants respectfully disagree that it is proper for this case to proceed as a class action, for the reasons set forth in their opposition to the motion for class certification.

## VIII.  Discovery

### (a) Status of Discovery:

Under the Court's previous schedule, fact discovery closed on July 31, 2023, and expert discovery closed on December 1, 2023.  Dkt. 101.

Plaintiffs' Statement:  All fact and expert discovery is complete and that discovery is closed.

Defendants' Statement:  In their motion for class certification—after fact discovery had already closed—Plaintiffs introduced entirely new class definitions that excluded "anyone who purchased a home with disclosure of contamination at their property from the 8020 Deering Avenue Site."  Dkt. 116 at 22.  Yet Plaintiffs have not developed any evidence as to which class members purchased their homes with disclosure of the contamination, nor have Defendants had any opportunity to do so.  Accordingly, Defendants have filed a motion seeking to reopen fact discovery on a limited basis to investigate when absent class members first learned of the alleged groundwater contamination so that the parties may determine which property owners are actually members of the classes.  Dkt. 180.  Defendants also seek approval to promptly serve supplemental expert reports based on information that became available following the close of expert discovery.  *Id.*

### (b) Discovery Plan:

Plaintiffs' Statement:  Plaintiffs do not believe a discovery plan is necessary since fact and expert discovery are closed, and that discovery of absent class members is not justified or necessary.

Defendants' Statement:  As discussed in Defendants' motion for further discovery, Defendants request that discovery be reopened so that Defendants may take limited additional fact discovery to determine whether absent class members "purchased a home with disclosure of contamination at their property from the 8020 Deering Avenue Site," Dkt. 115 at 1, including:  (1) sending non-mandatory questionnaires to each household in the certified classes; (2) serving requests for production on 100 class members, not to exceed four requests per class member; and (3) taking depositions of no more than 50 class members, not to exceed two hours each.  Dkt. 180.  Defendants also request leave to conduct informal outreach to former owners of homes and townhomes in the Class Area and, if necessary, to serve deposition subpoenas and document requests on those former owners, to determine when current homeowners in the Class Area learned of the alleged groundwater contamination and

whether those homeowners "purchased a home with disclosure of contamination at their property from the 8020 Deering Avenue Site," Dkt. 175.  Dkt. 180.

### (c) Discovery Cut-off:

Fact discovery closed on July 31, 2023.  Dkt. 101.

Plaintiffs' Statement:  Plaintiffs believe that there is no basis for re-opening discovery which has been closed.

Defendants' Statement:  Should the Court grant Defendants' motion for further discovery, Defendants propose that the deadline for completing such discovery be set for twelve months after class notice is mailed, in approximately December 2025.

### (d) Expert Discovery:

Expert discovery closed on December 1, 2023.  Dkt. 101.

Plaintiffs' Statement:  Plaintiffs' position is that expert discovery is complete and that there is no basis for re-opening expert discovery to supplement expert reports or to amend or re-file new *Daubert* motions. As Plaintiffs' opposition makes clear, Defendants did not "advance[e] a completely new theory of liability, had always sought mitigation, and did not change the Class Area boundary in any material way. Docs. 181-82. Defendants' own filings and pleadings reveal that they have always understood Plaintiffs' theory of liability for the presence of contamination on Plaintiffs' property and had a proper ability to review and respond to Plaintiffs' experts. Even when discovery is still open, supplementing is not a chance to re-do or re-engineer their expert strategy. Given Defendants' intentions, the Court should consider requiring Defendants to seek leave of Court to justify both re-opening discovery and supplementing consistent with the rules regarding supplementation which is not designed for new opinions or the introduction of new strategies before Defendants are permitted to serve any "supplemental" expert opinions to reduce the risk of improper and unnecessary supplementing. The same should be true of any *Daubert* motions to prevent Defendants from weaponizing the expert discovery process, delaying trial and creating additional costs for Plaintiffs at the same time denying Plaintiffs and the class members relief while Defendants simply take a second bite at the same apple.

1    <u>Defendants' Statement</u>:  For the first time in their motion for class certification, Plaintiffs
2    introduced a "Mitigation Class," Dkt. 116 at 22, adopted a new Class Area boundary, *id.* at 16, and
3    advanced a completely new theory of liability:  that Plaintiffs and the putative class were harmed not
4    by *actual* vapor intrusion, but instead because their "homes are over the TCE plume" with "toxic TCE
5    contamination above threshold screening limits."  Dkt. 136 at 13.  Given Plaintiffs' statement in their
6    opposition to Defendant's discovery motion that, "[i]f Defendants want to supplement expert reports,
7    they can do so under the normal course and requirements," Dkt. 181 at 16, Northrop Grumman intends
8    to promptly supplement its expert reports pursuant to its obligation under Rule 26 to account for new
9    data relevant to factual questions about contamination and potential for exposure in the Class Area, and
10   to address Plaintiffs' new theory of liability as it relates to their newly defined mitigation class.

11          Before the close of discovery, Defendants' hydrogeology expert, Murray Einarson, opined that
12   a clean water lens covering part of the Class Area completely prevents vapors from rising to the surface
13   and into a home—cutting off both actual vapor intrusion and the threat of *potential* vapor intrusion—
14   based on results from the then-most recent sampling in 2015 and 2016.  Dkt. 132-2 at 45–46, 52.
15   Plaintiffs' hydrogeology expert, Dr. Richard Laton, opined that the data supporting the existence and
16   scope of a clean water lens in the Class Area was too old.  *See* Dkt. 118-4 at 15, 21.  Northrop Grumman
17   performed renewed groundwater and soil vapor sampling in the Class Area that concluded in January
18   2024 and disclosed the results to Plaintiffs prior to the hearing on class certification.  Because the
19   presence of a clean water lens would preclude any potential for vapor intrusion in a class member's
20   home, and thus is relevant to determine liability, Defendants intend to supplement Mr. Einarson's
21   report pursuant to their "duty to supplement" under Rule 26 to disclose "[a]ny additions or changes" to
22   the information in their experts' reports.  Fed. R. Civ. P. 26(e)(2).

23          In addition, Northrop Grumman's vapor intrusion expert, Robert Ettinger, offered a rebuttal
24   opinion, Dkt. 132-3 at 269–71, to Plaintiffs' experts' opinions that the TCE groundwater plume at a
25   concentration of 1.2 µg/L resulted in the "potential for vapor intrusion" in properties over that plume
26   in "concentrations greater than the indoor air screening level," Dkt. 118-4 at 12, 28, thereby
27   necessitating mitigation "to address the risk of traditional vapor intrusion," Dkt. 118-7 at 15, 61.
28   However, in their class certification motion, Plaintiffs defined a new class (for mitigation) and asserted

1  a new theory of liability that "the presence of TCE [in groundwater] uniformly above 1.2 µg/L . . .

2  injures class properties," rather than vapor intrusion itself, as previously articulated by Plaintiffs'

3  experts. Dkt. 116 at 5.  While Mr. Ettinger previously opined that use of the 1.2 µg/L TCE groundwater

4  screening level mischaracterizes the risk of vapor intrusion, he needs to supplement this opinion in

5  light of Plaintiffs' new assertions that mitigation is necessary based on groundwater concentrations

6  alone (without regard to threat of actual exposure to contaminants in the indoor air).  In addition, Mr.

7  Ettinger will explain how the new sampling data described above further renders mitigation

8  unnecessary in certain areas of the class.

9              **(e) Settlement Conference/ADR:**

10  Plaintiffs' Statement:  The parties participated in a mandatory mediation on January 28, 2022,

11  after which Plaintiffs stipulated to a voluntary dismissal of their medical monitoring claims. Based on

12  past representations by the Defendants, Plaintiffs are unaware as to whether a settlement conference

13  would be fruitful before trial.

14  Defendants' Statement:  Other than the mediation mentioned below, no settlement discussions

15  or written communications regarding settlement have occurred.  Pursuant to L.R. 16-15.4, Defendants

16  prefer ADR Procedure No. 3, a private dispute resolution proceeding, as the most appropriate procedure

17  for this case.

18  On January 28, 2022, the Parties held a confidential mediation before the Honorable Suzanne

19  H. Segal (Ret.) as required by the Scheduling Order.  Although the parties were not successful in

20  resolving the dispute, the parties were able to narrow the issues pending before the Court.

21  After the mediation ended, the Parties filed a Joint Stipulation Requesting: (1) Dismissal of

22  Plaintiffs' Medical Monitoring Claims without Prejudice; and (2) Withdrawal of Defendants'

23  Discovery Related to Plaintiffs' Medical Monitoring Claims.  Dkt. 63.  This stipulation narrowed the

24  issues before the Court, in that it (1) resulted in the dismissal of Plaintiffs' medical monitoring claims

25  without prejudice; and (2) rendered Defendants' then-pending Motion to Strike Class Allegations, Dkt.

26  46, moot.

27

28

**(f) Trial**

**i.    Trial Estimate:**

Plaintiffs' Statement:   Plaintiffs estimate a trial length of 14 days before a jury. Plaintiffs estimate calling approximately 10 to 14 witnesses.

In the parties last Joint Rule 26(f) report, Defendants' trial length position was that "if a class is certified, Defendants estimate approximately 15 days for trial, and Defendants will likely call no fewer than 15 witnesses, including expert and percipient witnesses." Doc. 103 at 12. Defendants demand for a detailed trial plan is a new concern that Defendants only first raised in their Rule 23(f) petition to the Ninth Circuit that was denied. Defendants' new-found inability to estimate the length of the trial is part-and-parcel with their goal of delaying trial through motion practice and unending expert discovery. As Plaintiffs' opposition detailed, district courts are well-equipped to ensure an adequate and smooth administrative claims process that can address, should any arise, individual issues. Doc. 181-82.

Defendants' Statement:   Since the filing of the parties' last Joint Rule 26(f) Report, Plaintiffs have changed their class definition to exclude individuals who "purchased a home with disclosure of contamination at their property from the 8020 Deering Avenue Site," Dkt. 175, without conducting any discovery to identify such individuals.  Further, Plaintiffs have not submitted a proposal detailing how they intend to adjudicate individual issues, including (1) identifying individuals excluded from the class because they "purchased a home with disclosure of contamination at their property from the 8020 Deering Avenue Site," Dkt. 175, (2) proving when and how class members discovered their claims, as required based upon plaintiffs' claimed reliance on the discovery rule exception to the statute of limitations, *O'Connor v. Boeing N. Am., Inc.*, 311 F.3d 1139, 1150, 1157 (9th Cir. 2002), (3) proving that each class member has lost use and enjoyment of their property or physical property damage as a result of contamination from the Site, (4) proving the amount of damages, if any, each class member is entitled to recover.  As a result, Defendants cannot accurately estimate the length of trial.  Defendants request that the Court issue an order requiring Plaintiffs to identify their proposal regarding how these individual issues are to be adjudicated.

**ii.     Jury or Court Trial:**

Both parties have selected a jury trial.

**iii.     Consent to Trial Before a Magistrate Judge:**

The parties do <u>not</u> consent to trial before a magistrate.

**iv.     Lead Trial Counsel:**

<u>Plaintiffs</u>: Mark Lanier will be lead trial counsel along with Chris Nidel, Alex Brown, Ryan Ellis, David Page, William Cowles and Gideon Kracov.

<u>Defendants</u>: Patrick Dennis will be lead trial counsel along with Christopher Chorba, Abbey Hudson, Deena Klaber, and Joseph Edmonds of Gibson, Dunn and Crutcher LLP, and John Cermak and Hannah Bloink of Cermak & Inglin, LLP.

**v.     Independent Expert or Master:**

<u>Plaintiffs' Statement</u>:  Plaintiffs do not believe either are necessary at this stage, though a Special Master may be necessary if a jury verdict is rendered in Plaintiffs' favor to assist with any claims administration issues.

<u>Defendants' Statement</u>:  Defendants do not presently anticipate that appointment of a special master or independent scientific expert will be necessary in this action.

**vi.     Other Issues:**

The parties are unaware of additional issues.

**Schedule of Pretrial and Trial Dates Worksheet**

| Event | Plaintiffs' Date | Defendants' Date[2] |
|---|---|---|
| Deadline to file Motion for Approval of Class Notice | November 15, 2024 | November 15, 2024 |
| Fact Discovery Cut-Off | N/A | Approx. December 30, 2025 (12 months after mailing class notice) |
| Plaintiffs' Proposal for Adjudicating Individual Issues | N/A | January 29, 2026 (30 days after fact discovery cut-off) |
| Deadline to Serve Opening Summary Judgment Briefs | November 15, 2024 | March 2, 2026 (60 days after fact discovery cut-off)[3] |
| Deadline for Hearing on Dispositive Motions (Thursday at 10 am) | N/A | May 7, 2026 (63 days after motion served) |
| Trial Filings (first round)<br>· Motions in Limine & *Daubert* Motions[4]<br>· Memoranda of Contentions of Fact and Law [L.R. 16- 4]<br>· Witness Lists [L.R. 16-5]<br>· Joint Exhibit List [L.R. 16-16.1]<br>· Joint Status Report Regarding Settlement | May 1, 2025 | June 23, 2026 (4 weeks before FPTC) |
| Trial Filings (second round)<br>· Oppositions to Motion In Limine & *Daubert* Motions<br>· Joint Proposed Final Pretrial Conference Order [L.R. 16-7]<br>· Joint/Agreed Proposed Jury Instructions<br>· Disputed Proposed Jury Instructions<br>· Joint Proposed Verdict Forms | June 1, 2025 | July 7, 2026 (2 weeks before FPTC) |

[2] Defendants' position is that a stay is appropriate, and they propose the dates below in the event that a stay is not issued.

[3] In the event the Court denies Defendants' motion for further discovery, Dkt. 180, Defendants request that dispositive motions be decided before class notification to avoid class notice issuing to claims that are invalid.

[4] Plaintiffs object to Defendants re-filing any of their six *Daubert* motions and do not agree that this is a necessary trial item.

| | | |
|---|---|---|
| · Joint Proposed Statement of the Case<br><br>· Proposed Additional Voir Dire Questions, if any | | |
| Hearing on Motions in Limine & *Daubert* Motions | June 23, 2024 (28 days before trial) | July 14, 2026<br>(7 days before FPTC) |
| Final Pretrial Conference ("FPTC") (L.R. 16) (Tuesday at 10:00 a.m.) | June 30, 2024 (21 days before trial) | July 21, 2026<br>(11 weeks after hearing on dispositive motions) |
| Jury Trial (estimated duration 14 days) | July 21, 2025 | August 11, 2026<br>(21 days after FPTC) |
| Post-Verdict Mediation re: Absent Class Member Damages Claims | 30 days after verdict | N/A |
| Post-Liability Trial and/or Claims Process to Determine Individualized Affirmative Defenses, *if any*, prior to Absent Class Member Recovery | TBD | N/A[56] |

---

[5] Individualized affirmative defenses and issues related to Plaintiffs' recovery cannot be resolved post-trial, especially without discovery from absent class members.  Plaintiffs' refusal to include class member discovery at any stage of the litigation casts serious doubt on their ability to resolve individual issues consistent with due process.  Further, the need for such a post-trial process undercuts Plaintiffs' claims as to the superiority of proceeding as a class in the first place.

[6] As Plaintiffs' opposition brief established, courts nearly unanimously agree that any absent class member discovery, if necessary, or claims administrative process only becomes relevant and only occurs post-trial. Doc. 181-82. Defendants' motion to conduct absent class member discovery ignores that critical timing issue completely. In addition, as this Court agreed with Plaintiffs, the presence of unique affirmative defenses is not a basis to deny class certification and, otherwise, Plaintiffs do not believe that a joint status statement is a proper forum for Defendants to relitigate class certification.

1

2    Dated: October 1, 2024                    By: */s/ Patrick W. Dennis*
                                                       Patrick W. Dennis
3
                                               PATRICK W. DENNIS
4                                              CHRISTOPHER CHORBA
                                               ABBEY HUDSON
5                                              DEENA KLABER
                                               JOSEPH EDMONDS
6                                              **GIBSON, DUNN & CRUTCHER LLP**

7                                              JOHN CERMAK
                                               HANNAH BLOINK
8                                              **CERMAK & INGLIN, LLP**

9                                              Attorneys for Defendants
                                               NORTHROP GRUMMAN CORPORATION and
10                                             NORTHROP GRUMMAN SYSTEMS
                                               CORPORATION
11

12   Dated: October 1, 2024                    By: */s/ Michael Akselrud*
                                                       Michael Akselrud
13
                                               MICHAEL AKSELRUD
14                                             W. MARK LANIER
                                               ALEX J. BROWN
15                                             RYAN ELLIS
                                               **THE LANIER LAW FIRM, P.C.**
16
                                               CHRISTOPHER T. NIDEL
17                                             JONATHAN NACE
                                               WILLIAM W. COWLES
18                                             **NIDEL & NACE, P.L.L.C.**
19
                                               DAVID P. PAGE
20                                             **ENVIRONMENTAL ENERGY & NATURAL
                                               RESOURCES ADVOCATES, PLLC**
21
                                               GIDEON KRACOV
22                                             **LAW OFFICE OF GIDEON KRACOV**
23
                                               Attorneys for Plaintiffs
24                                             JED and ALISA BEHAR and the
                                               Putative Class Members
25

26

27

28

1

## **ATTESTATION PURSUANT TO L.R. 5-4.3.4**

2

     I, Michael Akselrud, attest that all other signatories listed, and on whose behalf this stipulation

3

is submitted, concur in the contents of the stipulation and have authorized this filing.

4

5

                        By:   */s/ Michael Akselrud.*

6

                               Michael Akselrud

7

                     Attorneys for Plaintiffs

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

24

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>**CERTIFICATE OF SERVICE**</u>

I, Michael Akselrud, an attorney, hereby certify that this **JOINT RULE 26(f) REPORT** was served on counsel for Defendants through the Court's ECF/CM system on October 1, 2024.


By:   */s/ Michael Akselrud*
        Michael Akselrud

Attorneys for Plaintiffs