UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JED and ALISA BEHAR,<br><br>Plaintiffs,<br><br>v.<br><br>NORTHROP GRUMMAN CORPORATION and NORTHRUP GRUMMAN SYSTEMS CORPORATION,<br><br>Defendants. | Case No. 2:21-cv-03946-HDV-SK<br><br>**ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [238]** |

I.  **INTRODUCTION**

This case arises out of TCE contamination allegedly released between 1968 and 1970 by Litton Systems, Inc.—now owned by Defendants Northrup Grumman Corporation and Northrup Grumman Systems Corporation ("Defendants" or "Northrup Grumman")—from Litton's commercial manufacturing facility in Canoga Park. The contaminants have spread, forming a toxic groundwater plume approximately 2.5 miles long and 0.75 miles wide at its widest point.

Plaintiffs Jed and Alisa Behar ("Plaintiffs" or "the Behars") live in a home directly above this groundwater plume. They allege that TCE in the groundwater has migrated through the soil matrix, causing hazardous soil vapor to spread below and within the home. They claim to have suffered harm measured by the cost to mitigate contaminant exposure and diminution in home value. The Court has previously certified a class, with the Behars as named representatives, asserting claims for negligence, nuisance, and trespass on behalf of all homeowners above the plume.

Before the Court is Defendants' Motion for Summary Judgment ("Motion"), seeking dismissal of Plaintiffs' Second Amended Complaint in its entirety. [Dkt. 238].[1] Defendants maintain that Plaintiffs allege purely economic harm that cannot form the basis of a negligence, nuisance, or trespass claim in these circumstances. The dispute in the Motion therefore centers on whether contaminants in the groundwater plume have caused physical harm to Plaintiffs' property.

The Court concludes that Plaintiffs have presented substantial evidence, through expert testimony as well as Defendants' own testing data, showing that the TCE-tainted groundwater plume is moving through the attendant soil matrix, resulting in potentially hazardous levels of TCE in the soil and soil vapor below the class area, including the Behar home. Based on this evidence, the Court finds that genuine issues of fact exist on the key question of whether the Plaintiffs' property has suffered actual and present physical injury by virtue of the groundwater and soil contamination.

The Motion is denied.

---

[1] Following the hearing on the Motion, Plaintiffs filed an *ex parte* application for leave to file a sur-reply. [Dkts. 284–287]. Defendants filed an opposition. [Dkt. 288]. Good cause being shown, the Court grants the application and deems the sur-reply and accompanying exhibits—attached as Exhibits 2–4 of the Declaration of Christopher Nidel [Dkts. 286-2, 286-3, 286-4]—filed.

## II. BACKGROUND

### A. Factual Background

The following facts are drawn from the parties' briefing and the accompanying evidentiary record.[2] *See* Motion for Summary Judgment [Dkts. 238]; Appendix of Evidence (Volumes I–IX) [Dkts. 238-6–238-15].[3]

Litton Systems, Inc., now part of Northrop Grumman, manufactured printed circuit boards at an industrial facility at 8020 Deering Ave in Canoga Park, California (the "Site") between 1968 and 1970. SUF[4] ¶¶ 1–2. Litton used certain toxic chlorinated solvents in this manufacturing, including trichloroethene ("TCE"). Ex. 10A at 1411; Ex. 13A at 1435–1436. Contamination was discovered at the Site in the late 1990s, just prior to Northrop Grumman's acquisition of Litton in 2001. Ex. 10A at 1404, 1409. Remedial investigations done by Northrop Grumman and the Los Angeles Regional Water Quality Control Board ("Regional Board") have shown the contamination has spread beyond the Site to the groundwater and soil. Ex. 1S at 184; Ex. 12 at 1426.

Plaintiffs' expert hydrogeologist, Dr. W. Richard Laton, mapped an area emanating from the Site where TCE levels in the groundwater exceed 1.2 µg/L; over 3,200 homes sit above this "plume"

---

[2] Defendants submitted evidentiary objections to Plaintiffs' evidence. *See* Defendants' Evidentiary Objections to Plaintiffs' Separate Statement of Uncontroverted Facts [Dkt. 238-23]. The guiding principle of admissibility at the summary judgment stage is whether the "contents of a document can be presented in a form that would be admissible at trial—for example, through live testimony by the author of the document . . . ." *Sandoval v. County of San Diego*, 985 F.3d 657, 666 (9th Cir. 2021). Put simply, a party on summary judgment need not produce evidence in a form that would be admissible at trial, so long as the party could produce it admissibly at trial. *See Nevada Dep't of Corrections v. Green*, 648 F.3d 1014, 1019 (9th Cir. 2011) ("At summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial.") (citation omitted); *see also Fonseca v. Sysco Food Services of Arizona, Inc.*, 374 F.3d 840, 846 (9th Cir. 2004) ("Even the declarations that do contain hearsay are admissible for summary judgment purposes because they could be presented in an admissible form at trial.") (citation omitted). To the extent the Court relies on evidence to which a party objects, the objections are overruled without prejudice. The remaining objections are denied as moot.

[3] Herein, the Court refers to the exhibits included in the Appendix of Evidence simply by their exhibit number/letter and internal appendix page numbering (*e.g.*, "Ex. 1A at 14" is page 15 of Dkt. 238-6).

[4] "SUF" refers to both Defendants' Statement of Uncontroverted Facts [Dkt. 238-16] and Plaintiffs' Statement of Uncontroverted Facts [Dkt. 238-17], which are numbered sequentially.

that is approximately 2.5 mile long, 0.75 miles wide at its widest, and between 8 to 50 feet deep.  Ex. 14A; Ex. 14B; Ex. 14C at 1490.  Dr. Laton established this 1.2 µg/L TCE screening limit for groundwater based on his understanding of calculations used by the U.S. Environmental Protection Agency and the State of California that indicate this is the level of TCE groundwater contamination above which vapor intrusion[5] risk exceeds the screening levels of TCE in indoor air (0.48 µg/m$^3$).[6]  Ex. 14A.  Plaintiffs maintain that—due to the volatile nature of TCE and the spatial and temporal variability of soil gas concentrations—mapping the plume of *groundwater*, as opposed to testing and mapping soil vapor or indoor air, is the most reliable and least burdensome way to capture where vapor intrusion is occurring.  *See* Ex. 19A at 1587–1602.  This is because the soil vapor "mirrors" the groundwater, but vapor intrusion can be "on" or "off" depending on pressure or weather conditions, making it challenging to measure on any given day at any given time.  SUF ¶ 35; Ex. 19A at 1588.  Plaintiffs' experts, Dr. Mark Kram and Dr. Jill E. Ryer-Powder, also opine that there is a complete pathway for TCE vapors to travel from the groundwater plume into the homes above the plume.  SUF ¶ 36.

It is undisputed that Plaintiffs have not conducted testing or sampling in or around the Behar home or any of the other homes above the plume.  *Id.* ¶ 21.  But Defendants have done some of their own testing of the soil vapor and indoor air in and around the Behar home.  *See id.* ¶¶ 18, 20, 22; Ex. 1T; Ex. 1B (Plaintiffs' expert visualizing testing data on maps); Ex. 30B.  Defendants maintain that there is no evidence of TCE from the Site within the soil below the Behars' home.  SUF ¶ 18.  However, experts from both sides agree that the groundwater plume necessarily flows through the soil.  *See* Ex. 25A at 1775–76; Ex. 25B at 1780; Ex. 25C at 1784; Ex. 14C at 1486–87.  Plaintiffs' expert, Dr. Laton, opines that "TCE is present in the ground and groundwater in the subsurface" beneath each home that sits above the plume, including the Behars'."  Ex. 14B at 1477.  And the

---

[5] "Vapor intrusion" is the flow of contaminants from the groundwater to the soil to the surface, ultimately accumulating in indoor air.  *See, e.g.*, Ex. 19A at 1625; Ex. 16 at 1498.

[6] The parties dispute whether TCE at this 0.48 µg/m$^3$ screening level, or even *any* level below this, poses harm to people.  *See* SUF ¶¶ 15–17, 25, 41.

4

1  Regional Board found "high levels of contamination in groundwater, the soil matrix, and soil vapor"
2  and a "threat of vapor intrusion caused by these contaminants." Ex. 16 at 1498.
3      Soil vapor testing conducted in January 2024 soil has shown TCE levels between 100 and
4  500 µg/m³ at VP-17—a vapor probe less than a block from the Behar home—and levels upwards of
5  10,000 µg/m³ in other points in the class area. *See* Ex. 1B at 37. The annotated map below (created
6  by Plaintiffs' experts but utilizing Defendants' testing data) illustrates these data points:



Ex. 1B at 37. These levels far exceed the default screening level of 16 µg/m³ for soil gas testing for
TCE. *See* Ex. 1T at 212; Dkt. 286-3, Ex. 3 at NGSC_1310823.[7]

Earlier testing performed by Northrop Grumman in May 2022, however, showed TCE levels
in the soil gas of less than 6 µg/m³. Ex. 1T at 212. This May 2022 testing also showed TCE levels
of indoor air at the Behars' home between 0.15 and 0.17 µg/m³. *Id*. at 211. Plaintiffs' experts assert

---

[7] Defendants assert that the screening level here is 240 µg/m³, not 16, because 240 represents a "site specific" screening level. [Dkt. 286-2] at 2-3. However, Defendants' own testing has employed 16 µg/m³ as a screening level. *See* Ex. 1T at 212. Plaintiffs' expert, Dr. Kram, and the California Office of Environmental Health Hazard Assessment also reference 16 as the appropriate screening level here. *See* [Dkt. 118-7]; [Dkt. 286-2], Ex. 3 at NGSC_1310824.

that both the air and soil gas testing in May 2022 was flawed because the air was tested with doors and windows open, soil samples were only 1.5 to 3 feet in depth, and measurements were taken with passive samplers. SUF ¶ 37. Other testing of 26 homes in the class area throughout 2017, 2018, and 2019—which Plaintiffs also assert was flawed, see Opposition at 8–9—revealed indoor air levels of TCE both above and below the 0.48 µg/m$^3$ screening level. Ex. 30B at 1901, 1905, 1907–08.

Plaintiffs allege that the presence of contaminants in the soil, soil vapor, and groundwater—as evidenced by the detection of TCE in the plume—has damaged their property, requiring mitigation and diminishing their home's value. SUF ¶ 33; Ex. 21A at 1665–67; Ex. 21B at 1670–72; Ex. 21D. The Behars have not yet installed a vapor mitigation system or incurred any out-of-pocket costs as a result of the alleged contamination. SUF ¶ 27.

### B. Procedural Background

Plaintiffs filed this Class Action Complaint in May 2021. [Dkt. 1]. After nearly two years of litigation, Plaintiffs filed a Second Amended Complaint in March 2023 that limited the claims to negligence, private nuisance, and trespass. [Dkt. 91].

On July 1, 2024, the Court granted Plaintiffs' motion for class certification, which established two classes: (1) a Mitigation Class, and (2) a Property Damage Class, each comprised of all persons who own a home above the bounds of the plume where TCE levels in the groundwater exceed 1.2 µg/L. [Dkt. 175]. Trial is set for March 24, 2026. [Dkt. 232].

### III. LEGAL STANDARD

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *accord Wash. Mut. Inc. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011). Material facts are those that may affect the outcome of the case. *Nat'l Ass'n of Optometrists & Opticians v. Harris*, 682 F.3d 1144, 1147 (9th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The moving party bears the initial burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To carry its burden of production,

the moving party must either: (1) produce evidence negating an essential element of the nonmoving party's claim or defense; or (2) show that there is an absence of evidence to support the nonmoving party's case. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

Once the moving party has met its initial burden, Rule 56(c) requires the nonmoving party to "go beyond the pleadings and by [his or] her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp.*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(c), (e)); *see also Norse v. City of Santa Cruz*, 629 F.3d 966, 973 (9th Cir. 2010) ("Rule 56 requires the parties to set out facts they will be able to prove at trial."). "In judging evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). "Rather, it draws all inferences in the light most favorable to the nonmoving party." *Id.*

## IV. DISCUSSION

### A. Negligence

"The elements of a cause of action for negligence are duty, breach, causation, and damages." *Melton v. Boustred*, 183 Cal. App. 4th 521, 529 (2010). To succeed on a negligence claim, a plaintiff must prove "physical, emotional or reputational injury to persons or physical injury to property," rather than "purely economic losses." *S. Cal. Gas Leak Cases*, 7 Cal. 5th 391, 398 (2019); *see also Cal. Dep't of Toxic Substances Control v. Payless Cleaners, Coll. Cleaners*, 368 F. Supp. 2d 1069, 1084 (E.D. Cal. 2005) ("In California, plaintiffs may seek remedies for strict liability and negligence only for physical injury to person or property, and not for pure economic losses.") (citing *Seely v. White Motor Co.*, 63 Cal. 2d 9, 18–19 (1965)).

Defendants first argue that the economic loss rule bars the negligence claim because there is no evidence in the record of "physical injury" to the Behars' property—only alleged "economic losses." Motion at 9. The lynchpin of this argument is Defendants' contention that contamination cannot constitute physical injury. *Id*.

Defendants' legal premise is simply mistaken. Many federal courts applying California law have held unequivocally that environmental contamination ***can*** constitute physical injury for

purposes of sustaining a negligence claim. *See, e.g.*, *Wardlow Funding, LLC v. Foasberg Laundry & Cleaners, Inc.*, No. 8:21-cv-1519-SPG-JDE, 2023 WL 12119721, at *9 (C.D. Cal. Mar. 14, 2023) ("[B]ecause the damage Foasberg describes involves chemical contamination of land, the economic loss rule does not bar Foasberg's negligence claim."); *Est. of Renzel v. Ventura*, No. 5:15-cv-01648-RMW, 2015 WL 8527522, at *6 (N.D. Cal. Dec. 11, 2015) ("Courts have held that the chemical contamination of a person's land is sufficient to show a physical injury to the land. . . . Here, plaintiffs have alleged that defendants caused contamination in the soil and the water table underneath the property." (internal citation omitted).); *Greenfield MHP Assocs., L.P. v. Ametek, Inc.*, 145 F. Supp. 3d 1000, 1008–09 (S.D. Cal. 2015) ("Throughout the Complaint, Plaintiffs allege not only groundwater contamination, but also contamination of the sub-surface soil. . . . Plaintiffs allege that the waste plume is emitting toxic vapors in Magnolia Elementary School, and that the same waste plume is underneath their land as well. . . . [T]he Court finds that Plaintiffs have plausibly alleged redressable harm based on groundwater and soil contamination.");[8] *Coppola v. Smith*, 935 F. Supp. 2d 993, 1015 (E.D. Cal. 2013) ("The chemical contamination of a person's land is sufficient to show a physical injury to the land.").

The same analysis applies here. As discussed further below, Plaintiffs' theory of the case is that the TCE in the groundwater plume has migrated **through the soil matrix**. That form of contamination is undoubtedly physical in nature and constitutes actual physical harm that falls outside the economic loss rule.

Defendants' proffered cases analyze markedly different fact scenarios. In *Cnty. of Santa Clara v. Atl. Richfield Co.*, the plaintiffs alleged that the presence of lead paint required them to spend money to find and remove the defect. 137 Cal. App. 4th 292, 321 (2006). The court held that plaintiffs "failed to plead the existence of any physical injury to their buildings." *Id.* at 325. In doing so, the court noted that "[w]hen the defect and the damage are one and the same, the defect may not be considered to have caused physical injury," and for this reason found that plaintiffs had alleged only economic (rather than physical) damages. *Id.* (citation omitted). But Plaintiffs here do

---

[8] Judge Curiel in *Greenfield MHP Assocs.* rejected a similar economic loss rule defense by pointing to sufficient allegations of soil contamination. 145 F. Supp. 3d at 1009.

not allege a defect, and Defendants fail to cite to any binding case extending the *Santa Clara* lead paint holding to preclude negligence liability for environmental contamination of the soil.[9]

Defendants' reliance on *San Francisco Unified Sch. Dist. v. W.R. Grace & Co.*, 37 Cal. App. 4th 1318 (1995) is similarly misplaced. In *W.R. Grace*, the court held that "[p]hysical injury resulting from asbestos contamination, not the mere presence of asbestos, must have occurred before a cause of action for . . . negligence can accrue." But the court's reasoning was based on its factual finding that asbestos does not cause harm unless it becomes "friable." 37 Cal. App. 4th at 1333. Asbestos could therefore be present, but "dormant," so additional evidence of contamination, not just evidence of asbestos was required to show harm. *Id*. In contrast here, the mere presence of TCE in the groundwater, soil vapor, and indoor air is evidence of present and actual—not dormant— contamination that can cause harm. *See* SUF ¶¶ 15–17, 25, 41.[10]

Defendants' evidentiary challenge fares no better. Plaintiffs have presented substantial evidence that contaminants are present at the Behars' property, which raises a genuine dispute as to whether the presence of these contaminants constitutes physical harm. This includes evidence from various experts that:

- There is a plume of groundwater contaminated with TCE in excess of 1.2 µg/L directly below the Behars' home and all other homes that make up the class area. Ex. 14A [Dr. Laton

---

[9] Indeed, the Court notes that Northrop Grumman recently took the position that environmental contamination *was* covered by an insurance policy as physical injury to property. *See Pac. Indem. Co. Cont'l Ins. Co.*, No. B320417, 2023 WL 4509737, at *4 (Cal. Ct. App. July 13, 2023), *reh'g denied* (Aug. 8, 2023) ("Northrop argued the harm alleged by Hot Rods 'flows from the premise that Northrop is responsible for the Property's contamination, and without that allegation, there is no basis for the rest of the lawsuit.' Under California law, Northrop argued, '[i]t is only the *effect*—the occurrence of . . . property damage during the policy period . . . —that triggers potential liability coverage.' (internal citation omitted) (emphasis in original). Because the original contamination occurred when the policies were in force, Northrop argued, the Hot Rods action was covered.").

[10] *Aas v. Superior Ct.*, 24 Cal. 4th 627 (2000), cited heavily by Defendants, is also distinguishable. That case concerned a homeowner's claims of strict products liability and negligence for a construction defect that allegedly caused property damage, measured by repair costs and diminution in value of the home. 24 Cal. 4th at 632–33. But again, *Aas* did not involve environmental contamination of any kind.

Expert Report]; Ex. 14B [Dr. Laton Expert Rebuttal Report]; Ex. 14C at 1490 [Dr. Laton Dep. Tr.]. Specifically, expert hydrogeologist Dr. Laton opines that "the Northrop Grumman TCE groundwater Plume, [] defined at a concentration of 1.2µg/L, . . . is approximately 2.5 miles in length, and up to ¾ mile wide at its widest, and extends to depths of at least 100 feet bgs." Ex. 14A at 1458. This plume "underlies 3,787 residential parcels, all of which have been impacted by vapor intrusion and may experience TCE concentrations above acceptable risk levels." Id. at 1459; Ex. 14B at 1474. Dr. Laton mapped the plume as shown in his exhibit below. Ex. 14A at 1471.



- The groundwater plume is necessarily flowing through the soil. See Ex. 25A at 1775–76 [Einarson Expert Report]; Ex. 25C at 1784 [Einarson Dep. Tr.]; Ex. 14C at 1486–87. Defendants' expert hydrogeologist Murray D. Einarson reports that "the geologic layering" of the "subsurface geology and hydrogeology" beneath the class area "forms preferential pathways for groundwater and contaminant transport," which impacts the "fine-grained deposits of silt and clay." Ex. 25A at 1775. He further stated that "the geology creates the – the structure that controls the migration of fluids and contaminants in the subsurface." Ex.

10

        25C at 1784.  This comports with Dr. Laton's statement that "groundwater can move in and around" the "layers of clay or fine silts between the contamination plume and the surface." Ex. 14C at 1486.

- Because the groundwater plume flows through the soil, Dr. Laton reports that "TCE is present in the ground and groundwater in the subsurface" beneath each home that sits above the plume, including the Behars' property.  Ex. 14B at 1477.  The Regional Board confirmed that "[c]ontamination from the Site extends in groundwater and soil vapor beneath the residential areas for at least two miles." Ex. 16 at 1498.

- Soil gas testing at VP-17, less than a block from the Behars' home, revealed TCE levels between 100 and 500 $\mu g/m^3$, in excess of screening levels.  Ex. 1B at 37 [Laton Expert Report].  Dr. Laton's exhibit illustrates this soil gas testing data, which also shows many levels of TCE in soil vapor throughout the class area well upwards of 100 $\mu g/m^3$ (*e.g.*, VP-18, VP-21, VP-24) and often upwards of 10,000 $\mu g/m^3$ (*e.g.*, VP-11, VP-12, VP-14). *Id.*

- TCE residing in the soil is transported as vapors upward to the Behars' home and other homes in the class area.  Ex. 16 at 1498; Ex. 19A at 1625 [Dr. Kram Expert Report].  Dr. Mark Kram, Plaintiffs' expert on vapor intrusion, describes this as transport through a "vapor intrusion exposure pathway" that contaminates the soil gas, the sub-slab and/or crawlspace air, and then directly into the class area homes.  Ex. 19A at 1583.  Again, the Regional Board's report aligns with this, finding that there is a "presence of high levels of contamination in groundwater, the soil matrix, and soil vapor and the threat of vapor intrusion caused by these contaminants." Ex. 16 at 1498.

This evidence, when viewed in the light most favorable to Plaintiff, shows that there is TCE contamination in the groundwater below the Behars' home which can (and has) traveled through the soil and into the home.

        As to indoor air measurements of TCE, Defendants aver that this evidence does not raise a genuine dispute because the indoor air evidence of TCE shows "below background levels" and the screening level of 0.48 $\mu g/m^3$.  Reply at 3 [Dkt. 238-2].  The Court disagrees.  The unrebutted evidence in the record from Defendants' own testing shows that indoor air levels in various homes

above the groundwater plume are beyond the acceptable level. Ex. 30B at 1905 (showing indoor air TCE levels of 1.40, 0.60, 0.86, and 0.81 µg/m$^3$ at four homes within the class area). Moreover, Plaintiffs present evidence (hotly contested by Defendants) that *any* level of TCE can cause harm. *See* SUF ¶¶ 15–17, 25, 41. This is a factual dispute left to the jury to resolve, and the Court must draw all inferences in the light most favorable to Plaintiffs here. *See Soremekun*, 509 F.3d at 984. Drawing these inferences in Plaintiffs' favor, the Court finds that genuine questions of material fact exist on the key question of whether indoor exposure at the levels found in testing can cause physical harm.

Defendants also dispute the relevance of evidence of TCE at VP-17, which is near, but not directly on, the Behars' property. But due to the ephemeral and volatile nature of TCE soil vapor and air, as Plaintiffs' experts describe (*see* Ex. 19A at 1587–1602), evidence of TCE above screening limits a half block away from the Behars' home is relevant because it tends to make it more likely that the Behars' home itself is experiencing contamination. Defendants' argument is that a claim for negligence can only be maintained if there is contemporaneous (*i.e.*, "smoking gun") testing evidence of a vapor exceedance immediately on the Behars' property. But that is not how indirect or circumstantial evidence operates. Evidence of a weather report combined with a wet sidewalk can be considered evidence of overnight rain. Here, evidence of a defined TCE-tainted groundwater plume, extensive soil vapor exceedances throughout the class area, and expert testimony explaining and connecting the migration of the plume and the "mirroring" of groundwater and soil contamination is competent evidence that TCE soil matrix contamination is present—right now— underneath the Behars' home.

**B.      Private Nuisance**

To prevail on the private nuisance cause of action, Plaintiffs must prove: (1) an interference with the use and enjoyment of property, (2) the interference caused Plaintiffs to suffer substantial actual damage, and (3) the interference is unreasonable. *San Diego Gas & Elec. Co. v. Superior Ct.*, 13 Cal. 4th 893, 937–38 (1996). The latter two factors are evaluated under an objective standard. *Id.* at 938–39. Like the claim for negligence, this claim also hinges on whether Plaintiffs can show actual harm to their property.

1       The Ninth Circuit has held that a nuisance may exist solely based on the presence of contamination. *Team Enters. v. W. Inv. Real Est. Tr.*, 647 F.3d 901, 911–12 (9th Cir. 2011) ("Chemical contamination of the soil that affects, or threatens to affect, water quality constitutes a nuisance."); *see also Redev. Agency of City of Stockton v. BNSF Ry. Co.*, 643 F.3d 668, 673 (9th Cir. 2011) ("It is undisputed that the soil and groundwater contamination in this case constitutes a nuisance."). Numerous district courts have applied this same principle. *E.g.*, *Jarose v. Cnty. of Humboldt*, No. 18-cv-07383-RS, 2022 WL 1601407, at *16 (N.D. Cal. Mar. 17, 2022) (same); *Rahban v. Detrex Corp.*, No. 08-cv-6235-GW-RZx, 2009 WL 10674035, at *6 (C.D. Cal. Oct. 26, 2009).

California also defines a "nuisance" as "[a]nything which is injurious to health, . . . or is indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property." Cal. Civ. Code § 3479. Not surprisingly, California courts have routinely found that ground contamination constitutes a nuisance. *E.g.*, *Orange Cnty. Water Dist. v. Sabic Innovative Plastics US, LLC*, 14 Cal. App. 5th 343, 417 (2017), as modified on denial of reh'g (Aug. 25, 2017) ("The evidence of widespread [volatile organic compound] contamination in groundwater raises a triable issue of material fact regarding the issue of substantial and unreasonable harm."); *Resol. Tr. Corp. v. Rossmoor Corp.*, 34 Cal. App. 4th 93, 99 (1995) ("Failure to clean up contamination causing ongoing damage to property has been held to constitute such a nuisance."); *KFC W., Inc. v. Meghrig*, 23 Cal. App. 4th 1167, 1178 (1994) ("[A] landowner may state a cause of action for a private continuing nuisance against a previous owner whose activity contaminated the property.").

Defendants make several arguments to avoid this conclusion.

First, they argue that mere diminution in value cannot constitute a nuisance as a matter of law, relying on the reasoning in *Oliver v. AT&T Wireless Servs.*, 76 Cal. App. 4th 521, 525 (1999). Motion at 15. The nuisance claim in *Oliver* was predicated on the theory that AT&T's cell phone towers are a "big eyesore" and thus purportedly drive down the market values of nearby homes. *Id.* at 527. The appellate court affirmed the trial court's dismissal of the nuisance claim on summary judgment, finding that the "displeasing appearance of an otherwise lawful structure" was insufficient

13

1   to support the nuisance claim. *Id.* at 535. The Court also held that "[a] diminution in value does not
2   interfere with the present use of property and cannot alone constitute a nuisance." *Id.* at 534. But
3   Plaintiffs' nuisance claim here is not based solely on economic damages (or "esthetics" as the court
4   in *Oliver* explained); rather, it is founded on the assertion that the TCE in the groundwater has
5   migrated through the soil under the Behar home and all homes in the class area. That form of
6   physical contamination is precisely the type of nuisance that federal and state courts have
7   recognized.

8   Second, Defendants contend that fear of *future* injury is not sufficient to support a nuisance
9   claim, citing *Koll-Irvine Ctr. Prop. Owners Assn. v. Cnty. of Orange*, 24 Cal. App. 4th 1036 (1994).
10  Motion at 16. In *Koll-Irvine*, the plaintiffs argued that because their properties were situated near a
11  fuel farm, their "fear of a catastrophic accident" interfered with their use and enjoyment of the
12  property. 24 Cal. App. 4th at 1039. The court held that a private nuisance action cannot be
13  maintained "solely by the fear of future injury. *Id.* at 1041–42. The present action, however, is not
14  predicated on a fear of future injury. The TCE-laced groundwater, soil, and air samples discussed in
15  the previous section raise disputes of material fact concerning a *present* injury to the Behars. Indeed,
16  Plaintiffs' experts opine that the TCE contamination is under the Behar home *right now* and must be
17  mitigated *right now*. *Koll-Irvine* and its progeny are wholly inapposite.

18  And third, Defendants argue that there is no evidence that any alleged interference is
19  "substantial" as required to sustain a claim. Motion at 17–19. Again, the Court is unpersuaded. As
20  discussed in Section IV.A., *infra*, Plaintiffs have submitted multiple expert declarations setting forth
21  the harm to the Behars that can result (not in the future, but now) because of vapor intrusion. *See*
22  Exs. 14, 19, 20. Plaintiffs experts also present evidence of TCE's allegedly substantial harm, even in
23  small amounts. *See* SUF ¶¶ 15–17, 25, 41. Whether the trier of fact believes this alleged damage
24  was *substantial*, is a question left to the jury. *See San Diego Gas & Elec. Co. v. Super. Ct.*, 13 Cal.
25  4th 893, 938 (1996); *Palmisano v. Olin Corp.*, No. C-03-01607-RMW, 2005 WL 6777560, at *15
26  (N.D. Cal. June 24, 2005). Suffice it to say, a convincing case has been made. Although courts are
27  not to weigh evidence at summary judgment, *see Soremekun*, 509 F.3d at 984, this Court is
28  convinced that many genuine and serious disputes of fact remain as to the present harm that can

1  result from the TCE migration in the soil asserted by Plaintiffs' experts.

2  **C.  Trespass**

3  "Trespass is an unlawful interference with possession of property." *Staples v. Hoefke*, 189 Cal. App. 3d 1397, 1406 (1987). "The elements of trespass are: (1) the plaintiff's ownership or control of the property; (2) the defendant's intentional, reckless, or negligent entry onto the property; (3) lack of permission for the entry or acts in excess of permission; (4) harm; and (5) the defendant's conduct was a substantial factor in causing the harm." *Ralphs Grocery Co. v. Victory Consultants, Inc.*, 17 Cal. App. 5th 245, 262 (2017). For the entry of an imperceptible substance to be a trespass, the substance "must either (1) 'deposit ... particulate matter upon the plaintiffs' property' or (2) cause 'actual physical damage thereto' . . . ." *Palmisano v. Olin Corp.*, No. C-03-01607-RMW, 2005 WL 6777560, at *12 (N.D. Cal. June 24, 2005) (citing *Wilson v. Interlake Steel Co.*, 32 Cal. 3d 229, 233 (1982) and *San Diego Gas*, 13 Cal. 4th at 936).

Once again, numerous courts have acknowledged that environmental contamination of the soil is redressable through a trespass claim under California common law. Indeed, the Ninth Circuit has recently reaffirmed this point in *Navarro v. Exxon Mobil Corp.*, No. 23-3274, 2025 WL 2233315, at *1 (9th Cir. Aug. 5, 2025)—a case cited repeatedly by Defendants—which held in relevant part that, "[u]nder California law, soil and groundwater contamination such as Navarro alleges here can support a claim for trespass." 2025 WL 2233315, at *1. Numerous federal and state court decisions support this conclusion. *See, e.g., Lanfri v. Goodwill of Silicon Valley*, 762 F. Supp. 3d 849, 859 (N.D. Cal. 2024) ("Lanfri has pleaded facts sufficient to support the plausible inference that Goodwill committed a trespass by releasing and failing to contain hazardous substances that migrated and continue to migrate to the Rex Property."); *In re Burbank Env't Litig.*, 42 F. Supp. 2d 976, 984 (C.D. Cal. 1998) ("A claim for trespass may be based on the presence of contamination on property."); *KFC W., Inc.*, 23 Cal. App. 4th at 1178–81 (holding that plaintiffs could state causes of action for both continuing nuisance and continuing trespass against former owners of property based upon soil contamination from underground storage); *Resol. Tr. Corp.*, 34 Cal. App. 4th at 99 ("Failure to clean up contamination causing ongoing damage to property has been held to constitute such a [continuing] nuisance. (internal citations omitted). Likewise, the same

15

conduct gives rise to an action for continuing trespass."); *Newhall Land and Farming Co. v. Superior Ct.*, 19 Cal. App. 4th 334 (1993) (trespass may be based on the presence of contaminants on property).

Defendants argue that, even assuming the groundwater below the Behar home is contaminated with TCE, their trespass claim fails because (1) they do not own this groundwater and (2) vapor intrusion is not sufficient to establish a physical entry on the property. Motion at 19–21. Again, Defendants' strawman arguments miss the point. For the reasons explained above, Plaintiffs have presented substantial evidence that the groundwater contamination has migrated through the soil and into the Behar property, raising a genuine dispute as to whether the Behars have experienced physical damage to their property. Because there is a genuine dispute as to whether the TCE contaminants are causing physical damage to the property, there is sufficient evidence for the trespass claim to survive summary judgment. *See Palmisano*, 2005 WL 6777560, at *12.

## V.  CONCLUSION

For the foregoing reasons, Defendants' Motion is denied.

Dated:   December 9, 2025

_____
Hernán D. Vera
United States District Judge