Michael Akselrud (SBN 285033)
Michael.Akselrud@lanierlawfirm.com
**THE LANIER LAW FIRM, P.C.**
2829 Townsgate Rd., Ste. 100
Westlake Village, California 91361
Telephone: (310) 277-5100
Facsimile: (310) 277-5103

W. Mark Lanier (*pro hac vice*)
WML@lanierlawfirm.com
Alex J. Brown (*pro hac vice*)
Alex.Brown@lanierlawfirm.com
Ryan D. Ellis (*pro hac vice*)
Ryan.Ellis@lanierlawfirm.com
Alex Abston (*pro hac vice*)
Alex.Abston@lanierlawfirm.com
Megan Waida (*pro hac vice*)
Megan.Waida@lanierlawfirm.com
(*pro hac vice*)
**THE LANIER LAW FIRM, P.C.**
10940 W. Sam Houston Pkwy N
Houston, Texas 77064
Telephone: (713) 659-5200
Facsimile: (713) 659-2204

David P. Page (*pro hac vice*)
dpage@eenradvocates.com
**ENVIRONMENTAL ENERGY &
NATURAL RESOURCES ADVOCATES,
PLLC**
1921 S Boston Ave.
Tulsa, Oklahoma 74119
Telephone: (918) 764-8984

*Attorneys for Plaintiffs and Class Members*

Christopher T. Nidel (*pro hac vice*)
chris@nidellaw.com
Jonathan Nace (*pro hac vice*)
jon@nidellaw.com
Thomas Sims (SBN 264174)
thomas@nidellaw.com
William W. Cowles (*pro hac vice*)
will@nidellaw.com
Zachary A. Kelsay (*pro hac* vice)
zach@nidellaw.com
**NIDEL & NACE, P.L.L.C.**
One Church Street, Suite 802
Rockville, MD 20850
Telephone: (202) 780-5153

Gideon Kracov (SBN  179815)
gk@gideonlaw.net
**LAW OFFICE OF GIDEON KRACOV**
801 S. Grand Ave., 11th Floor
Los Angeles, CA 90017
Telephone: (213) 700-4448

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| JED and ALISA BEHAR, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>NORTHROP GRUMMAN CORPORATION AND NORTHROP GRUMMAN SYSTEMS CORPORATION,<br><br>    Defendants | Case No. 21-cv-03946-HDV-SK<br><br>CLASS ACTION<br><br>**PLAINTIFFS' NOTICE OF MOTION FOR PRELIMINARY SETTLEMENT APPROVAL**<br><br><br>**<u>Hearing:</u>**<br>Date:   July 16, 2026<br>Time:   10:00 a.m.<br>Place:  Courtroom 5B, 5th Floor<br>       350 W. 1st Street<br>       Los Angeles, CA 90012<br>Judge: Hon. Hernán D. Vera |

## <u>NOTICE OF MOTION</u>

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT on July 16, 2026, at 10:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 5B of the above-entitled court, located at 350 W. 1st Street, 5th floor, Los Angeles, California, 90012, Plaintiffs Jedidiah and Alisa Behar, on behalf of themselves and of all others similarly situated, will and hereby do move the Court, pursuant to Rule 23 of the Federal Rules of Civil Procedure, for an order granting preliminary settlement approval.

This Motion is based on this Notice of Motion, the concurrently filed Motion, the pleadings and papers on file in this action, any argument in connection with the Motion, and such further evidence or arguments as the Court may consider.

2

This Motion is made following the conference of counsel which took place on May 16, 2026. Plaintiffs understand that Defendants will file a statement in support of this Motion.

Dated: June 1, 2026

/s/ *Ryan D. Ellis*
Ryan D. Ellis (*pro hac vice*)
Ryan.Ellis@lanierlawfirm.com
**THE LANIER LAW FIRM, P.C.**
10940 W. Sam Houston Pkwy N
Houston, Texas 77064
Phone: (713) 659-5200 Fax: (713) 659-2204

Michael Akselrud (SBN 285033)
Michael.Akselrud@lanierlawfirm.com
THE LANIER LAW FIRM, P.C.
2829 Townsgate Rd., Ste. 100
Westlake Village, California 91361
Telephone: (310) 277-5100 Facsimile: (310) 277-5103

W. Mark Lanier (*pro hac vice*)
WML@lanierlawfirm.com
Alex J. Brown (*pro hac vice*)
Alex.Brown@lanierlawfirm.com
**THE LANIER LAW FIRM, P.C.**
10940 W. Sam Houston Pkwy N
Houston, Texas 77064
Phone: (713) 659-5200 Fax: (713) 659-2204

Christopher T. Nidel (*pro hac vice*)
chris@nidellaw.com
Jonathan Nace (*pro hac vice*)
jon@nidellaw.com
William Cowles (*pro hac vice*)
will@nidellaw.com
**NIDEL & NACE, P.L.L.C.**
One Church Street, Suite 802
Rockville, Maryland 20850
Phone: (202) 780-5153

David P. Page (*pro hac vice*)
dpage@eenradvocates.com
**ENVIRONMENTAL ENERGY & NATURAL RESOURCES ADVOCATES, PLLC**
1921 S Boston Ave.
Tulsa, Oklahoma 74119

3

Phone: (918) 764-8984

Gideon Kracov (Cal. SBA # 179815)
gk@gideonlaw.net
**LAW OFFICE OF GIDEON KRACOV**
801 S. Grand Ave., 11th Floor
Los Angeles, California 90017
Phone: (213) 700-4448

***Attorneys for the Plaintiffs and Class Members***

## CERTIFICATE OF SERVICE

I, Ryan D. Ellis, attorney for the Plaintiffs and the class members, hereby certify that the **PLAINTIFFS' NOTICE OF MOTION FOR PRELIMINARY APPROVAL** was served to counsel for the Defendants through the Court's ECF/CM system on June 1, 2026.

By: /s/ *Ryan D. Ellis*
Ryan D. Ellis (*pro hac vice*)
**Attorneys for the Plaintiffs and the Class Members**

Michael Akselrud (SBN 285033)
Michael.Akselrud@lanierlawfirm.com
**THE LANIER LAW FIRM, P.C.**
2829 Townsgate Rd., Ste. 100
Westlake Village, California 91361
Telephone: (310) 277-5100
Facsimile: (310) 277-5103


W. Mark Lanier (*pro hac vice*)
WML@lanierlawfirm.com
Alex J. Brown (*pro hac vice*)
Alex.Brown@lanierlawfirm.com
Ryan D. Ellis (*pro hac vice*)
Ryan.Ellis@lanierlawfirm.com
Alex Abston (*pro hac vice*)
Alex.Abston@lanierlawfirm.com
Megan Waida (*pro hac vice*)
Megan.Waida@lanierlawfirm.com
(*pro hac vice*)
**THE LANIER LAW FIRM, P.C.**
10940 W. Sam Houston Pkwy N
Houston, Texas 77064
Telephone: (713) 659-5200
Facsimile: (713) 659-2204


David P. Page (*pro hac vice*)
dpage@eenradvocates.com
**ENVIRONMENTAL ENERGY &
NATURAL RESOURCES ADVOCATES,
PLLC**
1921 S Boston Ave.
Tulsa, Oklahoma 74119
Telephone: (918) 764-8984

Christopher T. Nidel (*pro hac vice*)
chris@nidellaw.com
Jonathan Nace (*pro hac vice*)
jon@nidellaw.com
Thomas Sims (SBN 264174)
thomas@nidellaw.com
William W. Cowles (*pro hac vice*)
will@nidellaw.com
Zachary A. Kelsay (*pro hac* vice)
zach@nidellaw.com
**NIDEL & NACE, P.L.L.C.**
One Church Street, Suite 802
Rockville, MD 20850
Telephone: (202) 780-5153


Gideon Kracov (SBN  179815)
gk@gideonlaw.net
**LAW OFFICE OF GIDEON KRACOV**
801 S. Grand Ave., 11th Floor
Los Angeles, CA 90017
Telephone: (213) 700-4448

*Attorneys for Plaintiffs and Class Members*

i

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

|  |  |
|---|---|
| JED and ALISA BEHAR, individually and on behalf of all others similarly situated,<br><br>     Plaintiffs,<br><br>v.<br><br>NORTHROP GRUMMAN CORPORATION AND NORTHROP GRUMMAN SYSTEMS CORPORATION,<br><br>     Defendants | Case No. 21-cv-03946-HDV-SK<br><br>CLASS ACTION<br><br>**PLAINTIFFS' MOTION FOR PRELIMINARY SETTLEMENT APPROVAL**<br><br><br>**Hearing:**<br>Date:   July 16, 2026<br>Time:  10:00 a.m.<br>Place:  Courtroom 5B, 5th Floor<br>       350 W. 1st Street<br>       Los Angeles, CA 90012<br>Judge: Hon. Hernán D. Vera |

**TABLE OF CONTENTS**

I.    INTRODUCTION ........................................................................................................... 1

II.   CASE BACKGROUND ................................................................................................ 2

III.  MATERIAL TERMS OF THE SETTLEMENT ......................................................... 6

  A.    The Settlement Class........................................................................................... 6

  B.    The Settlement Fund ........................................................................................... 6

  C.    Allocation of Settlement Proceeds...................................................................... 7

  D.    Notice to Settlement Class .................................................................................. 9

  E.    Opt-Out Procedures .......................................................................................... 11

  F.    Objection Process.............................................................................................. 11

  G.    Release of Claims ............................................................................................. 12

  H.    Service Awards ................................................................................................. 13

  I.    Attorney's Fees and Costs ................................................................................ 13

  J.    Class Administrator .......................................................................................... 14

  K.    Timing and Manner of Payments...................................................................... 16

IV.   THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL ........................ 17

  A.    Legal Standard for Preliminary Approval......................................................... 17

  B.    The Settlement Satisfies Rule 23(e)(2) ............................................................ 19

    1.    Rule 23(e)(2)(A)-(B): The settlement is the product of arm's-length negotiations by adequately informed counsel.......................................................................................... 19

    2.    Rule 23(e)(2)(C): Relief is adequate in light of litigation risks and costs, the effectiveness of the method of distributing relief, and the proposed award of fees ......................................................... 20

    3.    Rule 23(e)(2)(D): Class members are treated equitably relative to each other......................... 21

    4.    The Settlement also satisfies the Ninth Circuit's supplemental preliminary approval factors. 24

V.    THE SETTLEMENT CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES. .... 25

  A.    Legal Standard for Settlement Class Certification............................................ 25

  B.    This Court Should Certify the Settlement Class................................................ 25

1.    Numerosity ................................................................................................... 26

2.    Commonality ................................................................................................. 27

3.    Typicality ...................................................................................................... 27

4.    Adequacy of Representation .......................................................................... 28

5.    Predominance ................................................................................................ 28

6.    Superiority ..................................................................................................... 29

VI.    THE COURT SHOULD APPROVE THE PROPOSED NOTICE PLAN ..................................... 29

VII.    THE COURT SHOULD APPOINT THE CLASS ADMINISTRATOR .......................................... 30

VIII. PROPOSED SCHEDULE ........................................................................................................... 31

IX.    CONCLUSION ........................................................................................................................... 34

**TABLE OF AUTHORITIES**

**Cases**

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997)...................................................................................................... 25, 28, 29

*Amgen, Inc. v. Conn. Ret. Plans & Tr. Funds*,
568 U.S. 455 (2013)................................................................................................................ 28

*Churchill Villages, LLC v. Gen. Elec.*,
361 F.3d 566 (9th Cir. 2004) .................................................................................................. 25

*Cox v. Ametek, Inc.*,
No. 317CV00597GPCAGS, 2020 WL 7353425 (S.D. Cal. Dec. 15, 2020) ........................ 24

*Ellis v. Costco Wholesale Corp.*,
657 F.3d 970 (9th Cir. 2011) .................................................................................................. 28

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) .......................................................................................... 25, 27

*Hanon v. Dataproducts Corp.*,
976 F.2d 497 (9th Cir. 1992) .................................................................................................. 27

*Herrera v. Wells Fargo Bank, N.A.*,
2021 WL 3932257 (C.D. Cal. June 8, 2021) .......................................................................... 29

*In re Bluetooth Headset Prods. Liab. Litig.*,
654 F.3d 935 (9th Cir. 2011) .................................................................................................. 20

*In re Heritage Bond Litig.*,
2005 WL 1594403 (C.D. Cal. June 10, 2005) ........................................................................ 18

*In re Initial Pub. Offering Sec. Litig.*,
226 F.R.D. 186 (S.D.N.Y. 2005) ............................................................................................ 26

*In re MicroStrategy, Inc. Sec. Litig.*,
148 F.Supp. 2d 654 (E.D. Va. 2001) ...................................................................................... 26

*In re Online DVD-Rental Antitrust Litig.*,
779 F.3d 934 (9th Cir. 2015) .................................................................................................. 25

*In re Syncor ERISA Litig.*,
516 F.3d 1095 (9th Cir. 2008) ................................................................................................ 17

*In re TFT-LCD (Flat Panel) Antitrust Litig.,*
  No. M 07-1827 SI, 2011 WL 13152270 (N.D. Cal. Aug. 24, 2011) .................................................... 26

*Macy v. GC Servs. Ltd. P'ship,*
  2019 WL 6684522 (W.D. Ky. 2019) .................................................................................................. 18

*Meeker v. Bullseye Glass Co.,*
  No. 2:16-CV-01174-MAH (Multnomah Cty. Cir. Court, Oregon) ........................................................ 15

*Mejdrech v. Lockformer Co.,*
  No. 01-cv-6107 (N.D. Ill. 2004) ....................................................................................................... 24

*Mejdrech v. Lockformer Co.,*
  No. 01-cv-6107 Doc. 238 (N.D. Ill. July 20, 2012) ............................................................................. 25

*Rannis v. Recchia,*
  380 F. Appx. 646 (9th Cir. 2010) ..................................................................................................... 27

*Resendez, et al. v. Precision Castparts Corp. and PCC Structurals, Inc.,*
  No. 16-CV-16164 (Multnomah Cty. Cir. Court, Oregon) ..................................................................... 15

*Rodriguez v. W. Publ'g Corp.,*
  563 F.3d 948 (9th Cir. 2009) ...................................................................................................... 17, 18

*Ruffulo v. Farmers Ins. Exch.,* No. CV 23-1796 FMO (MAAX),
  2026 WL 64106 (C.D. Cal. Jan. 5, 2026) ........................................................................ 17, 18, 19, 25

*Spann v. J.C. Penney Corp.,*
  314 F.R.D. 312 (C.D. Cal. 2016) ................................................................................................ 17, 18

*Tyson Foods, Inc. v. Bouaphakeo,*
  577 U.S. 442 (2016) ........................................................................................................................ 28

*Uschold v. NSMG Shared Serv., LLC,*
  333 F.R.D. 157 (N.D. Cal. 2019) ..................................................................................................... 18

*Wolin v. Jaguar Land Rover N. Am., LLC,*
  617 F.3d 1168 (9th Cir. 2010) ......................................................................................................... 29

**Statutes**

28 U.S.C. § 1332 ................................................................................................................................ 6

28 U.S.C. § 1367 ................................................................................................................................ 6

28 U.S.C. § 1391(b)(2). ....................................................................................................................... 6

28 U.S.C. § 1715 .............................................................................................................................. 31

Cal. Civ. Code. § 1542 ................................................................................................................. 13

**Other Authorities**

2018 Adv. Comm. Notes to Rule 23(e)(1) Amendments ........................................................ 18, 19, 25, 29

*Westlaw: Fed. Court Approves $17 Million Settlement in TCE Case*,
   25 No. ANENVLR 4, 2004 WL 2254894 ............................................................................ 25

**Rules**

Fed. R. Civ. P. 23(a)(1) ......................................................................................................... 26, 27

Fed. R. Civ. P. 23(a)(2) ............................................................................................................... 27

Fed. R. Civ. P. 23(a)(3) ............................................................................................................... 27

Fed. R. Civ. P. 23(a)(4) ............................................................................................................... 28

Fed. R. Civ. P. 23(b)(3) .......................................................................................................... 28, 29

Fed. R. Civ. P. 23(c)(2)(B) .......................................................................................................... 29

Fed. R. Civ. P. 23(e) .................................................................................................................... 17

Fed. R. Civ. P. 23(e)(1)(B) .......................................................................................................... 29

Fed. R. Civ. P. 23(e)(3)(C)(iv) .................................................................................................... 21

## I.      INTRODUCTION

Plaintiffs Jed and Alisa Behar ("Plaintiffs") hereby move for preliminary approval of the settlement under Rule 23(e).

This case arises from Plaintiffs' allegations that Defendants Northrop Grumman Corporation and Northrop Grumman Systems Corporation (together, "Defendants") are responsible for contamination of the soil and groundwater in the Class Area, a residential neighborhood in Canoga Park, California, with trichloroethylene (TCE) and perchloroethylene (PCE) traceable to operations at the former Litton site during the late 1960s and early 1970s. Plaintiffs allege this contamination has diminished property values and necessitated the installation of vapor intrusion mitigation measures at class members' homes. Defendants deny all of these allegations.

The proposed Class Action Settlement Agreement and Release ("Settlement")[1] provides a $75,000,000 non-reversionary fund to compensate the owners of 3,294 single-family homes and townhomes within the Court-certified Class Area for alleged property damage and alleged need for mitigation measures. The proposed Settlement also provides compensation for persons who owned a single-family home or townhome within the Class Area as of July 1, 2024, but who no longer own the property to compensate for any alleged diminishment in value that occurred prior to the sale. No portion of the Settlement Fund will revert to Defendants under any circumstances. The Settlement does not release any personal injury, wrongful death, or medical monitoring claims.

Pursuant to Rule 23(e) and this Court's procedures, the Parties respectfully request that the Court enter an order:

1.  Granting preliminary approval of the Settlement Agreement;

2.  Approving modification to the class definition, previously certified by this Court on July 1, 2024 (ECF No. 175), as set forth in the Settlement and herein;

3.  Approving the proposed form and manner of Settlement Notice, including direct notice by first-class mail, email (where available), publication in local print periodicals, and

---

[1] Capitalized terms have the same meaning as given in the Settlement.

1

geographically targeted social media and web advertising;

4. Approving the proposed claims process and claim form;

5. Appointing A.B. Data, Ltd. as Class Administrator;

6. Setting a deadline of 45 days after the postmark date of the Settlement Notice for class members to opt out or submit written objections;

7. Setting a deadline of 60 days after the postmark date of the Settlement Notice for class members to submit claims;

8. Scheduling a Final Approval Hearing at the Court's convenience 100 days from the postmark date of the Settlement Notice, but in any event, no earlier than September 9, 2026;

9. Setting a briefing schedule for the Motion for Final Approval and for Class Counsel's application for attorneys' fees, costs, and service awards; and

10. Granting such other and further relief as the Court deems appropriate.

## II.    CASE BACKGROUND

This class action arises from Plaintiffs' allegations that alleged predecessors of Defendants released toxic chemicals from the industrial location at 8020 Deering Avenue (the "Site" or "8020 Deering Avenue"), that Plaintiffs allege resulted in a plume of contaminated groundwater beneath thousands of homes in Canoga Park ("Class Area").

**A. The Contamination and the Class Area**

In 1967, Litton Industries, Inc. and Litton Systems, Inc. ("Litton"), purchased the Site. ECF No. 175 at 3. Plaintiffs allege that, from approximately 1968 to 1970, Litton manufactured printed circuit boards, and conducted related operations such as copper plating, silk screening, photo printing, and chemical stripping at the Site. Plaintiffs allege that these operations resulted in discharges of volatile organic compounds, including trichloroethylene ("TCE"), perchloroethylene ("PCE"), and trichloroethane ("TCA") into the groundwater at the Site. *Id*.

In 2001, Defendants acquired Litton. ECF No. 175 at 3. Plaintiffs allege that contamination at the Site was discovered in the late 1990s, and since 2003 Defendants have been investigating and remediating groundwater contamination at the Site under the supervision of the Los Angeles Regional Water Quality

2

Control Board. *Id*. Plaintiffs allege that, in 2007, Defendants began investigating contamination in water, soil, and soil vapor beyond the Site, identifying the plume as emanating from the Site. *Id*.

Plaintiffs allege that there is a roughly 2.4-mile plume of toxic solvents that extends throughout the Class Area from 8020 Deering Avenue, contaminating the groundwater, soil, soil vapor, and geology above the plume and the property in the Class Area. ECF No. 348-1 at 12–13. Plaintiffs allege that the plume lies directly beneath 3,294 single-family homes and townhomes. ECF No. 175 at 3.



ECF No. 175 at 3, fn.3.

Plaintiffs' operative class action complaint asserts claims against Defendants for negligence, private nuisance, and trespass. ECF No. 91. Plaintiffs' complaint alleges that contamination at or above 1.2 µg/L in the groundwater has caused injury to the Class Area properties in the form of diminished property values and the need for mitigation against contaminated soil vapor. *Id*.

3

Defendants deny Plaintiffs' allegations and contend, among other things, that they are not responsible for any alleged contamination, that there is no evidence of any loss of property value in the Class Area, that there is no evidence of the presence of contamination from its alleged predecessors' operations in any homes—or any measurable risk that such contamination will ever be present in any homes—in the Class Area, and that there is no evidence of any need for mitigation measures at any property. Declaration in Support of Plaintiffs' Motion for Preliminary Settlement Approval ("Ellis Decl."), Exhibit 1, Class Action Settlement Agreement and Release, at 6. Defendants also assert that the plume of contaminated groundwater in the Class Area has been reduced and will continue to be reduced, and that Defendants' remediation and clean-up efforts have been successful on the Site and plume area. *Id*. Defendants have also asserted affirmative defenses, including that Plaintiffs filed their action too late. *Id*.

Plaintiffs' operative class action complaint excluded all personal injury, wrongful death, and medical monitoring claims. ECF No. 91. The Settlement explicitly addresses and does not release any personal injury, wrongful death, or medical monitoring claims. Ellis Decl., Exhibit 1 at 12.

**B. Procedural History**

Plaintiffs initiated this action on May 10, 2021. ECF No. 1. Thereafter, Plaintiffs filed two amended complaints, including the operative Second Amended Complaint on March 21, 2023. ECF Nos. 41 and 91. The class representative Plaintiffs are Jed Behar and Alisa Behar. ECF No. 348-1 at 2. The Plaintiffs have been plaintiffs in this action since it was initially filed, own a home situated within the Class Area, participated in extensive discovery, have sat for deposition, consented to defense testing of their home, attended trial, and prepared to testify at trial. *See* ECF Nos. 348-1 at 2, 175 at 2, 18, 238-1 at 12.

On July 1, 2024, the Court granted Plaintiffs' motion for class certification, establishing two classes: (1) a Mitigation Class, and (2) a Property Damage Class. ECF No. 175. Each class was comprised of "[a]ll persons who own a single family or townhome within the [Class Area] at the time of Class Certification[,]" excluding "employees of Defendants [Northrop Grumman Corporation and Northrop Grumman Systems Corporation] as well as anyone who purchased a home with disclosure of contamination at their property from the 8020 Deering Avenue Site." *Id*. at 16. After the April 2025 issuance of class notice, four of the 3,294 class members elected to opt out. ECF No. 262 at 1.

As part of formal discovery, Defendants produced, and Plaintiffs processed and reviewed over three million pages of documents related to site history, complex hydrogeologic analyses and testing related to contamination at the Site and in the Class Area, and vapor-intrusion testing in homes within the Class Area. Ellis Decl. at ¶ 3. Plaintiffs retained six testifying experts to offer opinions in this case: a hydrogeologist and geologist (Dr. Laton), vapor intrusion expert (Dr. Kram), toxicologist (Dr. Ryer-Powder), hydrogeologist and groundwater modeler (Dr. Tonkin), industrial historian (Dr. Gorman), and real estate economist (Dr. Boyle). These experts submitted reports and supplemental reports reflecting their opinions and sat for depositions. *Id*. at ¶ 4. Defendants retained a groundwater contamination expert, a vapor intrusion expert, an epidemiologist, a toxicologist, a health risks expert, two real estate damages experts, and a source of contamination and historical site operations expert that submitted reports and supplemental reports reflecting their opinions. *Id*. at ¶ 5. Plaintiffs took 10 fact and 13 expert depositions during the discovery process and defended against 15 depositions noticed by Defendants. *Id*. at ¶ 6.

Plaintiffs successfully opposed: a motion for summary judgment, (ECF Nos. 238, 296 (order)), motion to decertify the classes (ECF Nos. 246, 262, 302 (order)), and dual attempts to strike all six of Plaintiffs' experts. (ECF Nos. 133, 134, 143-145, 147, 150, 152, 154, 156, 159, 161, 175 (order), 240-245, 259-261, 263-266, 323 (order)). The parties also submitted, competing and/or joint, trial briefs, trial plans, witness and exhibits lists, motions *in limine*, proposed jury instructions, proposed verdict forms, proposed voir dire questions, statement of the case, and proposed final pretrial conference order. (See e.g., ECF Nos. 308-322, 332-348).

Trial commenced on March 24, 2026. ECF No. 393. Between commencement of trial and March 30, 2026, the parties gave opening statements, and four witnesses were sworn and testified. ECF Nos. 395, 396, and 401. On March 30, 2026, the Court held and continued trial. ECF No. 405. On April 2, 2026, a settlement was reached between the parties and placed on the record. ECF No. 406.

**C. Settlement Negotiations**

The Settlement is the culmination of extensive, arm's-length negotiations conducted over several years of active litigation. The Parties participated in an initial mediation on January 28, 2022, before Hon. Suzanne Segal, but were unable to reach resolution at that time. Ellis Decl. at ¶ 7. As litigation progressed

through discovery, class certification, and trial preparation, the Parties continued to evaluate their respective positions in light of the evolving factual record and legal rulings. *Id*. at ¶ 8.

A second, full-day, in-person mediation was conducted on October 1, 2025, before mediator Antonio Piazza. The parties were unable to reach resolution at that time but subsequently continued their settlement discussions both with and without Mr. Piazza. *Id*. at ¶ 9. These efforts ultimately resulted in an agreement in principle reached during trial, reflecting the Parties' informed assessment of the risks and uncertainties of continued litigation. *Id*. at ¶ 10.

The material terms of the Settlement were memorialized in a Memorandum of Understanding executed on March 30, 2026. *Id*. at ¶ 11. The Parties thereafter promptly finalized and executed a comprehensive Settlement Agreement on April 2, 2026. *Id*.

## III. MATERIAL TERMS OF THE SETTLEMENT

It is stipulated that subject matter jurisdiction over this action exists under 28 U.S.C. §§ 1332, 1367 (Class Action Fairness Act/Diversity of Citizenship and Supplemental Jurisdiction), and venue is proper in this District and this Division pursuant to 28 U.S.C. § 1391(b)(2).

### A.    The Settlement Class

The Settlement Agreement defines the Settlement Class as:

> all persons who own a single-family home or townhome within the Class Area as of the date of notice of the settlement, as well as all persons who owned a single-family home or townhome within the Class Area as of July 1, 2024, but who have since sold their single-family homes or townhomes as of the date of notice of the settlement, excluding employees of Defendants.

Ellis Decl., Exhibit 1 at 5.

### B.    The Settlement Fund

The Settlement Fund shall include a gross amount of Seventy-Five Million Dollars ($75,000,000.00), which is the total amount Defendants will be required to pay under the Settlement Agreement. The Settlement Fund will include the following elements: (i) payments to Settlement Class Members; (ii) Service Awards to Plaintiffs; (iii) Class Counsel's Attorneys' Fees and Costs; and (iv) Administrative Costs. Ellis Decl., Exhibit 1 at 8. No portion of the settlement fund will revert to Defendants. *Id.* at 7. Any Administrative Costs, Attorney's Fees and Costs, and Service Awards for Plaintiffs shall be deducted from the Settlement Fund. *Id*.

6

**C.        Allocation of Settlement Proceeds**

The "Net Settlement Proceeds" shall equal the Settlement Fund minus the total of (i) Court-approved Attorney's Fees and Costs; (ii) Court-approved Service Awards to Plaintiffs; and (iii) all Administrative Costs.

The Net Settlement Proceeds shall be distributed as follows:

1.        $100,000.00 shall be distributed equally among Settlement Class Members who owned a single-family home or townhome within the Class Area as of July 1, 2024, but who have since sold their single-family homes or townhomes as of the date of notice of the settlement, and who submit valid and timely claims;

2.        All remaining Net Settlement Proceeds shall be distributed as follows:

        i.        40% of the remaining Net Settlement Proceeds shall be distributed among Settlement Class Members who own single-family homes or townhomes as of the date of notice of the settlement within the Class Area which are contained within the "Area 1 (Priority Study Area)" or "Area 2 (Contingency Study Area)" (789 homes) as identified in the Revised Off-Property Vapor Intrusion Investigation Summary Report prepared by Geosyntec Consultants, dated July 16, 2020 (Trial Exhibit 396, at EX_396.0063), and who submit valid and timely claims.

        ii.        28% of the remaining Net Settlement Proceeds shall be distributed among Settlement Class Members who own single-family homes or townhomes as of the date of notice of the settlement within the Class Area west of Browns Canyon Wash, yet outside of "Area 1 (Priority Study Area)" or "Area 2 (Contingency Study Area)" (727 homes)[2] as identified in the Revised Off-Property Vapor Intrusion Investigation Summary Report prepared by Geosyntec Consultants, dated July 16, 2020 (Trial Exhibit 396, at EX_396.0063), and who submit valid and timely claims.

---

[2] In the Settlement Agreement the number of single-family homes or townhomes identified in subsections ii and iii were 809 and 1696, respectively. Upon further review, it was determined that some single-family homes or townhomes were inadvertently included with single-family homes or townhomes west of Browns Canyon Wash when they are east of Browns Canyon Wash.

7

iii.    32% of the remaining Net Settlement Proceeds shall be distributed among Settlement Class Members who own single-family homes or townhomes as of the date of notice of the settlement within the Class Area east of Browns Canyon Wash (1,778 homes), and who submit valid and timely claims.

Ellis Decl., Exhibit 1 at 9–10.

Settlement Class Members who intend to submit a claim must submit a written or electronic claim, along with proof of ownership, to the Class Administrator no later than 60 days after the postmark date of the Settlement Notice. Ellis Decl., Exhibit 1 at 17. To be valid, a written or electronic claim must include the Class Member's (i) name, (ii) address of property owned in the Class Area, (iii) mailing address, if different, (iv) phone number, (v) e-mail address, (vi) proof of ownership of a home in the Class Area as of July 1, 2024, or the date of the Settlement Notice, (vii) verification that they are not an employee of any Defendant, and (viii) signature. *Id*.

Proof of ownership may include (but is not limited to) a property deed, title insurance policy, mortgage statement, property tax statement, settlement/closing statement, homeowners insurance policy declaration page, certificate of title, government record evidencing ownership, or utility bills (e.g., water, electric, gas, sewer, or trash) listing the Settlement Class Member's address and showing that the Settlement Class Member owned the property in the Class Area as of July 1, 2024, or the date of the Settlement Notice. Ellis Decl., Exhibit 1 at 17.

Class Counsel will obtain a list of owner names and mailing addresses for Class Area homes from the Los Angeles County Assessor, and will provide that list to the Class Administrator. Ellis Decl. at ¶ 12. Proof of ownership will be subject to verification by the Class Administrator. The Class Administrator may request additional documentation if necessary to verify claims. Declaration in Support of Plaintiffs' Motion for Preliminary Settlement Approval ("Teichmiller Decl."), at ¶¶ 26–28.

For each claim form received, the Class Administrator will (i) confirm that the property address identified by the claimant is within the Class Area, (ii) review the documentary proof of ownership submitted with the Claim and Release Form, and (iii) cross-reference the claimant's name and property information against the Los Angeles County Assessor records and any other available data sources, as needed, including commercially available skip-tracing and identity-verification databases. *Id.* at ¶ 27.

Where the information submitted by the claimant matches the Assessor records, the Class Administrator will approve the claim for payment. *Id.* at ¶ 28. Where discrepancies appear, the Class Administrator will conduct additional review, which may include contacting the claimant for clarifying information or supplemental documentation. *Id.* The Class Administrator will use industry-standard procedures to identify and reject duplicate, fraudulent, or otherwise invalid claims, and will report to Class Counsel and Defense Counsel any claims that cannot be verified after reasonable effort. *Id.*

Only claims submitted to the Class Administrator will be accepted; claims submitted to a third party (e.g., a claims aggregator) will not be valid. Ellis Decl., Exhibit 1 at 18. The Class Administrator will take steps to contact a claimant whose claim has been received from any third party and explain how to submit a claim directly to the Class Administrator. *Id*. The Class Administrator will have discretion to accept claims made through a third party as timely even if the claim made directly to the Class Administrator comes after the claims deadline, provided the claim is made directly to the Class Administrator within thirty days of the claims deadline. *Id*.

### D.    Notice to Settlement Class

All Settlement Class Members will receive the Settlement Notice and Claim Form, substantially in the form attached, by regular U.S. Mail, postage prepaid, and supplemented with e-mail notice, if feasible. Ellis Decl., Exhibit 1 at 15; Teichmiller Decl. at Exhibit 3, Proposed Long Form Notice (English), Exhibit 4, Proposed Long Form Notice (Spanish), Exhibit 5, Claim Form (English and Spanish). A list of homeowner names and mailing addresses will be obtained from the Los Angeles County Assessor's Office and provided to the Claims Administrator. Ellis Decl. at ¶ 12. Prior to mailing, the Claims Administrator will process the names and mailing addresses through the national change of address ("NCOA") database compiled and maintained by the U.S. Postal Service ("USPS") and mail the Notice Package using the updated information. Teichmiller Decl. at ¶ 13. For any Notice Package returned by the USPS as undeliverable as addressed ("UAA") with a forwarding address, A.B. Data will promptly remail the Notice Package to the forwarding address. *Id*. For any UAA Notice Package returned with no forwarding address provided, A.B. Data will search for an updated address using a commercial, third-party information provider. *Id*. If an updated address is available, A.B. Data will promptly remail the Notice Package to the updated address. *Id*. If no current address is located, the Settlement Notice for that individual will be

9

deemed undeliverable. *Id*. To the extent available, A.B. Data will identify Settlement Class Members' email addresses and supplement mailing of the Notice Package by delivering it via email to all Settlement Class Members. *Id*. at ¶ 12.

The Settlement Notice will also be published in at least two local print periodicals whose circulation area includes the Class Area. Ellis Decl., Exhibit 1 at 15; Teichmiller Decl. at ¶ 14 and Exhibit 6 (Short Form Notice). Geographically targeted social media and web advertising shall also be used to inform potential class members about the settlement and provide a link to the class settlement website. *Id*.; Teichmiller Decl. at ¶ 15.

The long form Settlement Notice will be provided in English and Spanish and include, at a minimum: (i) the estimated amount the Class Member can expect to receive or a range of amounts based on the plan of allocation described above, with an explicit disclaimer that the amounts are estimates only (unless making an estimate is impracticable given the uncertainty about the number of Class Members who will submit valid claims); (ii) information informing Settlement Class Members of their right to object or opt out; (iii) a statement that the Settlement Agreement will have preclusive effect and that participation in the Settlement shall result in a release of Released Claims; and (iv) notification that Settlement Class Members are solely responsible for determining tax consequences of payments made pursuant to the Settlement Agreement. Ellis Decl., Exhibit 1 at 15–16.

A website shall be created and maintained and include links to the Settlement Notice, Second Amended Complaint, the Proposed Final Pretrial Conference Order, Motions for Preliminary and Final Approval, and Motion for Attorney's Fees and Costs as they become available, until the Effective Date. Ellis Decl., Exhibit 1 at 16. The website shall permit Settlement Class Members to file claims electronically. *Id*.; Teichmiller Decl. at ¶ 17. The website shall also include links to any other documents or information the Class Administrator deems necessary to perform its duties. Ellis Decl., Exhibit 1 at 16. The Motion for Attorney's Fees and any related filings shall be made available on the website for a reasonable period of time of no less than 20 days before the deadline for class members to file an objection to the Settlement Agreement. *Id*.

The Class Administrator shall also maintain a toll-free telephone number equipped with an automated interactive voice response system that presents callers with a series of choices to hear

prerecorded information. If callers need further help, they may leave a voicemail message, and their call will be returned. Teichmiller Decl. at ¶ 17

### E.    Opt-Out Procedures

The Settlement Notice will inform Settlement Class Members of their right to opt out of the Settlement Class and be excluded from receiving any benefits for the Released Claims under the Settlement Agreement. Ellis Decl., Exhibit 1 at 16. Individuals seeking to opt out may mail a written opt-out request to the Class Administrator no later than 45 days after the postmark date of the Settlement Notice. *Id.* Any member of the Settlement Class who submits a timely and valid request to opt out will receive no settlement payment for the Released Claims and will not be bound by the terms of the Settlement Agreement nor have any right to object to, appeal from, or comment on it. *Id.* Late-submitted opt-out requests will not be accepted by the Class Administrator and shall not be effective. *Id.* The Class Administrator will certify jointly to Class Counsel and Defense Counsel which requests to opt out were valid and timely submitted. *Id.*

### F.    Objection Process

Any Settlement Class Member who intends to object to the class settlement must submit a written objection, along with any supporting documents, to the Court no later than 45 days after the postmark date of the Settlement Notice by mailing it to or filing it with the Court. Ellis Decl., Exhibit 1 at 18. The written objection must set forth, in clear and concise terms, the legal and factual arguments supporting the objection and be signed by the objecting Settlement Class Member. *Id.*

Settlement Class Members who fail to make objections in the manner specified above shall be deemed to have waived any and all objections and shall be foreclosed from making any objection, whether by appeal or otherwise, to the settlement or this Settlement Agreement. *Id.* The postmark will be deemed the exclusive means for determining that the Notice of Objection is timely. *Id.*

Settlement Class Members who timely submit a written objection have the option to appear at the Final Approval Hearing, either in person or through their own counsel. *Id.* To appear, Class Members must include a statement about the intent to appear at the Final Approval Hearing ("Notice of Intention to Appear") in the objection. *Id.* No member of the Settlement Class shall be entitled to be heard at the Final Approval Hearing unless the Class Member submits the Notice of Intention to Appear, without permission

11

of the Court. *Id.* The Notice of Intention to Appear must include copies of any papers, exhibits, or other evidence that the objecting Settlement Class Member will present to the Court in connection with the Final Approval Hearing. Class Counsel and Defense Counsel shall file any response(s) to any objections to the Settlement Agreement no later than 14 days before the Final Approval Hearing. *Id.*

### G.    Release of Claims

This case will be finally and fully compromised, released, resolved, discharged, and settled, and will be dismissed with prejudice as to Defendants and the Released Parties. Ellis Decl., Exhibit 1 at 5.

In exchange for the payments by Defendants, as described above, upon the Effective Date, the Settlement Class Members, including Plaintiffs (who shall not opt out), shall fully release and discharge the Released Parties from any and all claims, judgments, liens, losses, debts, liabilities, demands, obligations, guarantees, penalties, costs, expenses, attorneys' fees, damages, indemnities, actions, causes of action, and obligations of every kind and nature in law, equity or otherwise, known or unknown, suspected or unsuspected, foreseen or unforeseen, developed or undeveloped, disclosed or undisclosed, contingent or accrued, liquidated or unliquidated, arising under common law, regulatory law, statutory law, or otherwise, whether based on federal, state or local law, statute, ordinance, regulation, code, contract, common law, or any other source, or any claim that Plaintiffs and Settlement Class Members ever had, now have, may have, or hereafter can, shall, or may ever have against the Released Parties for property damage or Mitigation Measures that arise out of or relate to the facts alleged in the Second Amended Complaint (ECF No. 91) or Section VII of the Proposed Final Pretrial Conference Order (ECF No. 348-1 at 10–20) ("Released Claims"). Ellis Decl., Exhibit 1 at 11–12. Released Claims include any unknown claims for property damage or Mitigation Measures that Settlement Class Members do not know or suspect to exist in their favor, which, if known by them, might have affected this Settlement Agreement with Defendants and this release of Released Parties. *Id*.; see also *id*. at 12 "Released Claims include known or unknown claims for property damage or Mitigation Measures and this Settlement Agreement is expressly intended to cover and include all such injuries or damages, including all rights of action thereunder.").

The releasing language shall not apply to claims based on an alleged personal injury, wrongful death, or claims for medical monitoring. Ellis Decl., Exhibit 1 at 12.

12

Plaintiffs and Settlement Class Members expressly, knowingly, and voluntarily waive, Section 1542 of the California Civil Code ("Section 1542")[3], any and all rights and benefits that they may have under, or that may be conferred upon them by, the provisions of Section 1542, or any other law of any state or territory that is similar, comparable or equivalent to Section 1542, to the fullest extent they may lawfully waive such rights or benefits pertaining to the Released Claims. Ellis Decl., Exhibit 1 at 12. Each Settlement Class Member will expressly acknowledge that he, she, or it has had an opportunity to seek the advice of Class Counsel or other counsel about the contents and effect of Section 1542 and will, with knowledge, expressly waive whatever benefits they may have had under Section 1542. *Id*.

The Parties intend that the Settlement Agreement shall be binding on Plaintiffs and all Settlement Class Members, whether or not they actually submit a valid claim and receive a payment pursuant to this Settlement Agreement. Ellis Decl., Exhibit 1 at 13. The Settlement Agreement shall constitute, and may be pleaded as, a complete and total defense to any Released Claims if raised in the future. *Id*.

Defendants reserve the right to contend that any applicable statutes of limitations or repose have been running and will continue to run on any claim that is not alleged in the Second Amended Complaint or that has been abandoned or waived through stipulations in this Action; Defendants also reserve the right to contend that no such claims will relate back to the filing of any of the pleadings in this Action. Ellis Decl., Exhibit 1 at 13–14.

### H.    Service Awards

Class Counsel and Plaintiffs intend to apply to the Court for Service Awards for Plaintiffs, in the amount of no more than Thirty Thousand Dollars ($30,000.00) per Plaintiff. Ellis Decl., Exhibit 1 at 8. Such request shall be filed concurrently with Class Counsel's request for Attorneys' Fees, Costs, and Expenses.

### I.    Attorney's Fees and Costs

Class Counsel intends to request an award of attorney's fees of up to forty percent (40%) of the Settlement Fund to compensate Class Counsel for fees incurred for work already performed in the Action, and the work remaining to be performed in documenting the Settlement Agreement, securing Court

---

[3] "A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party." Cal. Civ. Code. § 1542.

13

approval of the Settlement Agreement, administering the Settlement Agreement, and obtaining dismissal of the Action with prejudice. Ellis Decl., Exhibit 1 at 8. Class Counsel also intends to request an award of reasonable costs and expenses as will be submitted to the Court to be paid out of the Settlement Fund (together with attorney's fees, "Attorney's Fees and Costs"). *Id*.

Defendants may object to Class Counsel's request for Attorney's Fees and Costs. *Id*. The exact amount awarded to Class Counsel shall be subject to approval of the Court or, if there is any appeal, the court of appeals or the United States Supreme Court. In the event of an appeal, Class Counsel intends to request an award of Attorney's Fees of up to forty-five percent (45%) of the Settlement Fund to compensate Class Counsel for fees incurred for anticipated additional work of defending against any appeals. *Id*. Class Counsel further intends to request costs and expenses be awarded out of the Settlement Fund associated with any appeal. *Id*.

Class Counsel will apply for Attorney's Fees and Costs to the Court for approval at least 20 days before the deadline for class members to file an objection to the settlement and no later than a date to be set by the Court. Ellis Decl., Exhibit 1 at 8. The Parties agree that, over and above the total amount of the Court-approved Attorney's Fees and Costs awarded in the Action, each of the Parties, including all persons eligible to be Settlement Class Members, shall bear their own fees and costs relative to the investigation, filing, prosecution or settlement of the Action, the negotiation, execution, or implementation of this Settlement Agreement, and/or the process of obtaining, administering, or challenging a class-certification order and/or Final Approval. *Id*. at 8–9.

**J.       Class Administrator**

The parties respectfully request this Court appoint A.B. Data, Ltd. as class administrator. In accordance with Section 4(d) of the Settlement Agreement, Class Counsel solicited competitive bids from six qualified class action administrators with substantial experience administering environmental property-damage class action settlements, and provided those bids to Defense Counsel for review. Ellis Decl., Exhibit 1 at 7. After evaluating the bids and the qualifications of each candidate, A.B. Data, Ltd. was selected to serve as Class Administrator. A.B. Data's bid for anticipated costs of administration fell below the median of the bids received, and A.B. Data has an extensive track record administering complex

14

class action settlements, including environmental settlements of comparable size and complexity. Ellis Decl., at ¶ 11.

More specifically, A.B. Data, Ltd. has been appointed as notice, claims, and/or settlement administrator in hundreds of class actions and designed, implemented, and coordinated some of the largest and most complex class action notice and administration plans in the country. Teichmiller Decl. at ¶ 3. A.B. Data's work includes notification, claims processing, and distribution plans in all types of class actions, including environmental/contamination and property damage matters, consumer, antitrust, employment, civil rights, insurance, wage and hour, securities, ERISA, and other class actions (see e.g., *Meeker v. Bullseye Glass Co.*, No. 2:16-CV-01174-MAH (Multnomah Cty. Cir. Court, Oregon); *Resendez, et al. v. Precision Castparts Corp. and PCC Structurals, Inc.*, No. 16-CV-16164 (Multnomah Cty. Cir. Court, Oregon)). *Id*. at ¶ 4.

A.B. Data has successfully designed and implemented multi-faceted media notice plans utilizing digital media, social media, and print media. *Id*. at ¶ 5. A.B. Data's digital media experts have certifications, including: Google Ads Display Certification, Google Ads Search Certification, Google Analytics Certification, Facebook Certification, IAB[4] Digital Media Buying & Planning Certification, IAB Digital Media Sales Certification, and Hootsuite Social Marketing Certification. *Id*. at ¶ 5.

A.B. Data is committed to protecting the confidentiality, integrity, and availability of personal identifying and other information that it collects, and requires that its employees, subcontractors, consultants, service providers, and other persons and entities it retains to assist in distributions do the same. *Id*. at ¶ 6. A.B. Data has developed an Information Security Policy, a suite of policies and procedures intended to cover all information security issues and bases for A. B. Data, and all of its divisions, departments, employees, vendors, and clients. *Id*. at ¶ 7. A.B. Data has a high number of high-profile clients, frequently subjecting it to physical, logical, data, and information systems security reviews and audits, and has been determined to be compliant with ISO/IEC 27001/2 and Payment Card Industry (PCI) data security standards, the Gramm-Leach-Bliley (GLB) Act of 1999, the National Association of Insurance Commissioners (NAIC) Regulations, the Health Insurance Portability and Accountability Act

---

[4] The Interactive Advertising Bureau is an American advertising business organization that develops industry standards, conducts research, and provides legal support for the online advertising industry.

15

(HIPPA) of 1996, and the Health Information Technology for Economic and Clinical Health Act (HITECH). *Id*. at ¶ 8.

Integral parts of A.B. Data's claims administration process and fraud detection and prevention efforts include: quality assurance review, quality control review, comprehensive proprietary fraud detection and prevention procedures and databases to prevent payment of allegedly fraudulent claims, providing the highest level of security and customization of security procedures, maintaining records of all class member inquiries, investigating and resolving undelivered material, monitoring outstanding and cleared checks, and maintaining mailing and financial databases for an agreed-upon period. *Id*. at ¶ 9.

### K.    Timing and Manner of Payments

Defendants shall not have any obligation to fund the Settlement Fund until after the Effective Date. *See infra*, § VIII. The Class Administrator shall set up the qualified settlement fund and provide wire instructions to Defendants. Ellis Decl., Exhibit 1 at 19; Teichmiller Decl. at ¶ 29. Within 30 days of the Effective Date, Defendants will wire the Settlement Fund Seventy-Five Million Dollars ($75,000,000.00) to fund the Settlement to the Class Administrator, which shall be deposited by the Class Administrator into a qualified settlement fund established pursuant to Internal Revenue Code §1.468B-1. Ellis Decl., Exhibit 1 at 19. These funds shall be under the exclusive control of the Class Administrator and shall be used solely for the purpose of fulfilling the terms of the Settlement Agreement. *Id*. Any interest with respect to the Settlement Fund shall accrue to the benefit of the Settlement Class Members. *Id*. The monetary relief to the Settlement Class Members, all fees and expenses of the Class Administrator, and any and all taxes arising out of any interest or other income derived from the Settlement Fund shall be paid from the Settlement Fund. *Id*.

The Class Administrator shall take all reasonable efforts to make payments from the Settlement Fund within 45 days after the Effective Date. *Id*.; Teichmiller Decl. at ¶ 30. The Class Administrator will send individual checks by certified mail to the address on file with the Class Administrator. Ellis Decl., Exhibit 1 at 19; Teichmiller Decl. at ¶ 30. There will be only one payment per single-family home or townhome in the Class Area, regardless of the number of owners (except in the case of single-family homes or townhomes that were sold after July 1, 2024). Ellis Decl., Exhibit 1 at 19.

Checks sent to Settlement Class Members shall remain valid and negotiable for 180 days from the

date of their mailing, and thereafter may be automatically canceled if not cashed by the payee within that time. Ellis Decl., Exhibit 1 at 20. The Class Administrator will provide notice to Plaintiffs' Counsel of any uncashed checks and the Class Administrator shall have responsibility to attempt to locate the impacted Class Members and re-issue checks with an expiration date 90 days following the re-issuing of the checks. *Id*. In the event any Settlement Class Member(s) cannot be located within 180 days of the expiration of the initial settlement checks, uncashed settlement check(s) will be redistributed equally amongst the Participating Settlement Class Members who timely cashed their checks during the initial distribution. *Id*. There will only be one redistribution. If additional funds remain after the redistribution, the Court shall designate an appropriate *cy pres* beneficiary for the remaining funds. *Id*.

## IV.    THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL

### A.    Legal Standard for Preliminary Approval

"The claims, issues, or defenses of a certified class … may be settled … only with the court's approval." Fed. R. Civ. P. 23(e). While a purpose of Rule 23(e) is "to protect the unnamed members of the class from unjust or unfair settlements affecting their rights," (*In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008)), the Ninth Circuit "has long deferred to the private consensual decision of the parties." *Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 323 (C.D. Cal. 2016) (quoting *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009)). The Ninth Circuit has stressed that

> the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiation parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned.

*Id*.

"Approval of a class action settlement requires a two-step process – preliminary approval and the dissemination of notice to the class, followed by a later final approval." *Ruffulo v. Farmers Ins. Exch.*, No. CV 23-1796 FMO (MAAX), 2026 WL 64106, *4 (C.D. Cal. Jan. 5, 2026) (internal citation omitted). "The standard for preliminary approval was codified in 2018, with Rule 23 now providing for notice to the class upon the parties' showing that the court will likely be able to approve the proposed settlement

17

under the final-approval standard contained in Rule 23(e)(2)." *Id.* (quoting *Macy v. GC Servs. Ltd. P'ship*, 2019 WL 6684522, *1 (W.D. Ky. 2019)).

At the preliminary approval stage, "the court may grant preliminary approval of a settlement and direct notice to the class if the settlement: (1) appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not improperly grant preferential treatment to class representatives or segments of the class; and (4) falls within the range of possible approval." *Ruffulo*, 2026 WL 64106, *4 (internal quotation omitted); *Uschold v. NSMG Shared Serv., LLC*, 333 F.R.D. 157, 169 (N.D. Cal. 2019). "The Ninth Circuit does not follow the approach of other circuits that requires district courts to 'specifically weigh the merits of the class's case against the settlement amount and quantify the expected value of fully litigating the matter.'" *Spann*, 314 F.R.D. at 323–24 (quoting *Rodriguez*, 563 F.3d at 965). Rather, courts in the Ninth Circuit examine "whether the settlement is 'the product of an arms-length, non-collusive, negotiated resolution.'" *Id*. at 324 (alterations omitted). "When it is, courts afford the parties the presumption that the settlement is fair and reasonable." *Id*. (citing *In re Heritage Bond Litig.*, 2005 WL 1594403, *9 (C.D. Cal. June 10, 2005) ("A presumption of correctness is said to attach to class settlement reached in arm's-length negotiations between experienced capable counsel after meaningful discovery.").

Importantly, "[i]f the court has already certified a class, the only information ordinarily necessary is whether the proposed settlement calls for any change in the class certified, or of the claims, defenses, or issues regarding which certification was granted." 2018 Adv. Comm. Notes to Rule 23(e)(1) Amendments.

Although each settlement is different, the parties should also be prepared to provide the court with information on the following:

(1) "the extent and type of benefits that the settlement will confer on the members of the class" and if "funds are ... left unclaimed, the settlement agreement ordinarily should address the distribution of those funds";

(2) "information about the likely range of litigated outcomes, and about the risks that might attend full litigation";

(3) "[i]nformation about the extent of discovery completed in the litigation or in parallel actions";

18

(4) "information about the existence of other pending or anticipated litigation on behalf of class members involving claims that would be released under the proposal";

(5) "[t]he proposed handling of an award of attorney's fees under Rule 23(h)";

(6) "any agreement that must be identified under Rule 23(e)(3)"; and

(7) "any other topic that [the parties] regard as pertinent to the determination whether the proposal is fair, reasonable, and adequate."

*Ruffulo*, 2026 WL 64106, *4 (quoting 2018 Adv. Comm. Notes to Rule 23(e)(1) Amendments).

### B.    The Settlement Satisfies Rule 23(e)(2)

#### 1.    Rule 23(e)(2)(A)-(B): The settlement is the product of arm's-length negotiations by adequately informed counsel

The proposed Settlement is the result of extensive, arm's-length negotiations following more than five years of hard-fought litigation. *Supra*, § II.B-C. During that time, the Parties engaged in substantial motion practice, fact and expert discovery, and ultimately proceeded to trial. *Id*. By the time the settlement was reached, both sides had completed fact and expert discovery, the factual record was being presented to the jury, and Class Counsel had access to all information necessary to evaluate the strengths and weaknesses of the claims. *Id*. The Settlement was reached during trial, after the Parties had developed the factual record and tested their respective claims and defenses before the Court and presented their claims and defenses before two different mediators. *Id*.

Further, the Settlement explicitly provides that the "Parties do not agree on what has been called a 'Clear-Sailing Provision,'" and that, "[t]o the contrary, Defendants reserve their right to oppose any application for Attorney's Fees and Costs." Ellis Decl., Exhibit 1 at 9. The Settlement also provides that it is a "non-reversionary settlement in which Defendants are required to pay the entire Settlement Fund" and "[n]o portion of the Settlement Fund will revert to Defendants." *Id*. at 7. Should uncashed settlement check(s) exist, one redistribution of same "will be redistributed equally amongst the Participating Settlement Class Members who timely chased their checks during the initial distribution." *Id*. at 20. "If additional funds remain after redistribution," the Settlement provides for the Court to "designate an appropriate *cy pres* beneficiary for the remaining funds." *Id*. Accordingly, the proposed Settlement is the product of serious, informed, and non-collusive negotiations, consistent with Rule 23(e). See *In re*

19

*Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011) (setting forth "subtle signs" of collusion).

Throughout the litigation, the class members were adequately represented by counsel with extensive experience in class action litigation, specifically including environmental litigation. Ellis Decl. at ¶ 13. Christopher Nidel, an attorney and M.I.T.-educated chemical engineer, has also served as lead counsel in several other environmental and class action cases. *Id*. at ¶ 14. Mark Lanier, and attorneys at The Lanier Law Firm have served as class counsel in numerous consumer and environmental class actions. *Id*. at ¶ 15. David Page has represented both plaintiffs and defendants in environmental litigation for over 40 years. *Id*. at ¶ 16. Gideon Kracov has extensive experience with environmental litigation and regulatory practice. *Id*. at ¶ 17. Plaintiffs' counsel has vigorously litigated the claims made in this case for nearly five years, reviewing millions of pages of documents, coordinating six experts, taking almost 30 depositions to date, defeating multiple motions to dismiss and motions to strike Plaintiffs' experts or decertify the class, preparing for trial, picking a jury, and commencing trial. *Supra*, § II.B.

The class members were also adequately represented by class-representative Plaintiffs, Jed Behar and Alisa Behar. *Id*. The Plaintiffs have been plaintiffs in this action since it was initially filed, own a home situated in the Class Area, participated in extensive discovery, have sat for deposition, consented to defense testing of their home, attended trial, and prepared to testify at trial. *Id*.

> 2.    Rule 23(e)(2)(C): Relief is adequate in light of litigation risks and costs, the effectiveness of the method of distributing relief, and the proposed award of fees

This settlement was reached with the understanding that Plaintiffs still had uncertainty relating to liability and the amount of recovery as a jury verdict had not yet been reached. *Supra*, § II.B-C. Additionally, Defendants had a statute of limitations affirmative defense and other affirmative defenses that could have provided a complete bar to class member recovery. *Supra*, § II.A.  Plaintiffs also faced a risk of any verdict being overturned on post-trial motions and appeal, as well as the costs associated with any post-trial motions or appeal. The Settlement reflects those outstanding risks as well as the continued cost of litigation through appeal. Ellis Decl., Exhibit 1 at 6.

The settlement agreement provides that, within 30 days of the Court granting preliminary approval, Class Counsel will provide the Class Administrator with a confidential class list to send notice to all class

members by U.S. Mail, supplemented with e-mail if feasible. Ellis Decl., Exhibit 1 at 14–15. The Class Administrator will then use a computer search method to locate the current address of any Settlement Notice returned undelivered without a forwarding address. *Id.* at 15.

Under the settlement agreement, checks sent to class members shall remain valid for 180 days from the date of mailing and thereafter may be automatically canceled if not cashed by that time. *Id.* at 20. The Class Administrator will provide notice to Plaintiffs' Counsel of any uncashed checks and the Class Administrator shall have responsibility to attempt to locate the impacted Class Members and re-issue checks with an expiration date 90 days following the re-issuing of the checks. *Id.* In the event any Settlement Class Member(s) cannot be located within 180 days of the expiration of the initial settlement checks, uncashed settlement check(s) will be redistributed equally amongst the Participating Settlement Class Members who timely cashed their checks during the initial distribution. *Id.* There will only be one redistribution. *Id.* If additional funds remain after the redistribution, the Court shall designate an appropriate *cy pres* beneficiary for the remaining funds. *Id.*

Plaintiffs' counsel intend to request attorney's fees of up to forty percent of the settlement fund to compensate class counsel for the work conducted in this complex case during five years of highly technical litigation, including the financial risk taken by Class Counsel in carrying millions in costs pending resolution of Plaintiffs' claims. *Id.* at 8. Plaintiffs will separately move for approval of their fee and reimbursement of costs before the final approval hearing and Defendants reserve the right to oppose any application for Attorney's Fees and Costs. *Id.* at 9.

Consistent with Rule 23(e)(3)(C)(iv), there are no agreements under Rule 23(e)(3) to identify.

The release is limited to alleged property value diminution and mitigation measures and expressly excludes personal injury, wrongful death, and medical monitoring claims. Ellis Decl., Exhibit 1 at 11–14. The Parties are not currently aware of any pending parallel litigation related to the claims to be released in this Settlement.

3.    <u>Rule 23(e)(2)(D): Class members are treated equitably relative to each other</u>

The Settlement allocates recovery to each property owner within defined zones overlying the TCE groundwater plume. Those zones are not arbitrary; they are derived from decades of groundwater sampling and have been contoured based on measured concentrations and the known extent of the TCE plume. By

tying compensation to empirically established plume conditions, the Settlement ensures that relief is distributed in a manner that reasonably reflects relative potential exposure and associated potential property impacts.

Differences in payment are based on proximity to the source of the contamination and the location of the plume. The plan of allocation is consistent with the Plaintiffs' property-diminution-damage model developed by their real estate economist Dr. Boyle. That model indicated that homes closest to the location where the contamination was released (8020 Deering Ave.) would suffer more property-value diminution than homes further away. ECF Nos. 119-1 at 1, 150 at 15, 259 at 11.  The allocation shall occur as follows:

*First*, $100,000.00 shall be distributed equally among Settlement Class Members who owned a single-family home or townhome within the Class Area as of July 1, 2024, but who have since sold their single-family homes or townhomes as of the date of notice of the settlement, and who submit valid and timely claims. *Supra*, § III.C.

*Second*, all remaining net settlement proceeds shall be distributed as follows:

- **Sub-Area A:** 40% of the remaining Net Settlement Proceeds shall be distributed among Settlement Class Members who own homes as of the date of notice of the settlement within the Class Area which are contained within the "Area 1 (Priority Study Area)" or "Area 2 (Contingency Study Area)" (789 homes) as identified in the Revised Off-Property Vapor Intrusion Investigation Summary Report prepared by Geosyntec Consultants, dated July 16, 2020 (Trial Exhibit 396, at EX_396.0063), and who submit valid and timely claims.

- **Sub-Area B:** 28% of the remaining Net Settlement Proceeds shall be distributed among Settlement Class Members who own homes as of the date of notice of the settlement within the Class Area west of Browns Canyon Wash, yet outside of "Area 1 (Priority Study Area)" or "Area 2 (Contingency Study Area)" (727 homes) as identified in the Revised Off-Property Vapor Intrusion Investigation Summary Report prepared by Geosyntec Consultants, dated July 16, 2020 (Trial Exhibit 396, at EX_396.0063), and who submit valid and timely claims.

- **Sub-Area C:** 32% of the remaining Net Settlement Proceeds shall be distributed among Settlement Class Members who own homes as of the date of notice of the settlement within

the Class Area east of Browns Canyon Wash (1,778 homes), and who submit valid and timely claims.

*Supra*, § III.C. The following map depicts the settlement zones:



Map of Settlement Zones. Ellis Decl., Exhibit 2.

Based on conservative estimates[5] and assumptions about administrative costs, attorneys' fees and costs, service awards, and the number of Settlement Class Members who submit valid Claim Forms, Class Counsel estimates that each eligible property will entitle its owner(s) to a total payment in the following approximate values:

- Sub-Area A: $21,000 per eligible home.
- Sub-Area B: $16,000 per eligible home.

---

[5] These per-home payment estimates conservatively assume that: (1) 100% of eligible Class Members submit valid claims; (2) the Court approves an attorneys' fee award of 40% of the settlement fund; (3) the Court approves reimbursement of costs and expenses of up to $3 million; (4) the Court approves Class Representative Service Awards of $30,000 each for Jed and Alisa Behar; and (5) Settlement Administration expenses total $200,000. For the purpose of these estimates, the total number of homes previously owned by Former Owner class members is estimated to be 225.

- Sub-Area C: $7,500 per eligible home.
- Former Owners (sold after July 1, 2024): $445 per eligible home.

These figures are estimates only. The actual amount of any payment will depend on the Court's award of attorneys' fees and costs, the Court's award of service awards, the costs of settlement administration, and the number of Settlement Class Members who submit timely and valid Claim Forms. Final amounts may be more or less than these estimates.

Plaintiffs intend to apply for a class representative service award of no more than $30,000 each. Ellis Decl., Exhibit 1 at 8. This amount is appropriate given Plaintiffs' work over five years of litigation as they remained class members from filing through trial, participated in extensive discovery, have sat for depositions, consented to defense testing of their home, attended trial, and prepared to testify at trial.

4.     The Settlement also satisfies the Ninth Circuit's supplemental preliminary approval factors.

The Settlement independently satisfies the Ninth Circuit's supplemental preliminary approval factors, confirming that the recovery falls well within the range of possible final approval. The recovery for current class members, even assuming a 100% participation rate, is approximately $21,000 per home for Sub-Area A, $16,000 per home for Sub-Area B, and $7,500 per home for Sub-Area C. The recovery for class members who owned a single-family home or townhome within the Class Area as of July 1, 2024, but who have since sold their single-family homes or townhomes as of the date of notice of the settlement, even assuming a 100% participation rate, is approximately $445 per home. In the event the actual participation rate is less than 100%, these figures are expected to increase.

Courts have approved class settlements in TCE-contamination cases providing far lower per-capita recovery. For instance, in *Cox v. Ametek, Inc.*, No. 317CV00597GPCAGS, 2020 WL 7353425, at *6 (S.D. Cal. Dec. 15, 2020), the court approved a $3.5 million settlement for a much larger class of 7,000 members, amounting to roughly $300 per member even though the settlement released both medical monitoring and property related mitigation measures. Here, the class settlement does not release any medical claims and provides a substantially greater per-property recovery.

Additionally, *Mejdrech v. Lockformer Co.*, No. 01-cv-6107 (N.D. Ill. 2004) involved TCE contamination of class members' soil and drinking water and resolved in a settlement of $17 million. *Westlaw: Fed. Court Approves $17 Million Settlement in TCE Case*, 25 No. ANENVLR 4, 2004 WL

24

2254894, at *1. The settlement involved approved $14.9 million in cash and another $2 million to connect class members to a municipal water system and reimburse class members who had already paid to connect to the municipal water system. *Id.* The settlement involved a class of 1,400 property owners. *Mejdrech v. Lockformer Co.*, No. 01-cv-6107 Doc. 238 (N.D. Ill. July 20, 2012). The per capita recovery in *Mejdrech* of approximately $12,142 is in line with the low-end estimated recovery in this settlement.

The class members' recovery is within the range provided in other TCE property-damage cases.

Accordingly, the Settlement warrants preliminary approval. *Ruffulo*, 2026 WL 64106, *4; *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) (providing factors for the district court to balance in assessing a settlement proposal); *Churchill Villages, LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (same).

## V.    THE SETTLEMENT CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES.

### A.    Legal Standard for Settlement Class Certification.

For settlement purposes only, Plaintiffs request the Court provisionally certify the Settlement Class, which satisfies all Rule 23(a) and (b)(3) requirements. Under the Rule, a class action may be maintained where the movants demonstrate numerosity, commonality, typicality, and adequacy of representation. When evaluating a settlement class, manageability is no longer a concern because there will be no trial. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). And when a court has already certified a class as it has here, "the only information ordinarily necessary is whether the proposed settlement calls for any change in the class certified, or of the claims, defenses, or issues regarding which certification was granted." Fed. R. Civ. P. 23(e)(1), 2018 Advisory Committee's Notes; *see also In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 944 n.6 (9th Cir. 2015) (noting that heightened scrutiny does not apply where settlement negotiations came after certification of a litigation class). "The ultimate decision to certify the class for purposes of settlement cannot be made until the hearing on final approval of the proposed settlement." Fed. R. Civ. P. 23(e)(1), 2018 Advisory Committee's Notes.

### B.    This Court Should Certify the Settlement Class.

The Court has already conducted the full Rule 23 analysis on the merits. On July 1, 2024, this Court certified both a Mitigation Class and a Property Damage Class comprised of "[a]ll persons who own

a single family or townhome within the PCA at the time of Class Certification," finding each Rule 23(a) and (b)(3) requirement satisfied. ECF No. 175. The Court reaffirmed those findings when it denied Defendants' motion to decertify. ECF No. 302. After class notice issued, only four of the 3,294 class members opted out.  ECF No. 262 at 1.

The Settlement Class is defined in the Settlement Agreement as "all persons who own a single-family home or townhome within the Class Area as of the date of notice of the settlement, as well as all persons who owned a single-family home or townhome within the Class Area as of July 1, 2024, but who have since sold their single-family homes or townhomes as of the date of notice of the settlement, excluding employees of Defendants." Ellis Decl., Exhibit 1 at 5. The Settlement Class encompasses substantially the same population of property owners the Court has already certified. *Compare* Ellis Decl., Exhibit 1 at 5, *with* ECF No. 175 at 16. The Settlement Class makes only two administrative adjustments to the certified definition: (i) it consolidates the previously certified Mitigation Class and Property Damage Class into a single Settlement Class; and (ii) it moves the membership cutoff from the date of certification to the date of settlement notice, with persons who owned a home in the Class Area on July 1, 2024 (the date of certification) but who sold before the notice date expressly included to ensure every owner during the relevant period is captured. Neither change disturbs this Court's prior Rule 23 findings, and so the Rule 23(a) and (b)(3) requirements remain satisfied as to the Settlement Class.[6]

### 1.    Numerosity

Rule 23(a)(1) requires that a class be sufficiently numerous such that it would be impracticable to join all members individually. Here, approximately 3,294 current and former homeowners fall within the Settlement Class. ECF No. 175 at 3. Thus, joinder of this number of claimants "would undoubtedly be prohibitively difficult." ECF No. 175 at 16; *see also Rannis v. Recchia*, 380 F. Appx. 646, 651 (9th Cir.

---

[6] "[C]ourts have generally certified settlement classes broader than the previously-certified litigation classes . . . ." *In re TFT-LCD (Flat Panel) Antitrust Litig.,* No. M 07-1827 SI, 2011 WL 13152270, at *9 (N.D. Cal. Aug. 24, 2011); *see In re Initial Pub. Offering Sec. Litig.*, 226 F.R.D. 186, 190 (S.D.N.Y. 2005) ("because manageability of the class action at trial is not considered when approving a settlement class, a court may approve a settlement class broader than a litigation class that has already been certified."); *In re MicroStrategy, Inc. Sec. Litig.*, 148 F.Supp. 2d 654, 661–62 (E.D. Va. 2001).

2010) (generally, the numerosity requirement is satisfied when a class includes "at least 40 members."), Fed. R. Civ. P. 23(a)(1).

### 2. Commonality

Rule 23(a)(2) requires that questions of law or fact be common to the class. "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).

Here, the commonality requirement is met because every Settlement Class member's claim turns on issues central to the validity of the claims, including (i) whether Litton's conduct at the Site caused TCE and PCE to be released and contaminate the groundwater; (ii) whether TCE contamination has caused injury to PCA properties in the form of financial damage; and (iii) whether exceedance of the TCE contamination threshold of 1.2 µg/L necessitates mitigation. ECF No. 175 at 17. The Settlement's consolidation of the Mitigation Class and Property Damage Class into a single Settlement Class only reinforces the commonality of the claims. The inclusion of "persons who owned a home in the Class Area on July 1, 2024 but who sold before the notice date" does not upend commonality since those persons have suffered the same damages as other class members, but have suffered a lesser amount having sold their homes in the Class Area. *See, supra,* § III.C.

### 3. Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Courts testing typicality ask "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same source of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (citation omitted).

Here, Plaintiffs Jed and Alisa Behar are typical of the Settlement Class members since this Court has already found they "have similar legal claims and share common economic injuries by owning a home situated above the groundwater plume that could be subject to diminished value as a result of the contamination." ECF 175 at 18.

#### 4. Adequacy of Representation

Rule 23(a)(4) requires that the representative party "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). A named plaintiff satisfies the adequacy test if she has no conflict of interest with other class members and if the named plaintiff will prosecute the action vigorously on behalf of the class. *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011).

This Court previously found Plaintiff and Class Counsel adequate. ECF No. 175. Plaintiffs have continued to vigorously prosecute the case through trial. Class Counsel have prosecuted the action vigorously for the class for nearly five years having defeated motions to dismiss, motions for summary judgment, decertification motions, and attempts to strike Plaintiffs' experts; presented a portion of the case to the jury; and remained free of any conflict. Fed. R. Civ. P. 23(a)(4). The Settlement's unified Class structure also eliminated any potential intra-class tension that might otherwise have existed between mitigation and property damage interests, because each Settlement Class Member is compensated from a single fund through objective, plume-derived geographical zones. *See, supra,* § III.C.

#### 5. Predominance

The Rule 23(b)(3) predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (citation omitted). While similar to commonality, the inquiry requires a heightened showing that facts and issues common to the class predominate over any individual issues that may be present. Fed. R. Civ. P. 23(b)(3); *Amchem Prods.*, 521 U.S. at 624.  And Plaintiffs are not required to prove each element of their claims is "susceptible to classwide proof." *Amgen, Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 469 (2013) (citation omitted).

Here, the Court has already found this requirement satisfied. ECF No. 175. And for settlement purposes, the changes to the class definition do not defeat predominance since the types of damages are the same as the already-certified classes.  And any individualized questions about the *amount* of damages that could arise have already been resolved through the Settlement's objective allocation formula. *See, supra,* § III.C (1), (specific provision for Settlement Class Members who owned a single-family home or townhome within the Class Area as of July 1, 2024, but who have since sold their single-family homes or townhomes as of the date of notice of the settlement, and who submit valid and timely claims).

28

6.    Superiority

"The purpose of the [Rule 23(b)(3)] superiority requirement is to assure that the class action is the most efficient and effective means of resolving the controversy." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (citation omitted). Here, individual Settlement Class Members likely have little interest in controlling separate actions, given the amount of damages any individual Settlement Class Member might recover compared to the substantial cost of litigating individual claims. Resolution by a single class proceeding is far superior to 3,294 individual actions. Fed. R. Civ. P. 23(b)(3), ECF No. 175 at 32.   Moreover, class treatment will achieve economies of scale, conserve judicial resources, and ensure consistent adjudication. *See* Fed. R. Civ. P. 23(b)(3); *Amchem*, 521 U.S. at 615–17 (discussing superiority requirement).  And of course, the manageability concerns that ordinarily inform the superiority inquiry are not implicated here because there is to be no trial. *Amchem,* 521 U.S. at 620.

Thus, because the Settlement Class meets Rule 23(a) and (b)(3) and the modifications from the previously-certified class are immaterial, the Court should certify the Settlement Class for settlement purposes.

**VI.    THE COURT SHOULD APPROVE THE PROPOSED NOTICE PLAN**

Upon settlement of a certified class, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal[.]" Fed. R. Civ. P. 23(e)(1)(B). Rule 23(c)(2) prescribes the "best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B) (enumerating notice requirements). "The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members." *Herrera v. Wells Fargo Bank, N.A.*, 2021 WL 3932257, *12 (C.D. Cal. June 8, 2021).

Notice should be disseminated here, given the arguments above, as it is "likely that the court will be able to approve the proposal after notice to the class and a final approval hearing." Fed. R. Civ. P. 23(e)(1), 2018 Advisory Committee's Notes.

29

The Settlement here provides for a Notice Program that will be implemented through a multi-layered approach of a combination of direct mailed notices, publication notice, geographically targeted social media and web advertising, and a class settlement website. Ellis Decl., Ex. 1 at 15–16. The proposed Class Administrator, A.B. Data, Ltd., has been appointed as notice, claims, and/or settlement administrator in hundreds of class actions and designed, implemented, and coordinated some of the largest and most complex class action notice and administration plans in the country in all types of class actions, including environmental/contamination and property damage matters, consumer, antitrust, employment, civil rights, insurance, wage and hour, securities, ERISA, and other class actions. *Supra*, § III.K. A.B. Data has successfully designed and implemented multi-faceted media notice plans utilizing digital media, social media, and print media. *Id*.

The Long Form Notice describes the nature of the action, the claims asserted in the operative complaint, and the Defendants' contentions. The Long Form Notice provides the definition of the class, explains the terms of the settlement, including the settlement amount, the estimated range of the distribution amount, and the preclusive effect of the Settlement Agreement and that participation in the Settlement will result in a release of Released Claims, as well as the proposed attorney's fees and expenses, and incentive payments. The Long Form Notice includes an explanation that lays out the Settlement Class Members' options under the settlement: they may remain in the class and submit a claim, exclude themselves from the settlement and pursue their claims separately against defendants, object to the settlement but still remain in the class, or remain in the class without submitting a claim form receiving no payment and giving up the right to sue for the claims released by the Settlement Agreement. The Long Form Notice explains the procedures for: remaining in the class and submitting a claim, opting out of the settlement, and objecting to the settlement and provides information about the Final Approval Hearing. Finally, the Long Form Notice explains that the Settlement Class Members are solely responsible for determining the tax consequences of payments made pursuant to the Settlement Agreement.

## VII.    THE COURT SHOULD APPOINT THE CLASS ADMINISTRATOR

The proposed Class Administrator, A.B. Data, Ltd. has been appointed as notice, claims, and/or settlement administrator in hundreds of class actions and designed, implemented, and coordinated some of the largest and most complex class action notice and administration plans in the country. *Supra*, § III.K.

A.B. Data's work includes notification, claims processing, and distribution plans in all types of class actions, including environmental/contamination and property damage matters. *Id*.

A.B. Data has successfully designed and implemented multi-faceted media notice plans utilizing digital media, social media, and print media. *Supra*, § III.K. A.B. Data is committed to protecting the confidentiality, integrity, and availability of personal identifying and other information that it collects, and requires that its employees, subcontractors, consultants, service providers, and other persons and entities it retains to assist in distributions do the same. *Id*. A.B. Data has developed an Information Security Policy, a suite of policies and procedures intended to cover all information security issues and bases for A. B. Data, and all of its divisions, departments, employees, vendors, and clients. *Id*. A.B. Data has a high number of high-profile clients, frequently subjecting it to physical, logical, data, and information systems security reviews and audits, and has been determined to be compliant with ISO/IEC 27001/2 and Payment Card Industry (PCI) data security standards, the Gramm-Leach-Bliley (GLB) Act of 1999, the National Association of Insurance Commissioners(NAIC) Regulations, the Health Insurance Portability and Accountability Act (HIPPA) of 1996, and the Health Information Technology for Economic and Clinical Health Act (HITECH). *Id*.

Integral parts of A.B. Data's claims administration process and fraud detection and prevention efforts include: quality assurance review, quality control review, comprehensive proprietary fraud detection and prevention procedures and databases to prevent payment of allegedly fraudulent claims, providing the highest level of security and customization of security procedures, maintaining records of all class member inquiries, investigating and resolving undelivered material, monitoring outstanding and cleared checks, and maintaining mailing and financial databases for an agreed-upon period. *Supra*, § III.K.

**VIII.    PROPOSED SCHEDULE**

Within ten (10) days after the filing of the Motion for Preliminary Approval, Defendants shall comply with the Notification of Settlement Requirements for the Class Action Fairness Act (28 U.S.C. § 1715). Ellis Decl., Exhibit 1 at 14. Defendants shall file proof of service with the Court indicating compliance with 28 U.S.C. § 1715 before the date set for the preliminary approval hearing. *Id*.

In advance of the hearing on Preliminary Approval, Class Counsel will have provided the Class Administrator a "class list" containing the following information for each Class Member: (a) name; (b)

last known address. Ellis Decl., Exhibit 1 at 14. Class Administrator will identify, to the extent possible, personal email addresses of Class Members. Teichmiller Decl. at ¶ 12. The class list is being provided to the Class Administrator on a confidential basis and Class Administrator agrees to use this information only for purposes of verifying the accuracy of the information. *Id*. at 14–15.

In accordance with the Settlement, Plaintiffs propose the following deadlines.

| Event | Schedule |
|---|---|
| Deadline for mailing Class Notice, and posting Class Notice on case website (actual postmark date of mailed notice is "Class Notice Date"). Ellis Decl. Exhibit 1 at 15. | Preliminary Approval Date + 14 days |
| Deadline for publication notice. Ellis Decl., Exhibit 1 at 15. | Preliminary Approval Date + 21 days |
| Deadline for filing Petition for attorneys' fees, costs, and service awards, and for posting same on case website. Ellis Decl., Exhibit 1 at 16. | Class Notice Date + 25 days |
| Deadline for opting out. Ellis Decl., Exhibit 1 at 16. | Class Notice Date + 45 days |
| Deadline for Members of Settlement Class to object to Settlement or other Settlement-related matters (including attorneys' fees, costs, and service awards) and/or file Notice of Intention to Appear. Ellis Decl., Exhibit 1 at 18. | Class Notice Date + 45 days |
| Deadline for submitting claims. Ellis Decl., Exhibit 1 at 17. | Class Notice Date + 60 days |
| Deadline for Filing Motion for Final Approval. Ellis Decl., Exhibit 1 at 19. | 30 days before Final Approval Hearing |
| Deadline for Class Administrator to prepare declaration of due diligence and report of valid opt-out requests, as set forth in Settlement Agreement. Ellis Decl. Exhibit 1 at 16. | 21 days before Final Approval Hearing |
| Deadline for filing response to any objections to the Settlement Agreement or other Settlement-related matters (including attorneys' fees, costs, and service awards).  Ellis Decl., Exhibit 1 at 18. | 14 days before Final Approval Hearing |
| Class Administrator provides Declaration detailing Administrative Costs. Ellis Decl., Exhibit 1 at 9; Teichmiller Decl. at ¶ 33. | 10 court days before Final Approval Hearing |
| Final Approval Hearing (including hearing on Petition for attorneys' fees, costs, and service awards). Ellis Decl. at ¶ 18. | [TBD] |
| Establishment of Settlement Fund. Ellis Decl., Exhibit 1 at 3–4. | Effective Date (as defined by the Settlement Agreement) + 30 days |

32

The Effective Date shall mean seven (7) days after *all* of the following conditions have been satisfied:

    a. Execution of the Settlement Agreement by all Parties, Class Counsel, and Defense Counsel;

    b. Submission of the Settlement Agreement to the Court, along with appropriate motions and request for approval of the Settlement Agreement by the Court;

    c. Preliminary Approval of the Settlement Agreement by the Court;

    d. Mailing of the Settlement Notice to the Settlement Class Members in accordance with the Court's Order of Preliminary Approval;

    e. Expiration of opt-out date as defined in the Settlement Notice; and

    f. A formal fairness hearing, Final Approval, and final judgment in the Action. Except that, in the event there are written objections made before the formal fairness hearing, and/or an appeal from the Court's approval of the Settlement Agreement is taken, then the Effective Date shall be the later of the following events: (i) when the period for filing any appeal or initiating any other appellate proceeding opposing the settlement has elapsed without any appeal or other appellate proceeding having been initiated; or (ii) any appeal or other appellate proceeding relating to the settlement has been adjudicated finally and conclusively with no right to pursue further remedies or relief; or (iii) any appeal or other appellate proceeding has upheld the Court's final order with no right to pursue further remedies or relief.

Ellis Decl., Exhibit 1 at 3–4.

The Class Administrator shall set up a qualified settlement fund and provide wire instructions to Defendants. Ellis Decl., Exhibit 1 at 19; Teichmiller Decl. at ¶ 29. Within thirty (30) days of the Effective Date, Defendants will wire the Settlement Fund Seventy-Five Million Dollars to fund the Settlement to the Class Administrator, which shall be deposited by the Class Administrator into a qualified settlement fund established pursuant to Internal Revenue Code § 1.468B-1. Ellis Decl., Exhibit 1 at 19.

The Class Administrator shall take all reasonable efforts to make payments from the Settlement Fund within 45 days after the Effective Date. *Id*. at 19; Teichmiller Decl. at ¶ 30. The Class Administrator will send individual checks by certified mail to the address on file with the Class Administrator. Ellis Decl., Exhibit 1 at 19. There will be only one payment per single-family home or townhome in the Class Area, regardless of the number of owners (except in the case of single-family homes or townhomes that were sold after July 1, 2024). *Id*.

Checks sent to Settlement Class Members under the Settlement Agreement shall remain valid and negotiable for 180 days from the date of their mailing and thereafter may be automatically canceled if not

cashed by the payee within that time. *Id*. at 20. The Class Administrator will provide notice to Plaintiffs' Counsel of any uncashed checks and the Class Administrator shall have responsibility to attempt to locate the impacted Class Members and re-issue checks with an expiration date 90 days following the re-issuing of the checks. *Id*. In the event any Settlement Class Member(s) cannot be located within 180 days of the expiration of the initial settlement checks, uncashed settlement check(s) will be redistributed equally amongst the Participating Settlement Class Members who timely cashed their checks during the initial distribution. *Id*. There will only be one redistribution. *Id*. If additional funds remain after the redistribution, the Court shall designate an appropriate *cy pres* beneficiary for the remaining funds. *Id*.

## IX.    CONCLUSION

The Court should grant preliminary settlement approval.


Dated: June 1, 2026

/s/ *Ryan D. Ellis*
Ryan D. Ellis (*pro hac vice*)
Ryan.Ellis@lanierlawfirm.com
**THE LANIER LAW FIRM, P.C.**
10940 W. Sam Houston Pkwy N
Houston, Texas 77064
Phone: (713) 659-5200 Fax: (713) 659-2204

Michael Akselrud (SBN 285033)
Michael.Akselrud@lanierlawfirm.com
THE LANIER LAW FIRM, P.C.
2829 Townsgate Rd., Ste. 100
Westlake Village, California 91361
Telephone: (310) 277-5100 Facsimile: (310) 277-5103

W. Mark Lanier (*pro hac vice*)
WML@lanierlawfirm.com
Alex J. Brown (*pro hac vice*)
Alex.Brown@lanierlawfirm.com
**THE LANIER LAW FIRM, P.C.**
10940 W. Sam Houston Pkwy N
Houston, Texas 77064
Phone: (713) 659-5200 Fax: (713) 659-2204

Christopher T. Nidel (*pro hac vice*)
chris@nidellaw.com

34

Jonathan Nace (*pro hac vice*)
jon@nidellaw.com
William Cowles (*pro hac vice*)
will@nidellaw.com
**NIDEL & NACE, P.L.L.C.**
One Church Street, Suite 802
Rockville, Maryland 20850
Phone: (202) 780-5153

David P. Page (*pro hac vice*)
dpage@eenradvocates.com
**ENVIRONMENTAL ENERGY & NATURAL
RESOURCES ADVOCATES, PLLC**
1921 S Boston Ave.
Tulsa, Oklahoma 74119
Phone: (918) 764-8984

Gideon Kracov (Cal. SBA # 179815)
gk@gideonlaw.net
**LAW OFFICE OF GIDEON KRACOV**
801 S. Grand Ave., 11th Floor
Los Angeles, California 90017
Phone: (213) 700-4448

*Attorneys for the Plaintiffs and
Class Members*

35

## CERTIFICATE OF SERVICE

I, Ryan D. Ellis, attorney for the Plaintiffs and the class members, hereby certify that the **PLAINTIFFS' MOTION FOR PRELIMINARY SETTLEMENT APPROVAL** was served to counsel for the Defendants through the Court's ECF/CM system on June 1, 2026.

By: /s/ *Ryan D. Ellis*
Ryan D. Ellis (*pro hac vice*)
***Attorneys for the Plaintiffs and the Class Members***

## CERTIFICATE OF COMPLIANCE

I, Ryan D. Ellis, attorney for the Plaintiffs and the class members, hereby certify that this memorandum of points and authorities does not exceed 45 pages, that the font is 12-point Times New Roman, and that footnotes are no smaller than 10-point font. Thus, this motion complies with the relief requested in Plaintiffs' unopposed motion for leave to exceed page limits (ECF No. 407) and applicable local rules.

By: /s/ *Ryan D. Ellis*
Ryan D. Ellis (*pro hac vice*)
***Attorneys for the Plaintiffs and the Class Members***

36